MARC E. MAYER (SBN 190969)
  mem@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA  90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

THERESA B. BOWMAN (*pro hac pending*)
  tbb@msk.com
MITCHELL SILBERBERG & KNUPP LLP
1818 N St., NW
Washington, D.C. 20036
Telephone: (202) 470-2752
Facsimile: (202) 470-2776

Attorneys for Blizzard Entertainment, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLIZZARD ENTERTAINMENT, INC., a Delaware Corporation,<br><br>              Plaintiff,<br><br>       v.<br><br>TURTLE WOW, an entity of unknown form; AFKCRAFT LIMITED, a Hong Kong Company; YULIA SAVKO a/k/a JULIA SAVKO a/k/a Torta and Shenna, an individual; ERIC MAUSER a/k/a Shagu and Meph1s, an individual; JOSIAH ZIMMER a/k/a Akalix, an individual; STEFAN KOSTOV a/k/a brotalnia, an individual, JESSE LAUTENBACK a/k/a Niralthas, an individual, COSMIN POP a/k/a xerron, an individual, JAMEY DIEPBRINK a/k/a Jamma an individual, MAROS BETKO a/k/a Haaxor, an individual, MARCO KRETAS a/k/a MARCO KAPTEIN a/k/a Kruxis, an individual; ALEX JULEV a/k/a PepeSmite, an individual; and DOES 1 through 10, inclusive,<br><br>              Defendants. | CASE NO. 2:25-cv-08194<br><br>**COMPLAINT FOR:**<br><br>**(1) COPYRIGHT INFRINGEMENT**<br>**(2) INDUCEMENT TO INFRINGE COPYRIGHTS**<br>**(3) CONTRIBUTORY COPYRIGHT INFRINGEMENT**<br>**(4) VICARIOUS COPYRIGHT INFRINGEMENT**<br>**(5) TRAFFICKING IN CIRCUMVENTION TECHNOLOGY [17 U.S.C. §1201(b)(1)]**<br>**(6) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**<br>**(7) FALSE DESIGNATION OF ORIGIN [15 U.S.C. § 1125(a)]**<br>**(8) PARTICIPATION IN A RICO ENTERPRISE [18 U.S.C. § 1962(c)]**<br>**(9) ENGAGING IN A RICO CONSPIRACY [18 U.S.C. § 1962(d)]**<br><br>**Demand For Jury Trial** |

**COMPLAINT**

## INTRODUCTION

1.    Plaintiff Blizzard Entertainment, Inc. ("Blizzard") is the developer, publisher, and owner of some of the most popular video games in the world, including the immensely popular online role-playing game "World of Warcraft" ("WoW").  WoW is a "massively multiplayer online role-playing game" ("MMORPG"), in which hundreds of thousands of people simultaneously explore and engage in a variety of adventures across an enormous computer-generated fantasy world.  Millions of players around the world, including in the United States, pay a monthly subscription fee to be able to create an account on and access one of Blizzard's password-protected WoW servers.  Access to Blizzard's WoW servers enables players to enter the WoW virtual game world and to experience the highly creative, copyrighted content of the WoW game environment.

2.    Blizzard has long taken steps to protect its valuable intellectual property, including to protect WoW, a game that is the result of decades of creative work and innovation by countless dedicated members of the Blizzard team. Blizzard likewise has a long history of finding ways to support *safe, legal and respectful* expressions of player creativity within WoW, such as through providing authorized tools by which players can modify aspects of the game (*i.e.,* modding) or through creator partnerships with players.  Also, to keep the game fresh and exciting, Blizzard releases content updates and improvements on a regular basis, such as yearly or bi-yearly "expansion packs," which offer new storylines, characters, creatures, dungeons, and other new material for players to discover and explore.  And, for those players who prefer to play older, legacy versions of WoW, Blizzard offers "World of Warcraft Classic," access to which is included with an active WoW subscription.

3.    In the two decades since WoW first was released, Blizzard has invested an enormous amount of time and money into creating, maintaining, and updating the game.  But when unscrupulous actors such as Defendants seek to

Mitchell
Silberberg &
Knupp LLP
20996914.1

profit from Blizzard's valuable intellectual property (including protected code and game assets) they undermine Blizzard's own efforts to deliver classic and community-driven content, devalue the WoW experience, and cause serious harm to Blizzard and the many artists, programmers, game designers, and other creative professionals who have worked (and continue to work) tirelessly to create a unique and enjoyable gaming experience for both new and longtime players.

4.      The Defendants in this action have built an entire business on large scale, egregious, and ongoing infringement of Blizzard's intellectual property.   As set forth in more detail herein, Defendants are the key members of a multinational business enterprise known as "Turtle WoW."  Through Turtle WoW, Defendants have found a lucrative way to exploit and profit from the popularity of the WoW game experience.  Specifically, Turtle WoW purports to offer to the public paid access to a group of unauthorized, "emulated" private WoW game servers, as well as all of the software and other tools necessary to access and use these emulated servers, including pirated copies of WoW that have been specially modified to work with its unauthorized servers.

5.      Turtle WoW's emulated servers work by mimicking and modifying the normal mechanics by which players access Blizzard's WoW servers.  To play WoW, players must possess a licensed copy of the WoW game software (known as the game "client") and an active WoW account, which gives the player access to the WoW remote game servers.  However, emulated servers such as those offered by Turtle WoW allow members of the public to play modified versions of WoW without authorization from the game's publisher or copyright owner – and, critically, without possessing a licensed copy of the game, creating and maintaining an account, or paying subscription fees.  Turtle WoW accomplishes this objective by creating and distributing, without Blizzard's authorization, a modified copy of the WoW client and hosting one or more copycat WoW servers that can be accessed and played using this pirated client software.

Mitchell
Silberberg &
Knupp LLP
20996914.1

**COMPLAINT**

6.      Turtle WoW's unauthorized servers harm the player experience in several ways.  By way of example, these unauthorized private servers drive away otherwise dedicated WoW players, introduce security risks to players, fragment the WoW player community, and create confusion as to what are official, supported versions of WoW.  When a player moves to an unauthorized, illegal server such as a Turtle WoW private server and has a negative experience (including security breaches or inferior player experience), that confusion damages Blizzard's official WoW brand and results in a significant loss of revenue for Blizzard.  Private servers such as Turtle WoW also encourage and facilitate video game piracy by allowing players to avoid paying for the game experience that Blizzard has invested so much time and money to create.

7.      Turtle WoW is among the largest and most sophisticated private WoW servers available today.  Turtle WoW purports to offer not only Blizzard's original WoW game (which it refers to as "vanilla WoW") but also a "fan-made expansion story" that "delves deeper into exploring the original lore of the game" and "seeks to enhance the game by adding content that matches the already well-established lore of Warcraft Universe."  Defendants have incorporated the entirety of "vanilla WoW" (replete with Blizzard's logos and trademarks), as well as all of the infringing "expansion" content created by Defendants, into their pirated Turtle WoW "client" software product (the "Turtle WoW Client").  Defendants distribute the Turtle WoW Client to the public via their website www.turtle-wow.org (the "Turtle WoW Website").  To play Turtle WoW via the Turtle WoW servers, a user need only download the Turtle WoW Client, create a Turtle WoW account, and then connect to one of the emulated Turtle WoW servers (the "Turtle WoW Servers") created, operated, and maintained by Defendants.

8.      In the course of operating the Turtle WoW servers, Defendants have distributed (and are continuing to distribute) thousands of pirated copies of Blizzard's copyrighted WoW game software.  They have encouraged and induced

Mitchell
Silberberg &
Knupp LLP
20996914.1

members of the public to install that software on their computers and use it to connect to Defendants' unauthorized servers. Additionally, to enable their pirated Turtle WoW Client to operate with their Turtle WoW Servers, Defendants have removed the technical measures contained in Blizzard's WoW client software that prevent it from being used without a license and without being connected to Blizzard's official servers. As a result, Defendants have assisted and enabled tens of thousands of people to copy, access, and play WoW without paying the subscription fee that allows Blizzard to operate and update the game. Turtle WoW generates substantial revenue from its infringing conduct by soliciting payments (which it calls "donations") from its users.

9.      Recently, Turtle WoW has been brazenly escalating its efforts to cannibalize and disrupt Blizzard's WoW player community by, for example, increasing its social media presence, partnering with video game influencers, and actively promoting a new version of its infringing game: "Turtle WoW 2.0." Turtle WoW 2.0 purports to "ensure we can offer entertaining, expanded gameplay for everyone long into the future" and "extend the life of our favorite game" by replicating the entirety of the WoW game into the new Unreal Engine 5 video game engine and using that engine to incorporate new graphical enhancements into the game. In the meantime, Turtle WoW and its player community boast online that they can operate worldwide (including in the United States) with impunity and violate Blizzard's intellectual property rights without consequence.

10.     By virtue of the foregoing conduct, Defendants have infringed Blizzard's copyrights and trademarks, assisted and encouraged others to infringe Blizzard's copyrights, trafficked in devices that circumvent Blizzard's access control measures, and induced hundreds of thousands of users to breach contracts that they entered into with Blizzard. Defendants' conduct diverts players from Blizzard's games, undermining the creative work of Blizzard's skilled and devoted employees. Defendants' conduct is willful, intentional, and deliberate. Defendants

Mitchell
Silberberg &
Knupp LLP
20996914.1

1  are well aware that their conduct is infringing, and even acknowledge in their
2  public-facing materials that "World of Warcraft remains the intellectual property
3  of Blizzard Entertainment."

4      11.    Finally, Defendants have violated the Racketeering Influenced and
5  Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and 1962(d), by
6  working together to operate a sophisticated and lucrative global enterprise that
7  develops and sells software that Defendants know illegally infringes on Blizzard's
8  trademarks and copyrights.  Defendants' participation in this enterprise, including
9  authoring and distributing extensive U.S. marketing campaigns and funding
10 solicitations that tout pirated content, constitutes illegal racketeering activity.

11     12.    Accordingly, this Court should enjoin Defendants' conduct and award
12 Blizzard monetary damages in an amount to be proven at trial.

13

14                    **JURISDICTION AND VENUE**

15     13.    This is a civil action seeking damages and injunctive relief under the
16 Copyright Act, 17 U.S.C. § 101 *et seq.*, the Digital Millennium Copyright Act
17 ("DMCA"), 17 U.S.C. § 1201 *et seq.*, the Lanham Trademark Act, 15 U.S.C.
18 § 1111 *et seq.*, the Racketeering Influenced and Corrupt Organizations Act
19 ("RICO"), 18 U.S.C. §§ 1962(c) and 1962(d), and the laws of the State of
20 California.

21     14.    This Court has subject matter jurisdiction over Blizzard's claims for
22 copyright infringement, violation of Section 1201 of the DMCA, and false
23 designation of origin, and violation of the federal RICO statute, pursuant to
24 28 U.S.C. §§ 1331 and 1338(a).  Pursuant to 28 U.S.C. § 1367, this Court has
25 supplemental jurisdiction over Blizzard's state law claim for intentional
26 interference with contractual relations, in that the claim is so related to Blizzard's
27 claims under the Copyright Act and DMCA as to be part of the same case or
28 controversy.

15.     This Court has personal jurisdiction over Defendants because all Defendants have, *inter alia,* engaged in, contributed to, and induced the infringing conduct at issue within the United States and the State of California and, among other things, purposefully have directed their activities at the United States and at California.  Blizzard is informed and believes, and on that basis alleges, that, among other things, (a) each of the Defendants or their respective agents are doing or have been doing business continuously in the State of California and this District and target their marketing and advertising to users in the United States (including by operating their marketing operations from within the United States), (b) a substantial part of the wrongful acts committed by Defendants, and each of them, have occurred in interstate commerce, in the State of California, and in the Central District of California, (c) Defendants know that the damages and other harmful effects of Defendants' infringing activities occur and are felt in the United States, and primarily in California, where Blizzard has its principal place of business, (d) Defendants contract with thousands of individuals located in the United States, knowing that they are located in the United States, (e) Defendants could, but refuse to, restrict the use of their emulated servers within the United States, and (f) Defendants contract with numerous U.S.-based service providers, including domain name registrars, software code repositories, online chat rooms and communities, social media networks, and video-sharing websites. Additionally, one or more of the Defendants have affirmatively assented to the end-user license agreement (EULA) required to access Blizzard's WoW servers, which includes an agreement "to submit to the exclusive jurisdiction of the state and federal courts in Orange County, California."

16.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400 because this is a judicial district in which a substantial part of the events giving rise to the claims occurred, and/or where Blizzard's injury was suffered.

**THE PARTIES**

17.     Blizzard is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in Irvine, California.

18.     Blizzard is, and at all relevant times has been, the owner of the United States copyright in the computer game titled "World of Warcraft," including its additions, patches, and expansions (collectively, "WoW").  Blizzard's copyright in WoW covers nearly all aspects of the game as distributed, including, without limitation: (a) all of the human- and machine-readable computer code and any other digital files distributed as part of the WoW game; (b) all graphical and textual elements (i.e., "assets") that appear in the game when the game is executed on a personal computer, including objects, structures, characters, dialogue, animations, questlines, stories, monsters, and visual effects; (c) all graphical and textual elements of documents or artwork distributed with the game; (d) all motion picture and sound recordings, and other audio-visual elements distributed with and as part of the game; and (e) the dynamic, evolving virtual world that is created by the interaction between the WoW "client" software and its remote game servers. Blizzard's registered copyrights in WoW and its expansions include those set forth in Schedule A to this Complaint.

19.     Blizzard is informed and believes, and on that basis alleges, that each of the Defendants identified herein is engaged in the development, operation, maintenance, marketing, and monetization of an emulated, or "private," set of WoW servers and related client software known as "Turtle WoW."  The primary purpose of Turtle WoW is to profit from the unauthorized exploitation and use of Blizzard's copyrighted WoW game, including by enabling members of the public to play copies of WoW without paying monthly subscription fees, creating a WoW account, observing Blizzard's rules of conduct, or obtaining a license from Blizzard.  In so doing, Defendants' aim is to divert users from Blizzard's official

WoW server to their own unlawful Turtle WoW Servers, where they receive payments from these users in the form of "donations."

20.    Blizzard is informed and believes, and on that basis alleges, that Defendant Turtle WoW (the "Turtle WoW Entity") is an entity of unknown form that purports to own and operate the Turtle WoW private servers.  According to the Turtle WoW website (turtle-wow.org), the Turtle WoW Entity purports to be located in Priozersk, Kazakhstan.  However, Blizzard has reason to believe that the Turtle WoW Entity is an underfunded, fictional shell company that operates as a mere alter ego or unincorporated association of the individual Defendants and serves as a smokescreen to conceal the identities of the individual Defendants while also acting as a conduit for monetary and other transactions related to Turtle WoW.

21.    Blizzard is informed and believes, and on that basis alleges, that Defendant AFKCraft Limited is a company registered in Hong Kong that purports to own and operate the Turtle WoW Servers, especially those servers located in Southeast Asia.  Blizzard has reason to believe that AFKCraft, like Turtle WoW, is an underfunded, fictional shell company that operates as a mere alter ego of the individual Defendants and serves to hide the identities of the individual Defendants, while also acting as a conduit for monetary and other transactions related to TurtleWoW.

22.    Blizzard is informed and believes, and on that basis alleges, that Defendant Yulia Savko, a/k/a Julia Sauko, a/k/a Torta, is an individual residing in Moscow, Russia.  Savko is the owner, primary operator and one of the driving forces behind TurtleWoW.   Savko oversees all of the operations of Turtle WoW and actively participates in all of the conduct alleged herein.

23.    Blizzard is informed and believes, and on that basis alleges, that Defendant Eric Mauser a/k/a Shagu is an individual who resides in Stuttgart, Germany.  Mauser is among the developers and administrators of Turtle WoW.  In

this role, Mauser has been involved in coding and updating the Turtle WoW Client, overseeing the operation of the Turtle WoW Servers, interacting with Turtle WoW players, and actively participating in all of the conduct alleged herein.

24.     Blizzard is informed and believes, and on that basis alleges, that Defendant Josiah Zimmer a/k/a Akalix is an individual who resides in Augusta, Michigan.  Zimmer is the "Lead of Marketing" for Turtle WoW, head of "Public Relations," and manager of the Turtle WoW online community.  In this role, Akalix has promoted the Turtle WoW website and exhorted and encouraged members of the public – especially those located in the United States – to download the Turtle WoW Client and use it to connect to and access the Turtle WoW Servers.  Akalix also has acted as the public face of Turtle WoW and frequently speaks on behalf of Turtle WoW.

25.     Blizzard is informed and believes, and on that basis alleges, that Defendant Stefan Kostov a/k/a brotalnia is an individual who resides in Berkovistsa, Bulgaria.  Kostov is one of the developers of the Turtle WoW servers and in that role creates, maintains, updates, and oversees the operation of the Turtle WoW Servers.

26.     Blizzard is informed and believes, and on that basis alleges, that Defendant Jesse Lautenback a/k/a Niralthas is an individual who resides in Groningen, Netherlands.  Lautenback is the System Administrator of Turtle WoW and in that role oversees the operation of Turtle WoW, its website, and the Turtle WoW Servers.

27.     Blizzard is informed and believes, and on that basis alleges, that Defendant Cosmin Pop a/k/a xerron is an individual who resides in Cluj Napoca, Romania.  Pop is a software developer who has been directly involved in developing, coding, updating, and creating the Turtle WoW Client.

28.     Blizzard is informed and believes, and on that basis alleges, that Defendant Jamey Diepbrink a/k/a Jamma is an individual who resides in

Purmerend, Netherlands.  Diepbrink is one of the developers of the Turtle WoW servers, as well as an administrator of Turtle WoW and its online communities.  In this role, Diepbrink creates, maintains, updates, and oversees the operation of the Turtle WoW Servers and interacts with users of Turtle WoW (including to encourage and exhort those users to download the Turtle WoW Client and use it to connect to the Turtle WoW Servers).

29.     Blizzard is informed and believes, and on that basis alleges, that Defendant Maros Betko is an individual who resides in the Czech Republic.  Betko is a software developer who has been directly involved in developing, coding, updating, and creating the Turtle WoW Client.

30.     Blizzard is informed and believes, and on that basis alleges, that Defendant Marco Kretas a/k/a Marco Kaptein a/k/a Kruxis is an individual who resides in Bad Reichenhall, Germany.  Kretas is one of the developers of the Turtle WoW Servers and in that role creates, maintains, updates, and oversees the operation of the Turtle WoW Servers.

31.     Blizzard is informed and believes, and on that basis alleges, that Defendant Alex Julev a/k/a PepeSmite is an individual who resides in Tyna, Russia.  Julev is the Community Manager and Game Master for Turtle WoW, and in that role oversees Turtle WoW's online communities, provides technical and customer support, and interacts with users of Turtle WoW (including to encourage and exhort those users to download the Turtle WoW Client and use it to connect to the Turtle WoW Servers).

32.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as Does 1 through 10, inclusive, are unknown to Blizzard, and Blizzard sues said Defendants by such fictitious names (the "Doe Defendants").  The Doe Defendants include individuals whose real identities are not yet known to Blizzard, but who are acting in concert with the named Defendants, often in the guise of Internet aliases, in committing the

unlawful acts alleged herein.  Blizzard is informed and believes, and on that basis alleges, that the Doe Defendants are liable to Blizzard as a result of their participation in all or some of the acts hereinafter set forth (all of the Defendants, including the Doe Defendants, collectively are referred to as "Defendants").

33.    Blizzard is informed and believes, and on that basis alleges, that all of the Defendants have acted collectively and in concert to accomplish the ultimate goals of Turtle WoW – namely, to create, exploit, and profit from a network of private servers that replicate the WoW game experience without Blizzard's authorization or consent.  While some of Defendants have worked behind the scenes, and others (such as Zimmer and Savko) have a public-facing presence, all of them communicate and work together to ensure that Turtle WoW functions properly, remains appealing to its existing and potential customers, and is profitable for all involved.

34.    Blizzard is informed and believes, and on that basis alleges, that at all times mentioned in this complaint, each of the Defendants was the agent of each of the other Defendants and, in doing the things averred in this complaint, was acting within the course and scope of such agency.

## FACTS APPLICABLE TO ALL CLAIMS
### Blizzard's World of Warcraft Computer Game

35.    Blizzard is a computer game publisher engaged in the business of developing, financing, producing, marketing, and distributing high-quality software game products for personal computers (PCs), mobile devices and video game consoles.  Among the software products produced and distributed by Blizzard are some of the most popular computer and video games in the world, including the immensely popular online role-playing game "World of Warcraft" and its updates and expansion packs (collectively, "WoW").

Mitchell
Silberberg &
Knupp LLP

20996914.1

36.     WoW, which originally was released in 2004, is one of the most ambitious and critically acclaimed online computer games ever created.  WoW is a Massively Multiplayer Online Roleplaying Game ("MMORPG"), a genre of computer game in which a large number of players interact with each other simultaneously in a persistent "virtual" online world.  In WoW, players from around the globe assume the roles of characters in a sprawling, ever-changing virtual fantasy world, populated by a variety of human and computer-controlled characters.  As they explore, adventure, and quest across WoW's vast online world, players advance, upgrade, and customize their characters, thereby accessing new content in the WoW gaming environment.  Since its release, millions of people around the world have played and enjoyed, and continue to play and enjoy, WoW.

37.     WoW is the product of countless hours of employee time, including that of game designers, artists, writers, animators, music composers, producers, programmers, community support personnel, and many others.  Blizzard has made an enormous investment in creating and maintaining WoW and ensuring that WoW remains a fun and rewarding experience.  Blizzard continues to update, expand, and improve the WoW game world and online experience, such as by adding new features, new places to explore, graphical and gameplay updates, and new virtual items for players to acquire in the game world.  These updates, expansions, and enhancements keep the game fresh and exciting for both long-time players and new players.  Additionally, for those long-time players who prefer playing the game without those expansions and enhancements, in 2019 Blizzard launched "World of Warcraft Classic."  "World of Warcraft Classic" offers players the opportunity to play an older version of the game (as well as the most recent version of the game), for a single subscription fee.

38.     Two interrelated components are required to play WoW:

a.     First, users must download and install on their personal computers a software application known as the WoW game "client."  The client

contains an "executable" (.exe) file that is used to launch the WoW game program. The client contains a large number of software, audio, video, and other media files that comprise the individual elements of the WoW game, such as the game's software engine (which governs the functioning of the game world), as well as the characters, artwork, sounds, music, dialogue and other audiovisual elements that are perceived by the user when the game is being played.

b.    Second, once the WoW client has been installed, users must create a WoW account and connect to one of Blizzard's password-protected online WoW servers. Blizzard's WoW servers, among other things, provide players with access to the copyrighted content of the WoW game environment, connect WoW players with each other, generate and populate the living, evolving WoW game world in which the game is played, and enforce and implement the rules of the game.

39.    In its normal course of operation, WoW cannot be played without both a licensed copy of the up-to-date WoW client and an active, authorized online connection to Blizzard's WoW servers. When a player is playing WoW, data is constantly passing to and from the client and server. The client contains the code and assets that render WoW's virtual world, while the server tells the client where objects, other players, monsters, and other features of the virtual world are located in relation to the player. The data that passes back and forth between client and server is in a form known as a "packet." In WoW, millions of pieces of information are passed between clients and servers in the blink of an eye, creating a seamless game experience.

40.    In order to recoup its massive investment in WoW and to pay for the substantial ongoing maintenance and updates to the game, Blizzard charges users a subscription fee. Payment of the subscription fee permits users to access Blizzard's WoW servers and play in the WoW gaming environment.

Mitchell
Silberberg &
Knupp LLP
20996914.1

41.     The WoW client is made available by Blizzard exclusively via its proprietary Battle.net platform.  The WoW client constantly is being updated and refined, including to add additional features, fix bugs, and increase security measures.  Once an updated client is made available to the public, the earlier client is removed from Battle.net and no longer is made available by Blizzard to the public.  Blizzard does not authorize any third parties to distribute any older, superseded versions of the WoW client.  Thus, any websites that distribute any superseded version of the WoW client are doing so without license or authorization, and thereby are infringing Blizzard's copyright in the WoW game software.

42.     Additionally, the WoW client software is programmed and designed to connect only to the official Blizzard WoW servers.  It is not possible to connect to a WoW server without possessing a licensed copy of the WoW client and an active WoW account.  These restrictions ensure that players cannot use pirated or unauthorized copies of the WoW client.

**The Blizzard EULA**

43.     Prior to playing WoW and installing the WoW client software, players are required to set up a Battle.net account.  In order to create a Battle.net account, players are required to affirmatively agree to the "Blizzard End User License Agreement" ("EULA"), which applies to players' use of the Battle.net platform and any and all Blizzard games, including WoW.  Additionally, the EULA is displayed to players the first time they access the WoW game servers, and players must affirmatively accept the EULA in order to be granted access to those servers. If players do not agree to the EULA, they will be denied access to Battle.net and any Blizzard games, including WoW.

44.     From time to time, Blizzard updates its EULA.  Each time it makes material updates, Blizzard notifies users that the EULA has been updated and

1   requires users to accept the new EULA before they may access Battle.net and the

2   WoW servers.  The most recent version of the EULA always is made available to

3   the public on Blizzard's public-facing internet website.[1]

4         45.    The EULA sets forth the terms of a limited use license between

5   Blizzard and the users of WoW, pursuant to which Blizzard grants to the user,

6   subject to the terms of the EULA, a conditional "limited, revocable, non-

7   sublicensable, and non-exclusive license" to install WoW on the user's personal

8   computer "for your personal and non-commercial entertainment purposes only."

9   The license contained in the EULA is conditioned upon the user's compliance with

10  a set of contractual obligations and provisions, including provisions that expressly

11  prohibit certain user conduct, including:

> **Matchmaking**: Host[ing], provid[ing] or develop[ing]
> matchmaking services for the Game(s), or intercept[ing],
> emulat[ing] or redirect[ing] the communication protocols
> used by Blizzard in any way, for any purpose, including
> without limitation unauthorized play over the internet,
> network play (except as expressly authorized by
> Blizzard), or as part of content aggregation networks.

> **Unauthorized Connections**: Facilitat[ing], creat[ing] or
> maintain[ing] any unauthorized connection to the Platform
> including without limitation (i) any connection to any
> unauthorized server that emulates, or attempts to emulate,
> the Platform; and (ii) any connection using third-party
> programs or tools not expressly authorized by Blizzard.

22        46.    The EULA is a valid and enforceable contract between Blizzard and

23  its players.  Any use of the WoW game client that is not in accordance with the

24  EULA is expressly prohibited, constitutes a breach of the EULA, and will subject

25  the user to penalties under the EULA, including revocation or nullification of the

26  user's limited license.

---

[1]  *See* https://www.blizzard.com/en-us/legal/fba4d00f-c7e4-4883-b8b9-1b4500a402ea/blizzard-end-user-license-agreement.

Mitchell
Silberberg &
Knupp LLP
20996914.1

47.    The provisions of the EULA are designed to protect the integrity of the game and to provide commercially reasonable contractual protection of Blizzard's rights in and to the client and server elements of WoW.

## **Blizzard's Access Control Technologies**

48.    To prevent members of the public from improperly accessing, exploiting, modifying, and profiting from WoW without its consent, including by using pirated, unlicensed copies of the WoW client, Blizzard has implemented a number of technological measures that effectively control unauthorized access to the game.

49.    First, the WoW client contains software code that prevents the client from being connected to servers other than Blizzard's WoW game servers. If the client attempts to connect to a game server other than Blizzard's WoW game server, the WoW client will terminate and WoW cannot be played. Additionally, during its normal course of operation, once connected to Blizzard's WoW server, the WoW client will perform a periodic "check" of the Internet ("IP") address to which it is connected to confirm that it still is connected to the authorized server. If at any time, that "check" fails (*i.e.*, if the WoW client determines that it is connected to a server other than a Blizzard WoW server), the client will immediately terminate its operation and the game cannot be played.

50.    Second, in order to ensure that the player is using a properly licensed copy of the WoW client and has an active, fully paid WoW account, WoW servers conduct checks to confirm that the copy of the WoW client being used has been licensed by the user and that the account is current. If any of these checks fail, the user will be unable to play the game.

51.    Third, Blizzard uses encryption technology to protect the "packets" of data that are transmitted between each player's individual client and the remote server. These packets contain all of the information necessary for multiple players

Mitchell
Silberberg &
Knupp LLP
20996914.1

**COMPLAINT**

to interact with each other in WoW's expansive virtual world, such as where each player is located on the map, what actions the player is taking, and where enemies or monsters are located. By encrypting these packets, Blizzard prevents members of the public from viewing, modifying or tampering with the communication between client and server (and thus tampering with the game itself). It is not possible to view or understand the data contained in these packets – and thus create an unofficial working remote server – without decrypting them.

## **The Turtle WoW Enterprise**

52. Blizzard is informed and believes, and on that basis alleges, that Defendants all are participants in a common Turtle WoW "enterprise." As such, Defendants are engaged in various activities related to developing, updating, marketing, distributing, selling, and supporting the Turtle WoW Client and Turtle WoW Servers. At all times relevant herein, Defendants have developed, updated, marketed, distributed, sold, and supported Turtle WoW. They have done so, and continue to do so, via the Turtle WoW Website, email, and other communication platforms including through social media accounts.

53. Blizzard is informed and believes, and on that basis alleges, that Turtle WoW primarily is directed by Defendant Yulia Savko a/k/a Torta, who oversees the operation of Turtle WoW through fictitious shell companies such as the Turtle WoW Entity and AFKCraft. This individual has acted and continues to act as the mastermind and driving force behind Turtle WoW and is responsible for the overall operation of Turtle WoW, the Turtle WoW Website, Turtle WoW's finances, and the development and maintenance of the Turtle WoW Client and Turtle WoW Servers.

54. As set forth herein, each of the other individual Defendants played a particular role (or multiple roles) in supporting and furthering the Turtle WoW Enterprise. For example:

(a)    Some of the Defendants are software developers.  These Defendants were or are engaged in developing, updating, patching, and improving the Turtle WoW Client and Turtle WoW Servers.  These developers then supply the Turtle WoW Client and Turtle WoW Servers to the public and receive payment or other consideration from the Turtle WoW Enterprise for their work.

(b)    Some of the Defendants act as Turtle WoW Website administrators, moderators, or support representatives.  These individuals operate and maintain the Turtle WoW Website, oversee the Turtle WoW Website and Reddit forums, monitor and review message board postings, provide updates concerning the use of the Turtle WoW Client and Servers, communicate with users of Turtle WoW, offer technical support to users of Turtle WoW, and help promote Turtle WoW.

(c)    Some of the Defendants act as Turtle WoW business and financial administrators.  These individuals manage necessary relationships with third party service providers such as domain name registries, hosting providers, and payment processors.  They also conduct the financial operations of the business and process both "donations" from user accounts as well as the internal allocation of financial resources both to promote and forward the overall goals of the Enterprise and to reward individual members of the Enterprise.

55.    All of the Defendants work collectively in furtherance of a single goal: namely, to ensure, encourage, enable, or otherwise facilitate the widespread distribution and use of Turtle WoW for their own financial benefit.  As such, Defendants are liable jointly and severally for the unlawful conduct engaged in by the Turtle WoW Enterprise, are active participants in the trafficking of Turtle WoW, and collectively are responsible for the ongoing misuse of Blizzard's intellectual property within Turtle WoW.

**Turtle WoW**

56.    At the heart of Turtle WoW is a group of not less than nine Turtle WoW Servers, which are accessible only via the Turtle WoW Client.  The purpose of Turtle WoW is to allow and enable members of the public to access and play a modified version of WoW without Blizzard's authorization, without being connected to a Blizzard WoW server, and without owning a valid, licensed copy of the game and an active subscription allowing the game to be played on Blizzard servers.

57.    Blizzard is informed and believes, and on that basis alleges, that thousands of people have created Turtle WoW accounts and used the Turtle WoW Client and Turtle WoW Servers to play Turtle WoW.  Blizzard also is informed and believes, and on that basis alleges, that this number continues to grow each month due to Defendants' increasingly aggressive online marketing and promotional efforts, as described below.

58.    Turtle WoW offers players the ability to play the entirety of the "original" version of the WoW video game that was offered by Blizzard in or about 2004, which Turtle WoW refers to as "Vanilla WoW."  Moreover, Turtle WoW offers a purported "fan-made expansion story for World of Warcraft Vanilla" titled "Mysteries of Azeroth."  "Azeroth" is the name of WoW's fictional world, which is comprised of several smaller land masses known as "zones." Turtle WoW claims that "Mysteries of Azeroth" "delves deeper into exploring the original lore of the game" and offers a "brand-new adventure that will take you on a journey around Azeroth in a new story tailored to provide never-before-experienced adventures."  Thus, Turtle WoW competes directly with Blizzard's own "World of Warcraft Classic," and is intended to appeal to and capture the audience for World of Warcraft Classic.

59.    The "Mysteries of Azeroth" "expansion" runs "in parallel to existing vanilla wow content."  According to the Turtle WoW Website, Turtle WoW

Mitchell
Silberberg &
Knupp LLP
20996914.1

1  (which includes this unauthorized "expansion") offers new or modified playable

2  fictional "races," music and sound effects, locations and characters, playable

3  "zones," in-game events, dungeons, and other features.  All of this purportedly

4  "new" content is derived entirely from Blizzard's original WoW content and

5  employs artwork and software "assets" (*e.g.*, objects, animations, character models,

6  and environments) from WoW.  All of this content was created without Blizzard's

7  authorization or consent, and for the express purpose of diverting players from the

8  authorized, legitimate version of WoW to Turtle WoW.

9       60.    Defendants aggressively market and advertise Turtle WoW in the

10  United States, including via social media networks, such as X (@turtlewowteam),

11  Discord (Turtle WoW Europe), YouTube (@TurtleWoWTeam), Instagram

12  (turtlewowteam), Reddit (r/turtlewow) and others.  Defendants' posts on these

13  social media networks are filled with unlicensed screen captures, videos, and

14  artwork from WoW.  In its marketing and advertising, Defendants tout their intent

15  to continue to add new content to Turtle WoW, and even claim that they are

16  creating a "remastered," visually enhanced version of WoW using the game

17  "engine" known as Unreal Engine 5, licensed from U.S.-based Epic Games, Inc.

18

19            Turtle-wow.org – The Turtle WoW Website

20       61.    Defendants promote and enable access to Turtle WoW via a dedicated

21  Turtle WoW Website, accessible at "turtle-wow.org." The Turtle WoW Website

22  provides players and potential players with information about Turtle WoW,

23  technical instructions as to how to install and play Turtle WoW, and access to the

24  Turtle WoW Client.  The Turtle WoW Website also contains a forum or message

25  board, where Defendants and users of the Turtle WoW Servers provide technical

26  support, announce updates to the game, recruit new staff members, promote new

27  features, talk about the game, and trade tips on how to access and play Turtle

28  WoW on the Turtle WoW Servers.

Mitchell
Silberberg &
Knupp LLP
20996914.1

62.    The Turtle WoW Website is filled with dozens of images, videos, screen captures, and artwork copied directly from WoW.  For example, as illustrated below, the homepage of the Turtle WoW Website includes numerous still images from WoW and copies of WoW artwork:





Mitchell
Silberberg &
Knupp LLP
20996914.1

63.    On the homepage of the Turtle WoW Website, users are invited to "SIGN UP" (*i.e.*, create an account), "DOWNLOAD" (*i.e.*, obtain a copy of the Turtle WoW Client), and "JOIN DISCORD" (*i.e.*, join the official Turtle WoW chat server on the Discord social media network).

64.    When a user clicks the "Download" button, he or she is presented with a pop-up window that invites the user to download a Turtle WoW "Launcher":



65.    When a user downloads and runs the Turtle WoW Launcher, the Launcher installs to the user's computer all of the software files needed to play the game on the Turtle WoW Servers, including the Turtle WoW Client.  Thus, to play Turtle WoW, a user need only download and install the Launcher and create a Turtle WoW account.

<u>The Turtle WoW Launcher and Infringing Turtle WoW Client</u>

66.    Once users have downloaded and installed the Turtle WoW Launcher, they can open and run the Launcher simply by clicking an icon.  On startup, the Launcher displays a "newsfeed" highlighting new features or events, as well as a "changelog" listing updates to the game.  The first time a player opens the Launcher, the Launcher automatically downloads from a remote server the latest

version of the Turtle WoW Client, which is a modified copy of the official WoW client software.  Players also may customize or modify the TurtleWoW Client using tabs for "Tweaks," "Addons," and "Mods."  If a user previously has played Turtle WoW, the Launcher will check to make sure that the user has the most recent version of the Turtle WoW Client.  If the user does not have the most recent version of the Turtle WoW Client, then the Launcher will automatically download additional files to the user's computer so that the user has the most recent version of the Turtle WoW Client.

67.    At the bottom of the Launcher screen players are presented with a large button marked "PLAY."  An exemplar screen capture of the startup, or "home," screen of the Turtle WoW Launcher appears below:



68.    When a user clicks on the "PLAY" button, the Launcher will execute the Turtle WoW client and place the user into the Turtle WoW login screen.  (Notably, the TurtleWoW login screen is nearly identical to the one of the screens that users are presented with when they launch the official version of WoW, and contains both the World of Warcraft logo and Blizzard's own distinctive logo).



69.    After entering an account name and password, the player is provided with access to the game, and is able to play WoW in its entirety, with some additional content and some modifications enabled by the Turtle WoW Client and Turtle WoW Servers.  The player does not need to possess or purchase an authorized, licensed copy of Blizzard's official WoW client or possess an active WoW subscription.

70.    As noted, the official WoW client contains security measures that prevent the WoW client from launching or, once launched, continuing to operate if the client is not connected to one of Blizzard's official WoW servers.  Accordingly, to create the Turtle WoW Client, Defendants removed or altered those portions of the original WoW client software containing such security protections and replaced them with customized, Turtle WoW software files.  As a result, when the Turtle WoW Client is launched, it connects directly to the Turtle WoW Servers without any restrictions.

71.    The digital files contained in the Turtle WoW Client are copies or derivative works of the original WoW client files.  Blizzard is informed and believes, and on that basis alleges, that in order to circumvent and bypass

Blizzard's security measures and allow the Turtle WoW Client to operate with the Turtle WoW servers, Defendants downloaded and copied an older version of Blizzard's original WoW client and then made several modifications:

(a)     First, the original WoW client contains commands and instructions that direct it to connect to Blizzard's official WoW servers. Defendants modified those commands and instructions in the Turtle WoW Client so that when it is run the Turtle WoW Client connects to one of the Turtle WoW Servers, instead of a Blizzard WoW server.

(b)     Second, Defendants incorporated code into the Turtle WoW Client that either (i) causes the Turtle WoW client to falsely detect that it is connected to a Blizzard WoW server, or (ii) disables or removes the security checks that ensure that the client is connected to an official server and that the player is using a licensed copy of the game, rather than a pirated copy.

(c)     Third, Defendants altered the WoW client to add additional content, functions, and features not present in the original WoW client, such as new music and sound effects, new locations, new playable races, and new items, all of which (or almost all of which) are copied and adapted from, and thus infringe, Blizzard's original WoW content.  Defendants also made changes to the game's user interface.

72.     Almost the entirety of the Turtle WoW Client is comprised of software or digital files that are almost complete copies of the WoW client files from which they are derived.  As such, the Turtle WoW Client distributed by Defendants contains almost all of the computer code and all of the artwork, music, objects, and other assets contained in Blizzard's copyrighted WoW client.  Each time the Turtle WoW Client is distributed or downloaded, an infringement of Blizzard's copyrighted WoW client has taken place.  Accordingly, Blizzard is informed and believes, and on that basis alleges, that thousands of acts of copyright

1  infringement have taken place within the United States, all of which were

2  facilitated, induced, encouraged, or otherwise caused by Defendants.

3

4                                   The Turtle WoW Servers

5        73.    Defendants offer at least nine different Turtle WoW Servers,

6  including at least one server dedicated to a North American audience. Each of the

7  Turtle WoW Servers is designed to emulate or mimic Blizzard's official WoW

8  servers and to enable large-scale, multi-player online play of WoW without

9  Blizzard's authorization and without the need to pay for a WoW subscription.

10       74.    Blizzard is informed and believes, and on that basis alleges, that in

11 order to create the Turtle WoW Servers and allow them to interact with the Turtle

12 WoW client, Defendants or those working on their behalf engaged in reverse

13 engineering activities. As part of those activities, Defendants or those working on

14 their behalf necessarily decrypted the packets sent between the WoW client and

15 server and then built the Turtle WoW Servers using information gathered from

16 decrypted packets.

17       75.    Blizzard also is informed and believes, and on that basis alleges, that

18 when Defendants created the Turtle WoW Servers, they eliminated or disabled

19 Blizzard's account authentication system and replaced it with their own system.

20 Thus, in order to access and play WoW on the Turtle WoW Servers, players do not

21 need to possess an active WoW account or to purchase a subscription to WoW.

22 They also do not need to have a licensed copy of a WoW client (or the most recent

23 version of the WoW client). Instead, players need only possess a Turtle WoW

24 account and the Turtle WoW Client, which are free to obtain and entirely within

25 the control of Defendants.

26

27

28

Mitchell
Silberberg &
Knupp LLP

20996914.1

**COMPLAINT**

<u>Defendants' Business Is Built On Unlawful Conduct</u>

76.    Blizzard is informed and believes, and on that basis alleges, that Defendants have distributed the Turtle WoW Client to thousands of people, including in the United States.  Many, if not all, of these people are or previously were subscribers and players of WoW (on Blizzard's servers) and possess or possessed WoW accounts.  Accordingly, many, if not all, of the players on the Turtle WoW Servers at one time consented to Blizzard's EULA and agreed not to play WoW on emulated or unofficial servers.

77.    Defendants also provide ongoing technical support via message boards contained on the Turtle WoW Website and related online communities such as Discord, X, and Reddit.  Blizzard is informed and believes, and on that basis alleges, that Defendants regularly monitor these message boards and Discord servers and regularly provide technical support to users, either via the message boards or through personal chats or private messages.  In this way, Defendants encourage and induce players to download infringing content and breach the EULA.

78.    While Defendants claim that Turtle WoW is "free to play," in fact, Turtle WoW is a for-profit operation.  Defendants profit from their unlawful activities by encouraging users to make monetary "donations" to fund Turtle WoW's continued operation.  Defendants incentivize such "donations" by offering donors rewards of in-game items, such as mounts, pets, and cosmetic gear. Blizzard is informed and believes, and on that basis alleges, that Defendants have made hundreds of thousands, if not millions, of dollars from user "donations."

79.    Turtle WoW also has caused significant and irreparable harm to Blizzard.  This harm includes, but is not limited to, lost revenue from former WoW players who have been diverted to Turtle WoW in order to avoid paying subscription fees.  Turtle WoW also harms and degrades Blizzard's valuable

Mitchell
Silberberg &
Knupp LLP
20996914.1

1  intellectual property, which is being exploited, modified and monetized without

2  Blizzard's consent and in ways that Blizzard disapproves of or prohibits.

3      80.    Blizzard is informed and believes, and on that basis alleges, that

4  Defendants are well aware that they do not have any license, right, or authority to

5  engage in any of the foregoing activities.  Defendants know that Blizzard owns the

6  copyright in WoW.  Indeed, on the Turtle WoW Website, Defendants note that

7  "World of Warcraft remains the intellectual property of Blizzard Entertainment."

8      81.    Defendants also know that by developing, maintaining, operating,

9  marketing, and advertising Turtle WoW they are encouraging and inducing their

10  users to download infringing content and to violate Blizzard's EULA.  In fact,

11  Turtle WoW posts its own "Terms of Service" on its Website, and thus is well

12  aware of what a Terms of Service is, and knows that a EULA or Terms of Service

13  can create binding legal obligations.

14      82.    Turtle WoW's ***own*** players have acknowledged the illegality of Turtle

15  WoW.  For example, players have posted YouTube videos with titles such as "Will

16  Turtle WoW Get Shut Down By Blizzard" and "Is Turtle WoW Safe from

17  Blizzard?"  Turtle WoW players also frequently discuss copyright infringement

18  and related issues on the Turtle WoW Reddit board or website forum.  In one

19  instance, a Turtle WoW user created a thread titled "Relocation Suggestion for the

20  Development Team," noting that "the threat of a copyright takedown notice from

21  … Blizzard is a very real danger that the team doesn't seem to be taking very

22  seriously" and suggesting that "the Turtle wow team relocate their operations … to

23  the country of San Marino due to the fact that San Marino has no copyright laws."

24  Defendant Zimmer responded:  "Fortunately, I can assure you this [i.e., that the

25  team doesn't seem to be taking copyright takedowns very seriously] isn't the case.

26  However, it's best for us not to overshare."

27

28

83.    Blizzard is informed and believes, and on that basis alleges, that Defendants and others acting in concert with them will continue to cause Blizzard irreparable harm until and unless enjoined by this Court.

## COUNT I

### Direct Copyright Infringement

84.    Blizzard realleges each and every allegation set forth in Paragraphs 1 through 83, inclusive, and incorporates them by reference herein.

85.    Blizzard owns valid copyrights in WoW, including, without limitation, the WoW client software; all of the screen displays created by the WoW client software; WoW's artwork, music, objects, text, dialogue, characters, creatures, and environments; and WoW's dynamic virtual world that is created by the interplay between the WoW client and a WoW server.

86.    Defendants have infringed Blizzard's copyrights in WoW by reproducing, adapting, and distributing WoW, including the copyrighted elements of the WoW client, game server, and gaming environment, without authorization, in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.  Such infringing conduct includes, but is not limited to, (a) copying and distributing unauthorized copies of the WoW client software, including by importing such copies in the United States; (b) copying and adapting the WoW client software to create the Turtle WoW client; (c) distributing in the United States derivative works of the WoW client software, including the Turtle WoW client; and (d) reproducing, adapting, publicly displaying, and publicly performing infringing videos, screen captures, artwork, and other images of WoW on the Turtle WoW website and various social media platforms.

87.    Each such infringement by Defendants of WoW constitutes a separate and distinct act of infringement.

88.    Defendants' acts of infringement are willful, in disregard of, and with indifference to the rights of Blizzard.

89.    As a direct and proximate result of the infringements by Defendants, Blizzard is entitled to damages and to Defendants' profits in amounts to be proven at trial, which are not currently ascertainable.  Alternatively, Blizzard is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

90.    Blizzard further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

91.    As a result of Defendants' acts and conduct, Blizzard has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Blizzard is informed and believes, and on that basis alleges, that unless enjoined and restrained by this Court, Defendants will continue to infringe Blizzard's rights in WoW.  Blizzard is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

**COUNT II**

**Inducement to Infringe Copyright**

92.    Blizzard realleges each and every allegation set forth in Paragraphs 1 through 91, inclusive, and incorporates them by reference herein.

93.    When users of Turtle WoW in the United States download, install, and copy to their computers the Turtle WoW Client, such users infringe Blizzard's copyrights in WoW.  17 U.S.C. §§ 106 and 501.  Such users also infringe Blizzard's copyrights in WoW when they use the Turtle WoW Client software files to connect to the Turtle WoW Servers and play WoW thereon.

94.    Defendants have actively encouraged and induced users of Turtle WoW to engage in the foregoing copyright infringement, including among other

Mitchell
Silberberg &
Knupp LLP

20996914.1

31

**COMPLAINT**

things, by providing such users with copies of the Turtle WoW Client and providing instructions, encouragement, and technical support on how to install the Turtle WoW Client and the Turtle WoW Launcher; and how to connect to the Turtle WoW Servers and access and play WoW without authorization from Blizzard.  As a direct and proximate result of such inducement, Defendants' users have infringed Blizzard's rights in WoW.

95.     Each such infringement by users of Turtle WoW constitutes a separate and distinct act of infringement.

96.     Defendants' acts of infringement were willful, in disregard of, and with indifference to the rights of Blizzard.

97.     As a direct and proximate result of the infringements by Defendants, Blizzard is entitled to damages and to Defendants' profits in amounts to be proven at trial, which are not currently ascertainable.  Alternatively, Blizzard is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

98.     Blizzard further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

99.     As a result of Defendants' acts and conduct, Blizzard has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Blizzard is informed and believes, and on that basis alleges, that, unless enjoined and restrained by this Court, Defendants will continue to infringe Blizzard's copyrights.  Blizzard has no adequate remedy at law.  Blizzard is entitled to injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## COUNT III

## <u>Contributory Copyright Infringement</u>

100.   Blizzard realleges each and every allegation set forth in Paragraphs 1 through 99, inclusive, and incorporates them by reference herein.

101.   When users of Turtle WoW download, install, and copy to their computers in the United States the Turtle WoW Client, such users infringe Blizzard's copyrights in WoW.  17 U.S.C. §§ 106 and 501.  Such users also infringe Blizzard's copyrights in WoW when they use the Turtle WoW Client to connect to the Turtle WoW Servers and play WoW thereon.

102.   Defendants have actual and constructive knowledge of the foregoing infringements.  Defendants have materially contributed to the foregoing infringements, including by creating the Turtle WoW Servers, creating the Turtle WoW Client, providing users with copies of the Turtle WoW Client, and providing instructions to users on how to download and install the Turtle WoW Client.

103.   Each such infringement by users of Turtle WoW constitutes a separate and distinct act of infringement.

104.   Defendants' acts of infringement were willful, in disregard of, and with indifference to the rights of Blizzard.

105.   As a direct and proximate result of the infringements by Defendants, Blizzard is entitled to damages and to Defendants' profits in amounts to be proven at trial, which are not currently ascertainable.  Alternatively, Blizzard is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

106.   Blizzard further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

107.   As a result of Defendants' acts and conduct, Blizzard has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Blizzard is informed and believes, and

Mitchell
Silberberg &
Knupp LLP
20996914.1

**COMPLAINT**

on that basis alleges, that, unless enjoined and restrained by this Court, Defendants will continue to infringe Blizzard's copyrights. Blizzard has no adequate remedy at law. Blizzard is entitled to injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## COUNT IV
## <u>Vicarious Copyright Infringement</u>

108.   Blizzard realleges each and every allegation set forth in Paragraphs 1 through 107, inclusive, and incorporates them by reference herein.

109.   When users of Turtle WoW download, install, and copy to their computers in the United States the Turtle WoW Client, such users infringe Blizzard's copyrights in WoW. 17 U.S.C. §§ 106 and 501. Such users also infringe Blizzard's copyrights in WoW when they use the Turtle WoW Client to connect to the Turtle WoW Servers and play WoW thereon.

110.   Defendants have the right and ability to supervise and control the infringing conduct of users of Turtle WoW. Defendants have failed and refused to exercise such supervision and control to limit infringement to the extent required by law. As a direct and proximate result of such refusal, users of Turtle WoW have infringed Blizzard's copyrights in WoW.

111.   Defendants derive a direct financial benefit from this infringement, including, but not limited to, money received from "donations" by users of Turtle WoW.

112.   Each such infringement by users of Turtle WoW constitutes a separate and distinct act of infringement.

113.   Defendants' acts of infringement were willful, in disregard of, and with indifference to the rights of Blizzard.

114.   As a direct and proximate result of the infringements by Defendants, Blizzard is entitled to damages and to Defendants' profits in amounts to be proven

Mitchell
Silberberg &
Knupp LLP
20996914.1

**COMPLAINT**

at trial, which are not currently ascertainable.  Alternatively, Blizzard is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

115.   Blizzard further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

116.   As a result of Defendants' acts and conduct, Blizzard has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Blizzard is informed and believes, and on that basis alleges, that, unless enjoined and restrained by this Court, Defendants will continue to infringe Blizzard's copyrights.  Blizzard has no adequate remedy at law.  Blizzard is entitled to injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## COUNT V

## Violation of the Digital Millennium Copyright Act

117.   Blizzard realleges each and every allegation set forth in Paragraphs 1 through 116, inclusive, and incorporates them by reference herein.

118.   The Turtle WoW Client contains technologies, products, services, devices, components, or parts thereof that primarily are designed or produced for the purpose of circumventing a technological measure that effectively controls the access to a copyrighted work and that protects the exclusive rights of copyright owners.

119.   The Turtle WoW Client, and particularly those portions of the Turtle WoW Client that permit access to the Turtle WoW Servers, has or have no commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a copyrighted work and that protects the exclusive rights of copyright owners.

120.   Defendants market the Turtle WoW Client with knowledge of its use to circumvent Blizzard's technological access controls and copyright protection.

121.   As a result of the foregoing, Defendants are offering to the public, providing, or otherwise trafficking in technology in violation of 17 U.S.C. §§ 1201(a)(2) and (b).

122.   Defendants' acts constituting DMCA violations have been and continue to be performed without the permission, authorization, or consent of Blizzard.

123.   Defendants have violated Section 1201 of the DMCA willfully and for private commercial gain.

124.   Defendants' conduct has caused damage to Blizzard and has unjustly enriched Defendants, in an amount to be proven at trial.

125.   As a result of Defendants' acts and conduct, Blizzard has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Blizzard is informed and believes, and on that basis alleges, that, unless enjoined and restrained by this Court, Defendants will continue to violate Section 1201 of the DMCA.  Blizzard has no adequate remedy at law.  Blizzard is entitled to injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

126.   As a direct and proximate result of Defendants' conduct, pursuant to 17 U.S.C. §1203(c), Blizzard is entitled to profits attributable to Defendants' violations of 17 U.S.C § 1201.

127.   Alternatively, Blizzard is entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 1203(c), in the amount of $2,500 with respect to each act of circumvention, device, product, component, offer, or performance of service.

128.   Blizzard further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 1203(b).

## COUNT VI

## Intentional Interference with Contractual Relations

129.   Blizzard realleges each and every allegation set forth in Paragraphs 1 through 128, inclusive, and incorporates them by reference herein.

130.   As described herein, before playing the game, licensed users of WoW must first assent to the EULA, thereby creating contracts between the users and Blizzard.  Blizzard is informed and believes, and on that basis alleges, that users of Turtle WoW have assented to the EULA.

131.   Blizzard's contracts with its users are valid and enforceable.

132.   Blizzard is informed and believes, and on that basis alleges, that Defendants are aware of the contracts between Blizzard and its users, and additionally are aware of the EULA by virtue of their own personal Battle.net accounts.  Defendants specifically are aware that the EULA prohibits WoW players from using emulated servers and from downloading and installing unauthorized versions of WoW.  Nevertheless, Defendants intentionally induce users of WoW to use the Turtle WoW Servers in breach of WoW users' contracts with Blizzard.

133.   By inducing licensed users to breach their contracts with Blizzard, Defendants intentionally interfere with the contracts between Blizzard and licensed users of WoW.

134.   Defendants' actions were committed willfully and knowingly. Defendants knowingly induced breaches with an improper motive, namely, to profit from "donations" or other fees received from players of Turtle WoW. Defendants also engaged in several independently wrongful acts in furtherance of their interference, including copyright infringement, trademark infringement, violation of the RICO statute, and trafficking in circumvention software, as set forth herein.

**COMPLAINT**

Mitchell
Silberberg &
Knupp LLP
20996914.1

135.   As a result of Defendants' actions, Blizzard has suffered damage in an amount to be proven at trial, including, but not limited to, lost revenue and reputational damage.

136.   Defendants' intentional interference with the contracts between Blizzard and its licensed users entitles Blizzard to injunctive relief and compensatory damages and other available relief.

## COUNT VII

### False Designation of Origin, 15 U.S.C. § 1125(a)

137.   Blizzard realleges each and every allegation set forth in Paragraphs 1 through 136, inclusive, and incorporates them by reference herein.

138.   Blizzard holds multiple United States and international trademarks in the "WORLD OF WARCRAFT" and "WOW" name and distinctive WoW logo, including but not limited to U.S. trademark registration nos. 2972619, 2877945, 3278939, 4071311, 4077617. (the "WoW Marks")

139.   Blizzard also holds multiple United States and international trademarks in the BLIZZARD name and distinctive Blizzard logo, including but not limited U.S. trademark registration nos. 3532348, 1993894, 2490187, 2548929, and 2440620, 2494000 (the "Blizzard Marks").

140.   By virtue of Blizzard's continuous and extensive use in commerce of the WoW Marks and the Blizzard Marks, the WoW Marks and the Blizzard Marks have acquired secondary meaning in the marketplace in connection with Blizzard's goods and services.  Specifically, the WoW Marks and the Blizzard Marks have become closely associate with Blizzard and its high-quality video games.

141.   Defendants have used the WoW Marks and the Blizzard Marks extensively on the Turtle WoW Website, the Turtle WoW social media (including YouTube) accounts, and the Turtle WoW servers.  Moreover, Defendants have used the WoW Marks and the Blizzard Marks in a manner that suggests to

members of the public that Turtle WoW and its infringing content (*i.e.*, its "Mysteries of Azeroth" content) are licensed, authorized, sponsored, or otherwise endorsed by Blizzard.  For example, Defendants have incorporated their "Mysteries of Azeroth" "expansion" name into the WoW logo on their website and in the Turtle WoW game, as illustrated below:



142.   Defendants also prominently display Blizzard's distinctive logo (including the ® symbol) in the Turtle WoW game, even pairing it with the phrase "This is a story expansion made by the Turtle WoW Team, inspired by the Warcraft Universe of Blizzard Entertainment.  World of Warcraft remains the intellectual property of Blizzard Entertainment."



143.   Defendants' actions constitute a use in interstate commerce of a false designation of origin, false or misleading description of fact, or false or misleading representations of fact that are likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of Defendants' products and services with Blizzard, or as to the origin, sponsorship, or approval of the goods and services provided by Defendants in violation of 15 U.S.C. § 1125(a).

144.   Blizzard is entitled to the relief provided by 15 U.S.C. § 1117(a), including, but not limited to, Defendants' profits, Blizzard's damages, and the costs of this action.

145.   Defendants knew of Blizzard's rights, and their infringement has been knowing, willful, and deliberate, such that the Court should award Blizzard its attorneys' fees pursuant to 15 U.S.C. § 1117.

146.   Defendants' activities have damaged, and threaten to continue damaging, Blizzard's reputation and goodwill.

147.   Blizzard has been, and continues to be, damaged by such acts in a manner that cannot be fully measured or compensated in economic terms and therefore has no adequate remedy at law.  Furthermore, upon showing a violation of 15 U.S.C. § 1125(a), Blizzard is entitled to a rebuttable presumption of irreparable harm from that violation, and seeks permanent injunctive relief pursuant to 15 U.S.C. § 1116.

## COUNT VIII

### FEDERAL CIVIL RICO – Conduct or Participation in an Enterprise
### (18 U.S.C. § 1962(c))

148.   Blizzard realleges each and every allegation set forth in Paragraphs 1 through 147, inclusive, and incorporates them by reference herein.

149.   Each individual or corporate Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

150.   Each Defendant violated 18 U.S.C. § 1962(c) by the acts and conduct described above, and further described below, and Blizzard was injured as a result.

151.   Defendants had the specific intent to engage in the substantive RICO violations alleged herein.

<u>The Enterprise</u>

152.    Defendants together form an association-in-fact enterprise in the pursuit of a common and continuing purpose, *i.e.*, the development, marketing, sale and distribution of Turtle WoW, which allows users to access unauthorized modified copies and adaptations of both Blizzard's protected client software and WoW servers in violation of the Copyright and Lanham Acts as well as Blizzard's EULA.

153.    Defendants are members of a development, sales and trafficking enterprise, *i.e.,* "the Enterprise" as described above and herein, through which Turtle WoW is created, marketed, sold and distributed.  Defendants coordinate and work together in order to pursue and carry out the Enterprise's purpose.

154.    In order to choreograph and carry out the conduct of the Enterprise, Defendants necessarily must, and do, establish relationships among their group as members of the Enterprise in order to carry out a common course of conduct, *i.e.,* a sophisticated and lucrative development and sales operation.  Defendants coordinate their efforts to market and distribute Turtle WoW both from and to the United States.  Defendants together have created a website, as well as online forums or message boards using services and platforms based in the United States, in order to coordinate their promotion and sales of Turtle WoW, as well as to provide users of the Turtle WoW Servers with consistent and aligned "customer support" and "technical support" in the United States to U.S. users of Turtle WoW.

155.    The Defendants have operated the enterprise with the longevity sufficient for them to form and pursue a common and consistent purpose of making money from users' continued access of Turtle WoW Client and Servers. The Defendants have together operated and acted through the Enterprise for at least five years, selling and offering Turtle WoW to many thousands of users during that time.

156.   The Enterprise described herein thus constitutes an enterprise within the meaning of 18 U.S.C. § 1961(4).

157.   The Enterprise has engaged in, and their activities have affected, interstate, and even foreign, commerce.  The Enterprise's marketing hub is located within, and directed from, Augusta, Michigan where its Marketing Lead, Defendant Zimmer, resides.  Defendants, working with and through Zimmer, have encouraged thousands of members of the public to undertake thousands of sale transactions (misleadingly termed "donations") across multiple state lines in order to distribute Turtle WoW to users all over the United States.  This U.S.-based marketing scheme coordinates its activity with counterparts located in, *inter alia*, the Netherlands and Russia.

<u>Pattern of Racketeering Activity</u>

158.   The Enterprise is engaged in the conduct of Defendants' affairs through a continuing pattern of racketeering activity.  Defendants, each of whom are separate persons associated with, or employed by, the Enterprise, have and continue to knowingly, willfully and unlawfully conduct or participate in, directly or indirectly, the affairs of the Enterprise through this racketeering activity within the meaning 18 U.S.C. § 1961(1), 1961(5) and 1962(c).

159.   The racketeering activity was effectuated, carried out and/or made possible by Defendants' regular and repeated use of the resources of the Enterprise.  Those resources include the creation of, and access to: unauthorized modified copies of WoW client software and servers; a trove of common marketing and promotional materials for Turtle WoW Client and Turtle WoW Servers; forum and message board accounts; shared, common instructions and educational materials sufficient to allow users to download and access the unauthorized Turtle WoW Client; and the provisions of uniform technical, customer, and payment support to

the many hundreds and thousands of purchasers of Turtle WoW, both in the U.S. and abroad.

160.    Defendants' acts of racketeering activity were, and are, related and continuous; the Enterprise is a well-coordinated marketing machine. Defendants work together to continuously sell and promote Turtle WoW. A network of Defendants have perpetuated the same steps as across thousands of instances of marketing, sales, distribution, and support regarding, Turtle WoW vis-à-vis numerous separate U.S. customers.

161.    Defendants' repeated conduct has occurred during a period of time beginning at least as early as 2018, and continuing to the present. The conduct is ongoing, and there is a continued threat of repetition of such conduct.

<u>Predicate Act of Racketeering Activity</u>

162.    Defendants' conduct constitutes predicate acts of racketeering activity within the meaning of indictable offenses listed within 18 U.S.C. § 1961(1)(B), as more specifically alleged below. Defendants each committed at least two such acts or assisted, aided and abetted such acts.

**Violation of 18 U.S.C. § 2320 (relating to trafficking in goods or services bearing counterfeit marks)**

163.    Defendants committed acts constituting indictable offenses under 18 U.S.C. § 2320.

164.    In violation of § 2320(a)(1), Defendants together operate an enterprise that traffics in computer software and services that knowingly and prominently use and display a "counterfeit mark," here an unauthorized copy of the WoW Marks and Blizzard Marks.

165.    Specifically, Defendants' Turtle WoW Website, social media accounts and copied client software are replete with spurious marks that constitute

"counterfeit marks" within the meaning of 18 U.S.C. § 2320(f)(1) because they are: used in order to market and traffic Turtle WoW; identical or substantively indistinguishable from the Blizzard's registered WoW Marks and Blizzard Marks; used in connection with the same goods and services for which the mark is registered, *i.e.*, computer software and related entertainment services; and the use of the WoW Marks and Blizzard Marks is highly likely to cause confusion.

166.   As alleged herein, Blizzard has suffered harm, and been injured in, the United States.  Blizzard's principal place of business is in California, and the realization and receipt of revenues lost by users who have been diverted to Turtle WoW in order to avoid paying subscription fees, both worldwide and in the United States, would have been realized in California.

## Violation of 18 U.S.C. § 2319 (relating to criminal infringement of a copyright)

167.   Defendants committed acts constituting indictable offenses under 18 U.S.C. § 2319.

168.   As alleged herein and in violation of 17 U.S.C. § 506(a)(1)(A) and (B), Defendants together willfully infringed Blizzard's copyrighted works, including the WoW client software and the dynamic virtual WoW world both for purposes of private financial gain and by the unauthorized reproduction and modification by electronic means of those copyrighted works, which have a total retail value far in excess of $1,000.

169.   As alleged herein, Blizzard has suffered harm, and been injured in, the United States.  Blizzard's principal place of business is in California, and the realization and receipt of revenues lost by users who have been diverted to Turtle WoW in order to avoid paying subscription fees, both worldwide and in the United States, would have been realized in California.

Mitchell
Silberberg &
Knupp LLP
20996914.1

**COMPLAINT**

## COUNT IX

### FEDERAL CIVIL RICO – Conspiracy

### (18 U.S.C. § 1962(d))

170.   Blizzard realleges each and every allegation set forth in Paragraphs 1 through 169, inclusive, and incorporates them by reference herein.

171.   In violation of 18 U.S.C § 1962(d), Defendants knowingly, willfully and unlawfully conspired and continue to conspire to facilitate and carry out the above-described Enterprise, which includes the operation of the Enterprise through a pattern of racketeering activity as alleged herein.

172.   The conspiracy commenced at least as early as 2018, and is ongoing.

173.   The purpose of Defendants' conspiracy was, and is, the development, marketing, sale and distribution of Turtle WoW, which allows users to access unauthorized modified copies and adaptations of both Blizzard's protected client software and WoW servers in violation of the Copyright and Lanham Acts as well as Blizzard's EULA.

174.   Upon information and belief, each Defendant committed at least one overt act in furtherance of the conspiracy, including *inter alia* coding and developing Turtle WoW, providing customer, sales and technical support to U.S. users of Turtle WoW, and marketing and promoting Turtle WoW.

175.   The purpose of Defendants' acts was to advance the overall object of the conspiracy, which in turn was to undertake and promote mass-scale misappropriation of Blizzard's protected copyrights and trademarks.

176.   Blizzard has been, and continues to be, damaged in the United States as a direct and proximate result of Defendants' participation in such conduct. Blizzard has suffered the loss of revenues from hundreds of thousands of users who have been diverted to Turtle WoW in order to avoid paying subscription fees, both worldwide and in the United States.

## **PRAYER FOR RELIEF**

WHEREFORE, Blizzard prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief, including, but not limited to, an Order:

1.    Preliminarily and permanently enjoining Defendants, their officers, employees, agents, subsidiaries, representatives, distributors, dealers, members, affiliates, and all persons acting in concert or participation with them from: (i) infringing Blizzard's copyrighted works; (ii) inducing or contributing to third-party infringements of Blizzard's copyrighted works; (iii) trafficking in circumvention devices; and (iv) intentionally interfering with Blizzard's contracts with players.

2.    Requiring Defendants to shut down Turtle WoW, the Turtle WoW Servers, and any colorable copy thereof, hosted at any domain, address, location, or ISP.

3.    Requiring Defendants to cease from any further development, distribution, marketing, or advertising of the Turtle WoW Client, and any colorable copy thereof, hosted at any domain, address, location, or ISP.

4.    Requiring Defendants to deliver to Blizzard all copies of materials that infringe or violate any of Blizzard's rights described herein, including all versions of the Turtle WoW Client and any Turtle WoW servers.

5.    Requiring Defendants to remove all social media accounts and profiles dedicated to marketing and advertising Turtle WoW, including accounts on X, YouTube, Discord, Facebook, and Instagram, or, if Defendants fail to do so, requiring such social media networks to terminate or disable access to Defendants.

6.    Requiring any and all service providers or vendors providing services to Defendants in furtherance of the operation of Turtle WoW, including hosting services, payment processing services, domain registration services, CDN (content delivery network) services, to cease providing such services.

Mitchell
Silberberg &
Knupp LLP
20996914.1

7.      Requiring, to the extent permissible under U.S. law, internet service providers located in the United States to cease providing access to Turtle WoW and the Turtle WoW Website, such as by blocking or restricting the IP addresses of the Turtle WoW Servers and Turtle WoW Website.

8.      Transferring the Turtle WoW domain name to Blizzard.

9.      Requiring Defendants to provide Blizzard with an accounting of any and all monies collected in connection with products or services that infringe or violate any of Blizzard's rights described herein.

10.      Awarding Blizzard monetary relief, including damages sustained by Blizzard in an amount not yet determined, including actual or statutory damages for copyright infringement, willful copyright infringement, and trafficking in circumvention devices under 17 U.S.C. § 504 and § 1203 and other applicable laws as appropriate.

11.      Awarding Blizzard its costs and attorneys' fees in this action pursuant to 17 U.S.C. § 505 and § 1203 and other applicable laws.

12.      Awarding such other and further relief as this Court may deem just and appropriate.

DATED: August 29, 2025                 MARC E. MAYER
                                       THERESA B. BOWMAN
                                       MITCHELL SILBERBERG & KNUPP LLP


                                       By: /s/ Marc E. Mayer
                                           Marc E. Mayer
                                           Attorneys for Blizzard Entertainment, Inc.

1

## **JURY DEMAND**

2
Blizzard demands a trial by jury on all issues so triable.

3

4
DATED: August 29, 2025          MARC E. MAYER
                                THERESA B. BOWMAN
5                               MITCHELL SILBERBERG & KNUPP LLP

6
                                By: */s/ Marc E. Mayer*
7                                   Marc E. Mayer
                                    Attorneys for Blizzard Entertainment, Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

20996914.1

**COMPLAINT**

## <u>Schedule A:</u>
## Blizzard's Copyrighted Works Infringed by Defendants

| TITLE | Claimant | Certificate No. | Date of Registration |
|---|---|---|---|
| World of Warcraft | Blizzard Entertainment, Inc. | PA 1-247-131 | 29-Nov-04 |
| World of Warcraft--server | Blizzard Entertainment, Inc. | TXu 1-166-151 | 29-Jul-04 |
| World of Warcraft--client: beta 3. | Blizzard Entertainment, Inc. | TX 5-984-004 | 29-Jul-04 |
| World of Warcraft: The Burning Crusade | Blizzard Entertainment, Inc. | PA 1-333-913 | 23-Mar-07 |
| World of Warcraft: Wrath of the Lich King | Blizzard Entertainment, Inc. | PA 1-611-882 | 26-Nov-08 |
| World of Warcraft: CATACLYSM (video game) | Blizzard Entertainment, Inc. | PA 1-711-157 | 9-Dec-10 |

**49**