MARC E. MAYER (SBN 190969)
  mem@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

THERESA B. BOWMAN (*admitted pro hac vice*)
  tbb@msk.com
MITCHELL SILBERBERG & KNUPP LLP
1818 N St., NW
Washington, D.C. 20036
Telephone: (202) 470-2752
Facsimile: (202) 470-2776

Attorneys for Plaintiff,
Blizzard Entertainment, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLIZZARD ENTERTAINMENT, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>TURTLE WOW, an entity of unknown form; AFKCRAFT LIMITED, a Hong Kong Company; YULIA SAVKO a/k/a JULIA SAVKO a/k/a Torta and Shenna, an individual; ERIC MAUSER a/k/a Shagu and Meph1s, an individual; JOSIAH ZIMMER a/k/a Akalix, an individual; STEFAN KOSTOV a/k/a brotalnia, an individual, JESSE LAUTENBACK a/k/a Niralthas, an individual, COSMIN POP a/k/a xerron, an individual, JAMEY DIEPBRINK a/k/a Jamma an individual, MAROS BETKO a/k/a Haaxor, an individual, MARCO KRETAS a/k/a MARCO KAPTEIN a/k/a Kruxis, an individual; ALEX JULEV a/k/a PepeSmite, an individual; and DOES 1 through 10, inclusive,,<br><br>Defendants. | CASE NO. 2:25-cv-08194-SVW (SKx)<br><br>[Assigned to Honorable Stephen V. Wilson]<br><br>***EX PARTE* APPLICATION OF PLAINTIFF BLIZZARD ENTERTAINMENT, INC. FOR LIMITED EARLY DISCOVERY TO IDENTIFY DOE DEFENDANTS**<br><br>[Declaration of Marc E. Mayer and (Proposed) Order filed concurrently herewith]<br><br>Complaint Filed: August 29, 2025 |

## NOTICE OF *EX PARTE* APPLICATION

**PLEASE TAKE NOTICE** that Plaintiff Blizzard Entertainment, Inc. ("Plaintiff" or "Blizzard") hereby applies *ex parte* pursuant to Federal Rule of Civil Procedure 26(d) and Local Rule 7-10 for leave to serve fifteen third party (15) subpoenas necessary for Blizzard to learn the identities of unnamed or alias "Doe" Defendants in this action and to discover whether there are additional necessary parties that must be named in this lawsuit.

The Defendants in this lawsuit operate, oversee, provide services for, or otherwise participate in an online business venture called "Turtle WoW," by which Defendants distribute – and encourage and enable members of the public to copy and play – an unauthorized version of Blizzard's highly popular computer role-playing game *World of Warcraft*, without possessing a licensed copy of the game. Complaint (ECF 1) ¶¶ 4-5.  The defendants in this action have been, *inter alia*, distributing infringing copies of *WoW* computer software on a massive scale, creating unauthorized derivative works of *WoW,* disabling or circumventing security features integrated into the *WoW* software, and marketing their service using Blizzard's copyrighted artwork, characters, and distinctive logos and trademarks.  *Id.* ¶ 10.

Blizzard's investigation has revealed that in addition to the named Defendants in this case (ten individuals and two entities), numerous other anonymous individuals (as many as 20 such individuals) are independently and directly engaged in distributing infringing Turtle WoW software, maintaining or administering the Turtle WoW Website, providing technical support or assistance, and/or assisting with the development of Turtle WoW.  These individuals engage in unlawful activities using online aliases.  Blizzard thus has been unable to determine the true names and capacities of these individuals or entities prior to filing this lawsuit, and have reason to believe that these individuals will continue to conceal their identities.  In order for Blizzard to obtain the relief it seeks, and to

ensure that all appropriate parties are included as Defendants in this lawsuit, expedited third-party discovery is necessary to identify the Doe Defendants as well as any additional unnamed parties.

Blizzard seeks leave to serve limited subpoenas upon the following entities: **(1) Google LLC, dba YouTube, LLC; (2) X Corp.; (3) Reddit, Inc; (4) Paypal, Inc.; (5) Payment Wall; (6) Namecheap, Inc.; (7) Meta Platforms, Inc., dba Instagram; (8) Github, Inc.; (9) Discord, Inc.; (10) Cloudfare, Inc.; (11) Linkedin, Inc.; (12) Unreal Engine (Epic Games, Inc.); (13) SoundCloud, Inc.; (14) Spotify USA, Inc.; (15) Apple, Inc. dba Apple Music.**

Good cause exists for the requested limited discovery. This case involves Copyright and Trademark Infringement, violations of Section 1201 of the Digital Millennium Copyright Act, claims for intentional interference with contract, and claims for unfair competition and RICO violations. These claims are supported by law and will easily be proven. Blizzard has conducted an extensive and diligent investigation and has concluded that: (1) subpoenas are necessary to identify a number of Doe Defendants and confirm the identities and contact information of any additional necessary parties, and (2) the entities identified herein are in possession of critical information that will either disclose the Doe Defendants' true identities, or lead to the discovery thereof. Accordingly, Blizzard requests limited early discovery to identify the Doe Defendants and ensure that all such persons or entities are named in the action.

This Application is made on an *ex parte* basis, because Blizzard cannot serve the potentially impacted parties, since it does not know their identities. Additionally, if Blizzard is required to bring a noticed motion, it is likely that it will not obtain the requested information for several months, at the earliest. Specifically, the first available hearing date is November 17, 2025. If the motion were to be granted on that day, Blizzard would likely not receive the requested information until late-December or early January 2026. Blizzard then would be

required to amend its Complaint and locate and serve any new or additional parties. As a result, without the requested expedited relief, this case potentially would be delayed for many months. In the meantime, Blizzard has reason to believe that the Doe Defendants are deleting their online posts and online profiles. It is thus critical that they be identified, added to the Complaint and served as soon as possible so that they may be put on notice of their obligations regarding spoliation of evidence.

The one defendant that has appeared in this action, Josiah Zimmer, has indicated through his counsel that he intends to oppose this application, though he also has indicated that at this time he will not voluntarily disclose information that he has concerning unidentified or unserved Defendants or commit to an immediate Rule 26 conference. Accordingly, Blizzard cannot seek third party discovery without leave to do so. Zimmer also has indicated that his position is the same irrespective of the timing of this motion (i.e., whether presented *ex parte* or as a noticed motion). Zimmer will have four days (until October 14, 2025) to present any opposition. Notice is being given to: **Frederick Douglas**, fdouglas@cox.net, **15333 Culver Drive, Suite 340 Irvine, California 92604-305**, **(949) 293-0442**; **Oxana Lukina**, olukina@cll-law.com and **Kyle Seiss** kseiss@cll-law.com, **99 Brookside Ave., Chester, NY 10918, 845-291-1900**.

This Application is based upon this Notice, the attached Memorandum of Points and Authorities, the attached supporting Declaration of Marc E. Mayer, the Complaint in this action, and such other and further oral or documentary evidence and legal memoranda as may be presented at or before any hearing on this Application.

DATED: October 10, 2025

MARC E. MAYER
THERESA B. BOWMAN
MITCHELL SILBERBERG & KNUPP LLP

By: */s/ Marc E. Mayer*
Marc E. Mayer
Attorneys for Blizzard Entertainment, Inc.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ...................................................................................9

II.   STATEMENT OF FACTS.....................................................................11

III.  BLIZZARD SHOULD BE GRANTED LEAVE TO TAKE LIMITED
      THIRD PARTY DISCOVERY................................................................16

      A.   The Requested Discovery Will Identify Specific Unnamed
           Individuals Who are Subject to Jurisdiction in This Court................18

      B.   Blizzard Has Taken Reasonable Steps to Locate and Identify the
           Unnamed Defendants. ...............................................................20

      C.   Blizzard's Claims Will Withstand a Motion to Dismiss. ...................21

      D.   The Requested Discovery is Likely to Reveal the Identities of the
           Doe Defendants.......................................................................23

      E.   The Need for the Requested Discovery Outweighs Any
           Conceivable Prejudice to Defendants. ..........................................23

IV.   CONCLUSION .................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

## CASES

*Activision Publishing, Inc. v. Engineowning UG*,
2023 WL 3272399 (C.D. Cal. April 4, 2023)......................................................19

*Adobe Sys. Inc. v. One Stop Micro, Inc.*,
84 F. Supp. 2d 1086 (N.D. Cal. 2000)................................................................23

*American LegalNet, Inc. v. Davis*,
673 F. Supp. 2d 1063 (C.D. Cal. 2009)..............................................................16

*Blizzard Ent., Inc. v. Bossland GmbH*,
No. SACV161236DOCKESX, 2017
WL 412262 (C.D. Cal. Jan. 25, 2017)...............................................................19

*Blizzard Ent., Inc. v. Joyfun Inc Co., Ltd.*,
No. SACV191582JVSDFMX, 2020 WL 1972284, at *6
(C.D. Cal. Feb. 7, 2020) ....................................................................................19

*Blizzard Entertainment Inc. v. Ceiling Fan Software LLC*,
28 F. Supp. 3d 1006 (C.D. Cal. 2013)................................................................23

*Calder v. Jones*,
465 U.S. 783 (1984) ...........................................................................................20

*Core-Vent Corp. v. Nobel Industries AB*,
11 F.3d 1482 (9th Cir. 1993) .............................................................................20

*Craigslist, Inc. v. Naturemarket, Inc.*,
694 F. Supp. 2d 1039 (N.D. Cal. 2010)..............................................................19

*Davidson & Assocs., Inc. v. Internet Gateway*,
334 F. Supp. 2d 1164 (E.D. Mo. 2004),
*aff'd*, 422 F.3d 630 (8th Cir. 2005)...................................................................22

*Geddes v. United Fin. Grp.*,
559 F.2d 557 (9th Cir. 1977) .............................................................................21

*Gillespie v. Civiletti*,
629 F.2d 637 (9th Cir. 1980) .............................................................................17

Mitchell
Silberberg &
Knupp LLP

21082571.4

***EX PARTE* APPLICATION FOR LIMITED EARLY DISCOVERY**

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Hallet v. Morgan*,
  296 F.3d 732 (9th Cir. 2002) ................................................................. 16

*Knapp v. Americredit Fin. Servs., Inc.*,
  204 F.R.D. 306 (S.D. W.Va. 2001) ........................................................ 23

*Maclin v. Paulson*,
  627 F.2d 83 (7th Cir. 1980) ................................................................... 17

*Munz v. Parr*,
  758 F.2d 1254 (8th Cir. 1985) ............................................................... 17

*Nexon Am., Inc. v. S.H.*,
  No. CV 10-9689 PA (JCX),
  2011 WL 13217951 (C.D. Cal. Dec. 13, 2011) ................................... 21

*NobelBiz, Inc. v. Wesson*,
  2014 WL 1588715 (S.D. Cal. Apr. 18, 2014) ...................................... 16

*Rose v. Abraham*,
  2008 WL 3540542 (E.D. Cal. Aug. 13, 2008) ..................................... 16

*Semitool, Inc. v. Tokyo Electron Am., Inc.*,
  208 F.R.D. 273 (N.D. Cal. 2002) .................................................... 16, 24

*Skout, Inc v. Jen Processing, Ltd*,
  2015 WL 224930 (N.D. Cal. Jan. 15, 2015) ....................... 17, 18, 19, 20, 21, 23

*UMG Recordings, Inc. v. Doe*,
  2008 WL 2949427 (N.D. Cal. July 30, 2008) ...................................... 16

*UMG Recordings, Inc. v. Doe*,
  2008 WL 4104214 (N.D. Cal. Sept. 3, 2008)................................... 17, 24

*Valentin v. Dinkins*,
  121 F.3d 72 (2d Cir. 1997) ................................................................... 17

Mitchell
Silberberg &
Knupp LLP

21082571.4

***EX PARTE* APPLICATION FOR LIMITED EARLY DISCOVERY**

# TABLE OF AUTHORITIES
<u>(continued)</u>

**<u>Page(s)</u>**

## STATUTES

17 U.S.C.
  § 106 ................................................................................................21
  § 501 ................................................................................................21
  § 1201(a)(2) ......................................................................................22
  § 1201(b)............................................................................................22

***EX PARTE* APPLICATION FOR LIMITED EARLY DISCOVERY**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This lawsuit arises from the intentional and massive infringement of the intellectual property rights of Plaintiff Blizzard Entertainment, Inc. ("Blizzard") by a group of individuals doing business as "Turtle WoW" (or, the "the Turtle WoW Enterprise"). *See, e.g.,* Complaint (ECF 1) ("Compl.")  ¶¶ 4-10.  Turtle WoW owns and operates an unauthorized "private" or emulated server for Blizzard's popular computer role-playing game *World of Warcraft* ("*WoW*").  *Id.*  In the ordinary course of its business, Turtle WoW has distributed (and is continuing to distribute) thousands of pirated copies of Blizzard's copyrighted *WoW* software, and has created unauthorized derivative works of *WoW* (including by distributing unauthorized "expansions" and revisions to the game) on a massive scale.  *Id.*  The Turtle WoW Enterprise also has used hundreds of images, screen captures, in-game assets, and artwork to market its infringing server that infringe upon Blizzard's valuable, protected intellectual property.  *Id.*; *see also* ¶¶ 60-68.

Like many unlawful online business ventures, Defendants operate in the shadows, using anonymous online aliases, private chat channels, fictitious shell corporations, Internet proxy or masking services, invite-only channels on social media networks, and online financial services in order to hide their identities and minimize their online footprints.  Defendants' conduct has caused, and is continuing to cause, significant monetary and reputational harm to Blizzard and its products.  Accordingly, by this motion, Blizzard requests leave of court to issue a set of narrowly-tailored third party subpoenas designed to elicit the identities of certain specific individuals whose online aliases have been found in Blizzard's investigation to be heavily involved in the operation of the Turtle WoW Enterprise. The requested subpoenas are directed to social media platforms, payment platforms, a domain name registrar, a video game development platform, and digital music services.

Mitchell Silberberg & Knupp LLP

21082571.4

Good cause exists for this request. Through its extensive pre-filing investigation, Blizzard believes that it has identified several specific individuals. However, because Blizzard's investigation has been limited to publicly available information, third party discovery is the only way that Blizzard can verify the results of its investigation. Additionally, such third party discovery is necessary to identify the persons behind the remaining unknown aliases who are actively and deliberately engaged in conduct intended to harm Blizzard. In other words, the only way to ensure that all necessary individuals are included in this lawsuit (and have been served) is to seek circumscribed early discovery. The discovery sought by this *Ex Parte* Application should disclose information that will enable Blizzard to uncover the real names and locations of the remaining individuals responsible for the operation of the Turtle WoW Website and the development, promotion, and sale of Turtle WoW.

To be clear, by the subpoenas requested herein, Blizzard is **only** seeking information necessary to discover or confirm the **identity** of the individuals involved in the Turtle WoW Enterprise; it is not seeking the **content** of any email correspondence or chat logs. Additionally, this application has nothing to do with, and will **not** impact, the one defendant that has appeared in this action, Josiah Zimmer (a/k/a Akalix). The requested discovery **is not targeted to identifying Zimmer or his business activities** (and it is not an end-run around party discovery); it is intended only to reveal information relevant to identifying individuals who have been conducting business using anonymous online handles and/or operating official "Turtle WoW" channels or accounts and ensuring that all relevant individuals have been identified and finding contact information so that they can be served. In fact, Zimmer has refused to voluntary provide any information about any third parties and would not commit to engaging in an early Rule 26 conference. *See* Mayer Decl. ¶ 18 & Ex. 6. Thus, it appears that Zimmer intends to delay discovery and obstruct Blizzard's ability to identify his co-defendants.

Mitchell
Silberberg &
Knupp LLP

21082571.4

*EX PARTE* APPLICATION FOR LIMITED EARLY DISCOVERY

There will be no prejudice to any of the Defendants (named or unnamed) if the requested discovery is permitted.  The requested discovery is quite limited, and Blizzard would be entitled to this third party discovery in the normal course.  In addition, the impacted party will have a full opportunity to object or move to quash, if he or she so elects.  (And, of course, any Doe Defendant who is identified and added as a named defendant will have a full opportunity to present his or her defenses to the merits of the claims.)  Should any additional discovery be necessary, Blizzard will seek leave of Court to serve that discovery as required.

## II.    STATEMENT OF FACTS

Blizzard is a video game developer and publisher, and the owner of all rights, title, and interest in the immensely popular online video game titled *World of Warcraft* ("WoW").  Compl. ¶ 1.  In this lawsuit, Blizzard has asserted intellectual property and related claims (including claims for copyright infringement, trademark infringement, violation of the anti-circumvention provisions of the DMCA, intentional interference with contract, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO")) against the owners and operators of an unauthorized "private" or emulated server known as "Turtle WoW."

Via the "Turtle WoW" Enterprise, Defendants encourage and enable members of the public to access and play *WoW* without Blizzard's authorization and without possessing a licensed copy of the game.  *Id*. ¶¶ 4-5.  In the normal course of business, the defendants in this action have been, *inter alia*, distributing infringing copies of *WoW* on a massive scale, creating unauthorized derivative works of *WoW,* disabling or circumventing security features integrated into the *WoW* software, and marketing their service using Blizzard's copyrighted artwork, characters, and distinctive logos and trademarks.  *Id*. ¶ 10.  Turtle WoW is a for-

Mitchell
Silberberg &
Knupp LLP

21082571.4

*EX PARTE* APPLICATION FOR LIMITED EARLY DISCOVERY

profit business, which generates revenue by soliciting monetary "donations" from its thousands of "members" in exchange for in-game rewards.  Complaint ¶ 19.

This lawsuit was filed on August 29 against ten individual defendants and two entity defendants, including Defendants.  *See generally id.*  Immediately after it was filed, it received extensive press attention, and stories about the lawsuit were published in Newsweek, Yahoo, Screen Rant, The Gamer, GameSpot.  *See* Declaration of Marc Mayer ("Mayer Decl.") ¶ 12.  Additionally, Turtle WoW customers extensively discussed the lawsuit in several online communities dedicated to Turtle WoW, including on platforms like Reddit, Discord, and Turtle WoW's own community forum.  *See id.*  ¶¶ 13, 15.  On the day after the lawsuit was filed, one key Turtle WoW administrator posted the following message on Discord (which apparently was commented on by thousands of people):



*Id.* ¶ 13 & Ex. 1.

The participants in the Turtle WoW Enterprise conduct business entirely through anonymous online handles.  *Id.* ¶¶ 8, 9.  For example, the owner and driving force behind the Enterprise is an individual that has gone by the name "Torta."  *Id.* ¶ 4.  While Blizzard has reason to believe that Torta is an individual based in Russia (Julia Savko), Torta has gone to great lengths to keep his or her identity secret and make it difficult to be served, such as by terminating his or her Discord and GitHub accounts and all publicly available email addresses.  *Id.* ¶ 15. The other owners, operators, and administrators of the website use names such as

"Kruxis," "Cregge," "Niralthas," and "Brotalnia." *Id.* ¶¶ 4, 9. The Turtle WoW website (located at www.turtle-wow.org) does not disclose the real names of any of the people that are responsible for operating the Turtle WoW private server or collecting money on behalf of the Turtle WoW Enterprise. *Id.* ¶ 6. Likewise, all "customer service" activities are performed by anonymous individuals under their user names. *Id.* ¶ 4.

Prior to filing this lawsuit, Blizzard conducted an extensive, months-long investigation in an effort to identify the owners and operators of Turtle WoW. *Id.* ¶ 3. That investigation necessarily was limited, because Blizzard and its investigators were required to rely on publicly available information. *Id.* ¶ 5. Nevertheless, Blizzard believes it was able to identify at least some of the individuals who operate the Turtle WoW Enterprise, as well as certain corporate details regarding two companies associated with the Enterprise (*i.e.*, the Turtle WoW Entity and AFKCraft Limited). *Id.* ¶ 4. However, since Blizzard did not have access to any internal party or third party documents, such as the names and addresses used to obtain online services (such as web hosting services, payment processing services, domain registration services, and social media registrations), Blizzard cannot be certain that it has identified all of the necessary defendants or that contact information is current. Additionally, despite its best efforts, Blizzard has not been able to discover the real names of several other individuals, such as those using the aliases: "Shang," "Cregge," "Nolin," "TinyChuck," "Dragunovi," "Tor-Tun," "Bowser," "Moon," "Serendipity," "crite_," "charlesi," "voji_ciech," "moriena," "ghost904," "mchang," "quesme," "gheor7," "Vanth," "Pompa," "Dormilon," and "Tinyfin." Blizzard's investigators have exhausted all reasonable efforts to identify these defendants using the data and resources available to them. *Id.* ¶ 9.

Blizzard has reason to believe that all of these aliases correspond to real persons who play direct, significant roles in connection with the Turtle WoW enterprise and the sale of Turtle WoW. *Id.* ¶ 10.

**The Requested Discovery.** Blizzard's investigation disclosed that Defendants (including the Doe Defendants) use a variety of online services to engage in their activities. These services include social media networks, payment processors, domain name registrars, and audio streaming services. *Id.* ¶ 16. Blizzard has reason to believe that each of these online services possesses critical information that will enable Blizzard to identify the Doe Defendants and any other anonymous individuals who create, sell, market, and otherwise promote Turtle WoW, as well as to confirm the role that each of the named Defendants have played in the Enterprise. The requested third-party discovery falls into the following categories (as summarized within the Mayer Decl. ¶ 16):

**1. Social Media Platforms.** Defendants use several social media networks and platforms to advertise Turtle WoW, communicate with customers, and announce updates. The most prominent of these is Discord, which is a communications platform focused on the video game community. Defendants regularly communicate with each other on Discord, including through an official Turtle WoW Discord "server." Defendants, including the Doe Defendants, also possess X/Twitter, Instagram, Reddit, YouTube, and LinkedIn accounts that they use to promote Turtle WoW and otherwise communicate their activities to the public. These social media platforms require users to create an account by providing names and valid email addresses. They also keep records of IP addresses used to create and access these accounts. Accordingly, Defendants expect that subpoenas to these platforms will produce critical information that will greatly assist in identifying the Doe Defendants or other unnamed defendants that are involved with Turtle WoW and locating current contact information for named and unnamed Defendants. One key Defendant, Torta, has already recently deleted

their Discord account, confirming that there is a genuine need to move quickly to obtain this information from Discord before it is lost.

**2.    Payment Processors.**  Defendants use various online payment processors to sell Turtle WoW to the public.  Defendants also may use these payment processors to transfer money between and among themselves.  Among the payment processors used by Defendants are PayPal and Payment Wall.  Blizzard believes that these payment processors will possess critical information about the Doe Defendants, including email addresses, IP addresses, and other account information.

**3.    Domain Name Services.**  Defendants have registered domain names for the Turtle WoW Website and other related websites through a domain registrar located in the United States: NameCheap, Inc.  Blizzard expects this entity is in possession of relevant information, such as names, addresses, email addresses, and IP addresses for the Doe Defendants and unknown aliased individuals.  Additionally, Defendants use the services of Cloudflare to conceal the identity of the service provider that hosts the servers that Defendants use to host the Turtle WoW Website.

**4.    Github Code Repositories.**  Defendants operate or contribute to repositories of computer code related to Turtle WoW.  These code repositories are maintained by Github.  Github allows members of the public to upload and share computer code and modify or improve code uploaded by others.  Github users must register accounts with the service, and thus Github will be in possession of relevant identifying information.

**5.    Epic Games.**  Defendants have publicized that they are in the process of developing a complete replica of WoW using the Unreal video game engine, which is made available to the public by Epic Games, located in North Carolina.  To gain access to the Unreal engine, Defendants (or some of them) would have had to create accounts with Epic Games and agree to Epic's Terms of Service.  Thus,

Epic Games is likely to have information about the individuals who have licensed it to operate Turtle WoW.

Blizzard's request is made in good faith and for the legitimate purpose of identifying unknown aliased individuals who have been pursued in this action as Defendants – before Defendants are able to delete that information, as they appear to be presently doing. *Id.* ¶ 15. The proposed subpoenas will be narrow and limited only to information that is relevant to the identification of these unknown individuals or other as-yet-unknown operators of Turtle WoW.

Blizzard will provide the third parties with no less than 21 days to respond to the subpoenas and is prepared to work with any third parties to protect any private information (such as social security, bank account, or passport numbers), including (if necessary) by entering into a stipulated protective order.

## III.    BLIZZARD SHOULD BE GRANTED LEAVE TO TAKE LIMITED THIRD PARTY DISCOVERY.

District courts have broad discretion in scheduling discovery, including broad discretion to order expedited discovery prior to a Rule 26 conference. *Hallet v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). The court may authorize expedited discovery for "good cause." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002); *accord American LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009); *NobelBiz, Inc. v. Wesson*, 2014 WL 1588715, at *1 (S.D. Cal. Apr. 18, 2014); *Rose v. Abraham*, 2008 WL 3540542, at *3 (E.D. Cal. Aug. 13, 2008); *UMG Recordings, Inc. v. Doe*, 2008 WL 2949427, at *3 (N.D. Cal. July 30, 2008) (collecting cases).

Good cause generally exists "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool*, 208 F.R.D. at 276. In determining whether good cause exists for pre-service discovery, courts consider whether: (1) the plaintiff can

identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) the plaintiff has identified all previous steps taken to locate the elusive defendant; (3) the plaintiff's suit against defendant could withstand a motion to dismiss; and (4) the plaintiff has demonstrated that there is a reasonable likelihood of being able to identify the defendant through discovery such that service of process would be possible. *Skout, Inc v. Jen Processing, Ltd*, 2015 WL 224930, at *2 (N.D. Cal. Jan. 15, 2015).

As set forth below, good cause plainly exists for the requested limited expedited discovery. In fact, Courts routinely allow early discovery to identify anonymous or "Doe" defendants such as the Doe Defendants in this action. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) ("[W]here the identity of [the] alleged defendant[] [is] not [] known prior to the filing of a complaint[,] the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds[.]"); *Valentin v. Dinkins*, 121 F.3d 72, 75-76 (2d Cir. 1997); *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985); *Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980). Such discovery is especially appropriate where individuals "pseudonymously or anonymously" commit tortious acts over the Internet. *UMG Recordings, Inc. v. Doe*, 2008 WL 4104214, at *4 (N.D. Cal. Sept. 3, 2008) ("In Internet infringement cases, courts routinely find good cause exists to issue a Rule 45 subpoena to discover a Doe defendant's identity, prior to a Rule 26(f) conference, where a plaintiff makes a prima facie showing of infringement, and there is no other way to identify the Doe defendant, and there is a risk an ISP will destroy its logs prior to the conference.") (citation omitted). The Court likewise should allow such discovery here.

A.    <u>**The Requested Discovery Will Identify Specific Unnamed**</u>
<u>**Individuals Who are Subject to Jurisdiction in This Court.**</u>

Under the first factor, "the Court must examine whether the Plaintiff has identified the Defendants with sufficient specificity, demonstrating that each Defendant is a real person or entity who would be subjected to jurisdiction in this Court." *Skout, Inc*, 2015 WL 224930, at *2.

Blizzard's Complaint includes specific allegations that each of the Defendants, including the Doe Defendants, is a real individual who has undertaken a demonstrated effort to develop, maintain, and distribute Turtle WoW, assist customers in accessing and playing Turtle WoW, give advice to customers as to how to operate and access Turtle WoW, communicate to users about updates and improvements to Turtle WoW, act as moderator and/or administrator of the Turtle WoW Website, or otherwise facilitate the distribution and use of Turtle WoW. Compl. ¶¶ 19-32; *see also* Mayer Decl. ¶ 4. Blizzard has identified a number of specific online aliases and personas associated with Turtle WoW, and has identified a discrete and specific discovery plan to confirm some aliases' identities and unmask others. Mayer Decl. ¶¶ 9-11, 16. The online activity engaged in by Defendants is in service of promoting widespread sales and use of Turtle WoW. *Id.* at ¶¶ 4, 8, 10. Therefore, the requested third party discovery is likely to uncover substantially more information about the Doe Defendants. The requested discovery will also provide a tangible trail of evidence that will enable Blizzard to ascertain precisely who is behind these pseudonyms and where he, she, or they are located, so they may be identified, and if possible, named as defendants in this action.

Blizzard also has sufficiently alleged that the unnamed Doe Defendants are subject to the jurisdiction of this Court. *See* Compl. ¶ 15 (including specific allegations explaining why "all Defendants have, *inter alia,* engaged in, contributed to, and induced the infringing conduct at issue within the United States

Mitchell
Silberberg &
Knupp LLP

21082571.4

***EX PARTE* APPLICATION FOR LIMITED EARLY DISCOVERY**

and the State of California and, among other things, purposefully have directed their activities at the United States and at California"); *see also Skout, Inc*, 2015 WL 224930, at *2 (finding that the allegations of the plaintiff's complaint showed personal jurisdiction over unnamed defendants).  Without discovery, Blizzard cannot conclusively determine where the Doe Defendants reside, but some or all of them may be located in the United States.  Regardless, when foreign individuals advertise and distribute malicious software products in the United States, knowing that the software will be used to disrupt the business activities of a U.S. company and interfere with contracts between the company and its customers, they may be subject to personal jurisdiction in U.S. federal courts.  *See, e.g., Activision Publishing, Inc. v. Engineowning UG,* 2023 WL 3272399 (C.D. Cal. April 4, 2023) (German individuals who created and sold infringing *Call of Duty* cheating software were subject to personal jurisdiction in California); *Blizzard Ent., Inc. v. Bossland GmbH*, No. SACV161236DOCKESX, 2017 WL 412262, at *5 (C.D. Cal. Jan. 25, 2017) (personal jurisdiction over German company selling *World of Warcraft* bots and cheats to U.S. customers); *Blizzard Ent., Inc. v. Joyfun Inc Co., Ltd.,* No. SACV191582JVSDFMX, 2020 WL 1972284, at *6 (C.D. Cal. Feb. 7, 2020) ("The Court finds that Zroad HK purposefully availed itself of the privilege of conducting business in the United States by distributing the Infringing Game on platforms such as the Google Play store and Microsoft App store, selling virtual currency to American customers, and advertising the Infringing Game via platforms like Facebook."); *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1053 (N.D. Cal. 2010) (personal jurisdiction established in California where nonresident defendant: (i) maintained commercial website that was interactive and open to California residents; (ii) knowingly and intentionally accessed and used Plaintiff's website and developed, marketed, and sold software for the sole purpose of enabling users to bypass the security measures of Plaintiff's website, in violation of its TOUs; and (iii) directly targeted California and knew that Plaintiff would

1  suffer the brunt of its harm in California because Plaintiff was headquartered and

2  maintained its website in California).

3      Blizzard's investigation also has revealed that Defendants contract with and

4  extensively use a variety of entities located in the United States and the State of

5  California, including domain name registries and payment processors.  Moreover,

6  Defendants know that their conduct is causing harm to Blizzard in the United

7  States (and the State of California in particular); they have responded specifically

8  to this lawsuit alleging such harm by flagrantly promising to continue to operate

9  the Turtle WoW Enterprise.  Mayer Decl. ¶ 13 & Ex. 1; ¶ 15.

10     The foregoing is more than sufficient to establish specific personal

11  jurisdiction over Defendants, including under the "effects" test of *Calder v. Jones*,

12  465 U.S. 783 (1984).  *See Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482,

13  1486 (9th Cir. 1993) (in tort cases, jurisdiction is appropriate where there are "(1)

14  intentional actions (2) expressly aimed at the forum state (3) causing harm, the

15  brunt of which is suffered – and which the defendant knows is likely to be suffered

16  – in the forum state.").

17  **B.**    **Blizzard Has Taken Reasonable Steps to Locate and Identify the**

18          **Unnamed Defendants.**

19     "Under the second factor, the party should identify all previous steps taken

20  to locate the elusive defendant." *Skout, Inc*, 2015 WL 224930, at *3.  As set forth

21  above, Blizzard has conducted an extensive preliminary investigation, including

22  with the assistance of outside private investigative firms.  Mayer Decl. ¶ 3.  This

23  comprehensive investigation revealed that the Doe Defendants have taken steps to

24  obscure their identities, including by operating shell companies and exclusively

25  using online aliases.  *Id.* ¶¶ 5, 6, 8; *see also* Compl. ¶¶ 20, 21, 32.  Blizzard

26  currently cannot tie these online aliases to real names without additional

27  information maintained by the above-described third parties.  The primary avenue

28  available to Blizzard in order to collect core evidence in this case before it is lost or

Mitchell
Silberberg &
Knupp LLP

21082571.4

*EX PARTE* APPLICATION FOR LIMITED EARLY DISCOVERY

1  destroyed is to seek early discovery to identify those unnamed individuals

2  responsible for the Turtle WoW Website and emulated servers.

3      **C.    Blizzard's Claims Will Withstand a Motion to Dismiss.**

4      Blizzard's claims are straightforward, strong, supported by relevant case

5  law, and would easily survive a Motion to Dismiss.[1]

6      To begin, Blizzard is likely to prevail on its claims for copyright

7  infringement. Blizzard owns valid copyrights in WoW, including the very WoW

8  client software Turtle WoW has exploited, as well as artwork, music, dialogue and

9  characters used in WoW. Compl. ¶ 85. Defendants have straightforwardly

10 infringed Blizzard's copyrights in WoW by reproducing, adapting, and distributing

11 WoW, including the copyrighted elements of the WoW client, game server, and

12 gaming environment, without authorization, in violation of the Copyright Act, 17

13 U.S.C. §§ 106 and 501. *Nexon Am., Inc. v. S.H.,* No. CV 10-9689 PA (JCX), 2011

14 WL 13217951, at *4 (C.D. Cal. Dec. 13, 2011) (operator of private server

15 infringed plaintiff's copyright by distributing multiplayer game client).

16     Blizzard is also likely to prevail on its inducement to infringe copyright,

17 vicarious and contributory copyright claims, given that when users of Turtle WoW

18 in the United States download, install, and copy to their computers the Turtle

19 WoW Client, such users also infringe Blizzard's copyrights in WoW. 17 U.S.C.

20 §§ 106 and 501. *Nexon,* 2011 WL 13217951, at *5 ("It is undisputed that

21 Defendant advertised RydahMS EXE on the Internet, instructed potential users

22 how to download, install and use the server and modified client, and offered

23 extensive technical support to his customers.") Blizzard has pointed to numerous

24 examples in its Complaint of Defendants' active encouragement and inducement of

25 users of Turtle WoW to engage in copyright infringement, including providing

26

27   [1] Similar to a Rule 12 inquiry, a Default Judgment inquiry requires the Court to evaluate the sufficiency of a Complaint's well-pleaded allegations. *Id.* at *2, *Geddes v. United Fin. Grp.*, 559

28 F.2d 557, 560 (9th Cir. 1977).

users with copies of the Turtle WoW Client and providing instructions, encouragement, and technical support on how to install the Turtle WoW Client and play WoW without authorization from Blizzard.

Blizzard also is likely to prevail on its claim for violation of the DMCA, as the Turtle WoW Client contains technologies, products, services, devices, components, or parts thereof that primarily are designed or produced for the purpose of circumventing a technological measure that effectively controls the access to a copyrighted work and that protects the exclusive rights of copyright owners. Compl. ¶ 118. The Complaint explains, in detail, how the Turtle WoW Client works to circumvent a technological measure that effectively controls the access to a copyrighted work and that protects the exclusive rights of copyright owners. The DMCA, Section 17 U.S.C. §§ 1201(a)(2) and (b), provides that no person shall offer to the public, provide, or otherwise traffic in such anti-circumvention technology. Blizzard's allegations are more than sufficient to state such a claim. *See Davidson & Assocs., Inc. v. Internet Gateway*, 334 F. Supp. 2d 1164, 1185 (E.D. Mo. 2004), *aff'd*, 422 F.3d 630 (8th Cir. 2005) ("The bnetd emulator developed by the defendants always allows the Blizzard game to access Battle.net mode features even if the user does not have a valid or unique CD Key, because the bnetd emulator does not determine whether the CD Key is valid or currently in use by another player.")

Blizzard is likely to prevail on its Trademark (False Designation of Origin) claim because Blizzard holds multiple United States and international trademarks in the "WORLD OF WARCRAFT" as well as the "WOW" name and distinctive WoW logo. *Id.* ¶ 138. Blizzard has adequately alleged that the WoW Marks and the Blizzard Marks have acquired secondary meaning in the marketplace in connection with Blizzard's goods and services, given their extensive and long-standing popularity among many millions of players. *Id.* ¶ 140. Blizzard has likewise pointed to multiple uses by Defendants of their protected trademarks on

the Turtle WoW website and in the Turtle WoW game environment. *Id.* ¶¶ 140-142.

Lastly, Blizzard is likely to prevail with regard to its Intentional Interference with Contractual Relations claim. Blizzard's Terms of Use ("TOU") for online services are enforceable contracts under California law. *Blizzard Entertainment Inc. v. Ceiling Fan Software LLC*, 28 F. Supp. 3d 1006, 1015 (C.D. Cal. 2013) (granting summary judgment against hack maker for inducing breach of Blizzard's EULA); *see also Adobe Sys. Inc. v. One Stop Micro, Inc.*, 84 F. Supp. 2d 1086, 1089-93 (N.D. Cal. 2000) (end user license agreement valid under California law). Blizzard has alleged that Defendants are aware of these TOU contracts, and intentionally induce users of WoW to use the Turtle WoW servers in breach of those contracts. Complaint ¶ 132.

### D.    The Requested Discovery is Likely to Reveal the Identities of the Doe Defendants.

"The final factor concerns whether the discovery sought will uncover the identities of the Doe Defendants." *Skout, Inc*, 2015 WL 224930, at *4. Here, the requested discovery will likely reveal the identities of additional individuals or entities responsible for the operation of the Turtle WoW Website and the development, marketing, and sale of Turtle WoW, including the (at least) ten Doe Defendants, because the discovery will seek identifying information that the Doe Defendants would have been required to provide to the target service providers in order to use their services.

### E.    The Need for the Requested Discovery Outweighs Any Conceivable Prejudice to Defendants.

The proposed (limited) expedited discovery will also serve the interests of justice, as it will ensure that all necessary defendants are included in this lawsuit as soon as possible. *See Knapp v. Americredit Fin. Servs., Inc.*, 204 F.R.D. 306, 308-09 (S.D. W.Va. 2001) (granting expedited discovery to determine the identity

of Doe defendants because it "further[s] the goal of assuring that the necessary parties are joined and participating in this action at the earliest possible date"); *Semitool*, 208 F.R.D. at 277 (reasoning that expedited discovery is justified where it will "substantially contribute to moving th[e] case forward"); *see also* Mayer Decl. ¶ 15.  Here, it is critical that Blizzard be able to expeditiously identify and include in this lawsuit all of the individuals responsible for the Turtle WoW Website and Turtle WoW, including and especially the Doe Defendants in this lawsuit, for several reasons:

*First*, online data is often ephemeral in nature and is only retained for a limited period of time before it is destroyed in the ordinary course of business.  *See UMG Recordings, Inc.*, 2008 WL 4104214, at *5 (finding good cause for expedited discovery where there is a risk an online service provider might destroy logs and records of a defendant's identifying information).  The risk of losing critical data and evidence is particularly acute here, since this lawsuit has been publicized by the video game press and thus the Doe Defendants are aware that they have been sued.  They may undertake efforts to make themselves even more difficult to find.  For example, they may switch service providers or domain name providers.  They may transfer assets to other corporations or other individuals.  It appears they have already begun to delete online posts, profiles and accounts.  Mayer Decl. ¶ 15.  They may use alternative payment processors or financial institutions, may move to untraceable currencies such as Bitcoin, or may change their aliases.

*Second*, if Blizzard is required to wait to take discovery until the named defendants appear in the action and participate in a Rule 26 conference (which they may not do), the Doe Defendants may not be named and included in the lawsuit for several months and, potentially, after the Court has already conducted a scheduling conference and set a trial date.  It certainly is in the interests of justice for all necessary parties to be identified, and service commenced, immediately.

*Third*, some aspects of Blizzard's requested relief, such as an order and injunction requiring Defendants to shut down the Turtle WoW Website and emulated servers, and provide an accounting, are only possible if aimed at an identified individual (or individuals).  Blizzard cannot seek such relief until the impacted party has been named and served.

In contrast to the foregoing, there will be no prejudice to Defendants (both named and unnamed) if the Application is granted.  If the Court grants this Application, Blizzard will promptly serve the subpoenas and will provide a reasonable response date for the subpoena (not less than 21 days).  The subpoenaed parties will be able to notify any affected persons that Blizzard is seeking their identities and all parties will have the opportunity to raise objections by filing a motion to quash in this Court before the return date of the subpoena.  Moreover, the subpoenaed parties will be asked for information that they would have eventually provided in the normal course of discovery, so it imposes no extra burden for these same third parties to respond to discovery on an expedited basis. Once Blizzard has obtained the necessary information, it intends to amend its Complaint and serve any additional defendants.

## IV.    CONCLUSION

For the foregoing reasons, Blizzard's *Ex Parte* Application for leave to take expedited discovery should be granted.


DATED: October 10, 2025          MARC E. MAYER
                                 THERESA B. BOWMAN
                                 MITCHELL SILBERBERG & KNUPP LLP


                                 By: */s/ Marc E. Mayer*
                                     Marc E. Mayer
                                     Attorneys for Plaintiff,
                                     Blizzard Entertainment, Inc.

## <u>Certificate of Compliance-L.R.11-6.2.</u>

The undersigned, counsel of record for Blizzard Entertainment, Inc., certifies that this brief contains 5,219 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 10, 2025                    _/s/ Marc E. Mayer_____
                                           Marc E. Mayer

Mitchell
Silberberg &
Knupp LLP

21082571.4

*EX PARTE* **APPLICATION FOR LIMITED EARLY DISCOVERY**