Frederic M. Douglas (Calif. State Bar # 212778)
Attorney At Law
15333 Culver Drive, Suite 340
Irvine, California 92604-3051
Tel: (949) 293-0442
Fax: (949) 203-8768
fdouglas@cox.net

Kyle Seiss (*pro hac vice* pending)
Oxana Lukina (*pro hac vice* pending)
Cohen, Labarbera and Landrigan, LLP
99 Brookside Avenue
Chester, New York 10918
Tel: (845) 291-1900
Fax: (845) 291-8601
fdouglas@cox.net

Attorneys for Defendant
JOSIAH ZIMMER

## THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| BLIZZARD ENTERTAINMENT, INC., a Delaware Corporation,<br><br>        Plaintiff,<br><br>     v.<br><br>TURTLE WOW, an entity of unknown form, AFKCRAFT LIMITED, a Hong Kong Company; YULIA SAVKO a/k/a JULIA SAVKO a/k/a Torta and Shenna, an individual; ERIC MAUSER a/k/a Shagu and Meph1s, an individual; JOSIAH ZIMMER a/k/a Akalix, an individual; STEFAN KOSTOV a/k/a brotalnia, an individual, JESSE | Case No.: 2:25-cv-08194-SVW (SKx)<br><br>**Defendant Josiah Zimmer's Opposition to Plaintiff Blizzard Entertainment, Inc.'s *Ex Parte* Application for Limited Early Discovery to Identify Doe Defendants**<br><br>.<br>Judge: Hon. Stephen V. Wilson<br>Courtroom: 10A |

**OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION**
**- 1**

LAUTENBACK a/k/a Niralthas, an individual, COSMIN POP a/k/a xerron, an individual, JAMEY DIEPBRINK a/k/a Jamma an individual, MAROS BETKO a/k/a Haaxor, an individual, MARCO KRETAS a/k/a MARCO KAPTEIN a/k/a Kruxis, an individual; ALEX JULEV a/k/a PepeSmite, an individual; and DOES 1 through 10, inclusive,

Defendants

**OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION - 2**

## Table of Contents

INTRODUCTION.................................................................................................7

FACTUAL BACKGROUND................................................................................11

ARGUMENT.......................................................................................................16

  A.  Plaintiff has not shown good cause; each factor cuts against expedited

discovery............................................................................................................16

    1. Legal Standard Under Rule 26(d) ...............................................................16

    2.  Burden and factors..............................................................................17

  B.  Plaintiff did not meet standard for ex parte application. ...........................18

    1.  No Pending Injunction or Emergency ...............................................19

    2.  Overbroad in Scope..........................................................................19

    3.  Speculative Purpose .........................................................................20

  C.  Contradiction and Prejudice Toward the Appearing Defendant .................20

    1.  Heavy Burden and Privacy Violations .............................................21

    2.  Premature by Design.........................................................................22

  D.  Blizzard's Allegations Are Conclusory and Unsupported............................22

    1.  Privacy and Fairness Require Denial................................................22

    2.  Delay defeats urgency. .....................................................................23

CONCLUSION....................................................................................................28

**Cases**

*Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945 (N.D. Cal. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*American LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063 (C.D. Cal. 2009) . . . . . . . . . . . . . . . . . 17, 20, 24, 27

*Anonymous Online Speakers*, 661 F.3d at 1175 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 199 F. Supp. 3d 958 (E.D. Va. 2016) . . . . . . . . . . . . . . . . . 12

*Columbia Insurance Co. v. Seescandy.com*, 185 F.R.D. 573 (N.D. Cal. 1999) . . . 11, 14, 17, 19, 20, 26, 27

*Danjaq LLC v. Sony Corp.*, 263 F.3d 942 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Doe v. 2TheMart*.com Inc. 140 F. Supp. 2d 1088 (W.D. Wash. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 259 F.R.D. 385 (E.D. Wis. 2009) . . . . . . . . . . . . . . . 17, 19, 22, 25

*Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . 13, 15

*Holy Ghost Revival Ministries v. City of Marysville*, 98 F.Supp.3d 1153 (W.D. Wash. 2015) . . . . . . . . . . . . . . . 13

*In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F.Supp.3d 868 (2022) . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868 (N.D. Cal. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Malibu Media, LLC v. Doe*, 319 F.R.D. 299 (E.D. Cal. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Moon v. SCP Pool Corp.*, 232 F.R.D. 633 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 24

*Mullane v. Almon*, 339 F.R.D. 659 (N.D. Cal. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Music Group Macao Commercial Offshore Limited v. Does*, 82 F.Supp.3d 979 (ND Cal. 2015) . . . . . . . . . . . . . . . 21

*North Atlantic Operating Co. v. Evergreen Distribs.*, LLC, 293 F.R.D. 363 (E.D.N.Y. 2013) . . . . . . . . . . . . . . . . . 20

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S.Ct. 1962 (2014), 572 U.S. 663 (2014) . . . . . . . . . . . . . . . . . . . 9, 25

*Rovio Entertainment Ltd. v. Royal Plush Toys, Inc.*, 907 F.Supp.2d 1086 (N.D. Cal. 2012) . . . . . . . . . . . . . . . 16, 18

**OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION
- 4**

*SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273 (N.D. Cal. 2002) . . . . . . . . . . . . . . . 14, 16, 22, 28

*Skout, Inc v. Jen Processing, Ltd.*, Case No. 14-CV-02341-JSC (N.D. Cal., Aug. 7, 2014) . . . . . . . . . . . . . . . . . . 27

*Sony Music Ent. Inc. v. Does 1–40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*St. Louis Group, Inc. v. Metals & Additives Corp., Inc.*, 275 F.R.D. 236 (S.D. Tex. 2011) . . . . . . . . . . . . . . . 15

*St. Louis Group, Inc. v. Metals & Additives Corp., Inc.,* 275 F.R.D. 236, 240 (S.D. Tex. 2011) . . . . . . . . . . . 17, 25

*Strike 3 Holdings, LLC v. Doe*, 331 F.R.D. 14 (E.D.N.Y. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Synopsys, Inc. v. AzurEngine Technologies, Inc.*, 401 F.Supp.3d 1068 (2019) . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Walden v. Fiore*, 571 U.S. 277 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 614 (D.Ariz. 2001) . . . . . . . . . . . . . . . . . . 22

**Statutes**

17 U.S.C. § 1201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

17 U.S.C. § 501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

17 U.S.C. § 507(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 25

18 U.S.C. § 2701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

18 U.S.C. §§ 2701–2712 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**Rules**

Federal Rule of Civil Procedure 26(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Local Rule 7-9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Rule 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23, 25

Rule 26(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 24

Rule 26(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 17, 19, 28

Rule 26(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Rule 26(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 15, 16, 20, 22, 23, 27

**OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION**
**- 5**

Rule 4(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Rule 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 22, 23

Rule 45(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Rule 6(a)(1)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Rule 6(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION**
**- 6**

## **MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

The *ex parte* application improperly and prematurely seeks "emergency" expedited discovery aimed in reality at a Defendant, Josiah Zimmer, residing in the State of Michigan who has no ties to California, who has not engaged in any commercial activity whatsoever, let alone any infringing conduct impacting this jurisdiction. Indeed, the Complaint is littered with facially deficient speculative theories and vague group pleading allegations made "upon information and belief" that cannot make out any cause of action against Defendant Zimmer, nor any other Defendant, absent the "urgent" attempt to conduct, in essence, pre action discovery improperly seeking to "verify" facts that Plaintiff hopes can allow them to state a claim where they presently have not[1].

Having represented in pre-motion emails that Plaintiff seeks no discovery against Defendant Zimmer (Plaintiff's Ex.5), Plaintiff's papers hopelessly contradict themselves underlying the premature nature of the instant application that seeks merely to use a Defendant who has no real ties to California and has not engaged in actionable conduct to engage in a speculative overbroad fishing expedition in hopes of making out a cognizable claim about legally permitted conduct Plaintiff's own Complaint concedes they have known about from publicly available sources for several years but done nothing to prevent.

Plaintiff's *ex parte* application does not seem to have been served upon any other named Defendants, not even Defendant AFKCraft Limited, who Plaintiff claims has been served with the summons and complaint (Dkt. No. 20).

---

[1] Defendant Zimmer intends to move for relief under 12(b)(6) and reserves all rights.

**OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION**

**- 7 -**

This case does not arise from an "organized business enterprise" or a "deliberate piracy scheme," as Plaintiff, Blizzard Entertainment, Inc. ("Blizzard" or "Plaintiff") asserts in its Complaint and *ex parte* application.

Plaintiff's own Complaint expressly acknowledges that Turtle WoW "is among the largest and most sophisticated private WoW servers available today." (Compl. ¶ 7.) That admission confirms Blizzard's long-standing awareness of the broader World of Warcraft private-server ecosystem. Blizzard itself pleads that "unauthorized private servers drive away otherwise dedicated WoW players, introduce security risks, fragment the WoW player community, and create confusion as to what are official, supported versions of WoW." (Compl. ¶ 6.) Those statements make clear that Blizzard has for years monitored and studied these community-run servers as part of its own operations.

Blizzard further alleges that Turtle WoW "purports to offer not only Blizzard's original WoW game (which it refers to as 'vanilla WoW') but also a fan-made expansion story," and that the community began operating in or around 2018. (Compl. ¶¶ 7, 56–58.) At the same time, Blizzard admits that the original 2004–2006 version of World of Warcraft, which it calls "vanilla WoW", was no longer supported after 2006, and that it did not reintroduce any official way to play that legacy content until 2019, when it launched World of Warcraft Classic. (Compl. ¶ 37.) Thus, from 2006 through 2019, a period of nearly thirteen years, players who wished to experience the classic game had no official option from Blizzard.

Blizzard also concedes that Turtle WoW publicly promotes itself through mainstream platforms, "including X (Twitter), Discord, YouTube, Instagram, and Reddit." (Compl. ¶ 60.) Those same channels are easily searchable and widely used in the gaming community, confirming that the project was never hidden or underground. Blizzard further admits it conducted an "extensive, months-long investigation" before filing this case on August 29, 2025, based entirely on "publicly available information."

**OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION**
**- 8**

(Compl. ¶¶ 3, 5.) A simple search for "World of Warcraft private server" would have led directly to the Turtle WoW website, which has been publicly indexed for years. If Blizzard genuinely believed such activity violated its rights, it had every opportunity to investigate and act long before 2025. Its own allegations demonstrate actual and constructive knowledge of Turtle WoW's existence, defeating any claim of urgency or newly discovered wrongdoing.

Plaintiff's own pleadings demonstrate that its claims are barred in part by the doctrines of laches and the applicable statute of limitations under 17 U.S.C. § 507(b), and that its delay weighs strongly against extraordinary equitable relief. Blizzard admits that the original "vanilla" version of World of Warcraft was discontinued in 2006 and that it did not reintroduce comparable legacy access until 2019, a thirteen-year gap during which Turtle WoW and similar private servers openly operated to serve the player community. (Compl. ¶¶ 37, 56–58.) Blizzard's own allegations show that Turtle WoW began operating around 2018, yet Blizzard waited until August 29, 2025, to bring suit. Any damages claims outside the three-year lookback of § 507(b) are time-barred, and Blizzard's prolonged delay further undercuts any claim to urgent equitable relief. See *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S.Ct. 1962, 1977 (2014), 572 U.S. 663, 677 (2014).

Having allowed this and other private-server communities to operate in the open for nearly a decade before seeking judicial relief, Blizzard cannot now claim urgent harm or entitlement to extraordinary *ex parte* discovery.

Importantly, Turtle WoW is not a U.S.-based community. On information and belief, based on publicly visible community activity and time-zones, its players are predominantly located in Europe, Asia, China, and other non-U.S. regions, with no game servers physically located in the United States. Any ancillary services (e.g., registrar/DNS/CDN/payment) are commodity third-party tools and do not evidence U.S. operation. The community has always been international, volunteer-driven, and

**OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION**
**- 9**

non-commercial. Its limited administrative functions were performed abroad through independent contractors handling server maintenance or translation. U.S. players have never been targeted as a market or solicited for payments.

The exhibits attached to Plaintiff's ex parte application demonstrate that communications among players concerning only gameplay are no different from other fan or hobbyist communities.

This long-term public operation demonstrates openness and transparency, undermining Plaintiff's claim of urgent need for expedited discovery or newly discovered wrongdoing. Turtle WoW was never a commercial venture but a volunteer-driven preservation and creative-modding effort. On the present record, Blizzard has not produced admissible evidence that Mr. Zimmer copied or distributed Blizzard server code; the community used a publicly developed open-source emulator that has existed independently for over fifteen years.

Defendant Zimmer was never an owner, operator, or developer. Plaintiff's attempt to label his alleged voluntary community engagement as "massive infringement" overstates the facts and, as to Defendant Zimmer, is entirely misplaced.

Blizzard seeks extraordinary relief, a permission to serve fifteen Rule 45 subpoenas on social media, hosting, payment, and music platforms worldwide, before any Rule 26(f) conference and before Defendant Josiah Zimmer has even had the opportunity to challenge personal jurisdiction. Because Blizzard's Complaint includes serious statutory and quasi-criminal allegations, such as claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Digital Millennium Copyright Act ("DMCA"), and federal trademark law, this premature discovery would directly affect Mr. Zimmer's substantial rights. It would expose his personal and online data to broad third-party disclosure and taint his ability to defend himself before jurisdiction and proper pleading issues are resolved.

**OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION
- 10**

Defendant Zimmer has already appeared through counsel. He is a Michigan resident with no physical presence, property, employees, or business operations in California. Blizzard's sweeping *ex parte* request is premised on speculative assertions of "spoliation risk" and "unidentified defendants" and goes far beyond the limited, identification-only discovery as permitted in *Columbia Insurance Co. v. Seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999).

The Court should deny the application in its entirety or, at minimum, limit any permitted discovery strictly to the identification of truly unknown Doe defendants and expressly exclude Mr. Zimmer and any of his personal or online accounts from its scope.

## FACTUAL BACKGROUND

Defendants (and Zimmer in particular) deny Blizzard's characterizations and reserve all defenses. This opposition addresses Blizzard's *ex parte* procedural request and does not concede operation, ownership, authorship, distribution, infringement, or jurisdiction as to any person.

As set forth in the accompanying Declaration of Josiah Zimmer, Mr. Zimmer resides in Kalamazoo, Michigan, and has at all times lived in Michigan. He has never resided, worked, or maintained property, offices, or bank accounts in California and has never traveled to California for any purpose related to this case. (Zimmer Decl. ¶¶ 1–2.)

The Complaint alleges that "Defendants operate, develop, and profit from an unauthorized World of Warcraft server known as 'Turtle WoW,'" and that "Defendants and their affiliates control the distribution, promotion, and maintenance of the Turtle WoW Website and game client." (Compl. ¶¶ 3, 7, 12.). Mr. Zimmer denies those allegations. As set forth in his Declaration, he has never owned, operated, or held

any ownership or managerial interest in any company or organization, including any entity identified by Blizzard as "Turtle WoW," "AFKCraft Limited," or otherwise connected with the alleged activity. (Zimmer Decl. ¶ 7.)

Mr. Zimmer accepted Plaintiff's request for waiver of service, which extended his response deadline by sixty days, and is presently working with counsel to prepare his responsive pleadings. (Zimmer Decl. ¶ 5.) He has preserved all potentially relevant materials and is unaware of any evidence at risk of loss or destruction. (Zimmer Decl. ¶ 4.)

Blizzard's factual presentation relies almost entirely on publicly available materials, such as screenshots from Discord, YouTube, X (formerly Twitter), and Reddit, as well as an ICANN/RDAP lookup showing routine registrar privacy and Cloudflare DNS service. (Mayer Decl. Exs. 1–5.) None of these materials contains non-public information or demonstrates imminent loss sufficient to justify expedited discovery under Rule 26(d).

In support of its factual background, Blizzard attached a voluminous set of screenshots and online posts apparently intended to impress upon the Court the scale of activity surrounding "Turtle WoW." On the present record, Blizzard does not connect the users depicted in those exhibits to the individuals named in the Complaint, and it provides no link connecting any username or post to Mr. Zimmer. The hundreds of pages of attachments merely illustrate that a public fan community exists, something Blizzard itself concedes, without showing that any defendant directed or controlled it. Courts have repeatedly recognized that "the sheer volume of documents submitted does not enhance their probative value where the connection to the disputed issue remains speculative." *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 413 (S.D.N.Y. 2009); see also *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 199 F. Supp. 3d 958, 971 (E.D. Va. 2016) (rejecting aggregate compilations of online data lacking linkage to specific defendants).

**OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION**
**- 12**

The volume of Blizzard's materials does not increase their relevance. A mass of public screenshots, memes, and comment threads cannot substitute for concrete, individualized evidence. See *Holy Ghost Revival Ministries v. City of Marysville*, 98 F.Supp.3d 1153, 1163 (W.D. Wash. 2015). Plaintiff may use summaries or charts to present voluminous evidence, provided they comply with evidentiary rules and ensure accessibility to the opposing party. Fed. R. Evid. 1006.

The exhibits attached to the Declaration of Marc E. Mayer (Decl. ¶¶ 3–5, Exs. 1–5) do not depict any wrongful conduct on their face. Rather than showing copying of Blizzard's source code, distribution of infringing software, or receipt of proceeds, the screenshots reflect public, community-facing material such as chat posts, bug-fix or event announcements, fan art, memes, and general commentary. The ICANN and Cloudflare records included in Exhibit 5 merely confirm the existence of a privacy-protected domain registration, a routine and lawful industry practice. None of these materials demonstrates any element of copyright infringement under 17 U.S.C. § 501, circumvention under § 1201 of the DMCA (17 U.S.C. § 1201), or any predicate act supporting a RICO claim. The content is contextual, not incriminating: it illustrates an open gaming community, not an unlawful enterprise. See *Sony Music Ent. Inc. v. Does 1–40*, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004); *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975 (N.D. Cal. 2005).

Specifically:

- Exhibit 1 (Discord) (Decl. Ex. 1) shows a publicly accessible "Announcements" channel open to all users; it identifies no administrator or operator and presents no risk of evidentiary loss.

- Exhibit 2 (YouTube) (Decl. Ex. 2) consists of a public fan channel containing gameplay footage and promotional clips typical of user-generated content; it reveals no evidence of ownership, control, or monetization by any named defendant.

**OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION**
**- 13**

- Exhibit 3 (X/Twitter) (Decl. Ex. 3) contains public posts announcing community events and updates; on this record, none are attributed to Mr. Zimmer or to any of the roughly twenty-one additional usernames first introduced in the Mayer Declaration (Decl. ¶¶ 12–20).

- Exhibit 4 (Reddit) (Decl. Ex. 4) comprises roughly 140 pages of informal discussions, memes, and commentary by numerous unidentified users, and Blizzard does not link those handles to any named defendant in this case. The material is cumulative and immaterial to identity, jurisdiction, or wrongful conduct.

- Exhibit 5 (ICANN/RDAP) (Decl. Ex. 5) reflects a standard domain-registration record using registrar privacy and Cloudflare DNS—common, lawful practices that do not evidence ownership or operation. At most, such information could support a narrowly tailored, noticed request to the registrar, not the sweeping ex parte discovery Blizzard now seeks.

Plaintiff's showing of an "extensive investigation" rests almost entirely on statements made on information and belief, without any competent evidentiary foundation. Mayer's Declaration asserts that Blizzard conducted a "months-long investigation" using "publicly available information" (Mayer Decl. ¶¶ 3, 9), yet simultaneously admits that the requested subpoenas are intended only "to verify the results of its investigation" and "uncover the real names and locations of remaining individuals." (Mayer Decl. ¶¶ 9–10.). That internal contradiction negates any claim of urgency or evidentiary risk: if Blizzard's investigation already identified the relevant actors, no emergency exists; if it did not, then the discovery sought is merely exploratory. Courts in this Circuit uniformly reject ex parte discovery for such "verification" purposes. See *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002); *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999). On this record, Blizzard offers publicly available screenshots and registrar/CDN lookups, but no sworn provider records, server logs, or corporate filings

**OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION**
**- 14**

tying any handle to a real person. Blizzard identifies no preservation letters to Discord, Reddit, X, YouTube, GitHub, Namecheap, Cloudflare, PayPal, or Paymentwall, and cites no retention policies showing imminent loss.

Moreover, the Mayer Declaration's list of usernames, including "Torta," "PepeSmite," and others, illustrates the same inconsistency. As submitted, Blizzard does not connect those handles to the screenshots in Exhibits 1-4, and thus purports to name twenty-one supposed participants without anchoring them to the communications it presents. Without a specific evidentiary nexus between these online aliases and actionable conduct, the request for subpoenas amounts to a fishing expedition rather than a preservation measure. See *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975–76 (N.D. Cal. 2005). Even if Blizzard has some non-public lead, it has not proffered it to the Court or explained why ordinary post-Rule 26(f) discovery would be inadequate.

Speculative assertions that some online posts or accounts may have been deleted do not establish a risk that business-record data will be lost. Plaintiff identifies no retention policies of Discord, YouTube, X, or Reddit, and no effort to issue preservation requests. Absent specific evidence of imminent destruction, courts routinely deny early discovery on this ground. See *Mullane v. Almon*, 339 F.R.D. 659, 667 (N.D. Cal. 2021) ("Mere conjecture of possible spoliation is not good cause for accelerated discovery.").

Mentions of community interest or media attention prove only that the project has a public following, not that expedited discovery is warranted. Publicity does not substitute for the particularized showing of necessity required to bypass the meet-and-confer and Rule 26(f) procedures. See *St. Louis Group, Inc. v. Metals & Additives Corp., Inc.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011) (denying ex parte discovery where movant failed to show "specific, imminent harm" justifying deviation from ordinary procedure).

**OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION - 15**

Therefore, Plaintiff fails to satisfy the good-cause standard for early discovery. It identifies no specific evidence at risk, no link between any defendant and the alleged online material, and no factual basis for concluding that ordinary discovery would be ineffective. Accordingly, the Court should strike or deny the relief requested.

## ARGUMENT

### A.   Plaintiff has not shown good cause; each factor cuts against expedited discovery.

#### 1. Legal Standard Under Rule 26(d)

Federal Rule of Civil Procedure 26(d)(1) establishes a moratorium on discovery before the parties have conferred under Rule 26(f). Courts may authorize early discovery only upon a showing of good cause, meaning that "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). This showing must rest on specific, admissible facts—not conjecture or information supplied solely on belief. See *Malibu Media, LLC v. Doe*, 319 F.R.D. 299, 302 (E.D. Cal. 2016); *Strike 3 Holdings, LLC v. Doe*, 331 F.R.D. 14, 19 (E.D.N.Y. 2019) .

Courts typically consider five non-exclusive factors: (1) whether a preliminary-injunction motion is pending; (2) breadth of the requests; (3) purpose for expediting; (4) burden; and (5) how far in advance of the ordinary process the request is made. *Rovio Entertainment Ltd. v. Royal Plush Toys, Inc.*, 907 F.Supp.2d 1086, 1099 (N.D. Cal. 2012). Courts routinely deny relief where there is no showing of irreparable harm, where requests are not narrowly tailored, or where the movant has not sought preliminary injunctive relief. *Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 259 F.R.D.

385, 386 (E.D. Wis. 2009) (no emergency; no PI/TRO); *American LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009) (requests not limited to issues pertinent to PI; lack of supporting evidence); *St. Louis Group, Inc. v. Metals & Additives Corp., Inc.,* 275 F.R.D. 236 (S.D. Tex. 2011) (no irreparable harm).

When, as here, the request seeks to unmask online users, Courts in the Ninth Circuit carefully balance the First Amendment rights of anonymous defendants against the plaintiff's need for discovery. In *Doe v. 2TheMart.*com Inc. 140 F. Supp. 2d 1088, 1095–97 (W.D. Wash. 2001), the court held that disclosure of a non-party anonymous Internet user's identity is appropriate only in exceptional cases where the compelling need for discovery outweighs the First Amendment rights of the anonymous speaker. See *Doe v. 2 TheMart.com Inc.*, 140 F.Supp.2d 1088, 1095-1097 (2001). Similarly, in *In re DMCA S 512(h) Subpoena to Twitter, Inc.*, the court outlined a two-step inquiry: first, the party seeking disclosure must demonstrate a prima facie case on the merits of its claim; second, the court must balance the need for discovery against the First Amendment interest at stake. *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F.Supp.3d 868 (2022).

*Ex parte* discovery cannot be used to manufacture personal jurisdiction. *Walden v. Fiore*, 571 U.S. 277, 284–86 (2014).

Courts do not permit expedited discovery merely to "verify" a public investigation; Rule 26(d) requires necessity tied to imminent loss or irreplaceable evidence, not confirmation of conjecture. See *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 579-580 (N.D. Cal. 1999).

**2.    Burden and factors.**

The movant bears the burden to show "good cause," meaning necessity and narrow tailoring that outweigh prejudice. See *Synopsys, Inc. v. AzurEngine Technologies, Inc.*, 401 F.Supp.3d 1068, 1076 (2019). Courts assess: (1) whether

**OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION**
**- 17**

preliminary relief is pending; (2) breadth of requests; (3) purpose; (4) burden; and (5) how far in advance of normal discovery the request comes. *Rovio Entertainment Ltd. v. Royal Plush Toys, Inc.*, 907 F.Supp.2d 1086, 1099 (N.D. Cal. 2012) .

**B.    Plaintiff did not meet standard for ex parte application.**

Blizzard's ex parte application collapses under every factor courts consider when evaluating "good cause" for expedited discovery. The Ninth Circuit and this District apply a strict standard: early discovery is "the exception, not the rule" and may be granted only where the requesting party shows that its need outweighs potential prejudice, the request is narrowly tailored, supported by specific evidence, and necessary to prevent irreparable harm. See *Synopsys, Inc. v. AzurEngine Technologies, Inc.*, 401 F.Supp.3d 1068, 1076 (2019) ; *Rovio Entertainment Ltd. v. Royal Plush Toys, Inc.*, 907 F.Supp.2d 1086, 1099 (N.D. Cal. 2012).

This showing must rest on specific, admissible facts—not conjecture or "information and belief." *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F.Supp.3d 868 (2022).

Blizzard's pleading cannot withstand Rule 12(b)(6) scrutiny, so its allegation of "likely success" adds nothing.

Blizzard's assertion that its claims would "easily survive a motion to dismiss" does not establish good cause under *Synopsys, Inc. v. AzurEngine Technologies, Inc.*, 401 F.Supp.3d 1068 (2019). The Court's inquiry at this stage is not whether Blizzard can state any claim in the abstract, but whether it has made a prima facie showing of liability as to each specific Doe target it seeks to unmask. It has not. The Complaint relies almost entirely on collective allegations "on information and belief" that "Defendants operate" or "profit from" the Turtle WoW server, without particularized facts linking any identified alias to copying, distribution, or circumvention. Such group

**OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION**
**- 18 -**

pleading fails the plausibility standard of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1960 (2007). Because Blizzard's own pleadings are conclusory and fail to allege actionable conduct by any particular online handle, the Application does not satisfy *Synopsys's* "good cause" requirement and would not survive a Rule 12(b)(6) motion even if the Doe defendants were identified.

Accordingly, Blizzard's application fails every factor recognized by the Ninth Circuit.

### 1.  No Pending Injunction or Emergency

Blizzard has not sought a temporary restraining order or preliminary injunction. Courts consistently deny expedited discovery absent a showing of imminent, irreparable harm. *Edgenet, Inc. v. Home Depot U.S.A.*, 259 F.R.D. 385, 387 (E.D. Wis. 2009).

In fact, Blizzard admits that it already identified "several specific individuals" through public sources but now seeks early discovery merely "to verify the results of its investigation" and to "uncover the real names and locations of remaining individuals." (Mayer Decl. ¶¶ 3, 9.) That admission alone negates urgency: if Blizzard already knows who it believes is involved, it has no emergency; and if it does not, it seeks discovery merely to find out whether such persons exist—a use of Rule 26(d) that courts forbid. *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999).

### 2.  Overbroad in Scope

Blizzard's request for fifteen subpoenas directed to Discord, Reddit, YouTube, GitHub, Namecheap, PayPal, Cloudflare, Spotify, and other global providers cannot be described as "narrow." Each subpoena seeks IP logs, billing data, and registration

records without limitation to any specific time frame, jurisdiction, or act. Such sweeping requests fail the proportionality test of Rule 26(b)(1) and the good-cause test of Rule 26(d)(1). *North Atlantic Operating Co. v. Evergreen Distribs.*, LLC, 293 F.R.D. 363, 369 (E.D.N.Y. 2013) (rejecting similar "Doe" fishing expeditions); *American LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009).

### 3. Speculative Purpose

The Mayer Declaration repeatedly concedes that Blizzard's knowledge is limited to "publicly available information" and that unidentified users "may be located in foreign jurisdictions or using proxy services." (Mayer Decl. ¶¶ 9–10.) Likewise, the Memorandum of Points and Authorities asserts that "additional Doe Defendants are believed to be operating or assisting in the operation of the Turtle WoW private server" but identifies no individual, act, or nexus to California. (Pl.'s MPOA at 4–5, 8–9.)

Such conjecture is not evidence. Early discovery cannot be used "to confirm suspicions or explore unsubstantiated possibilities." *Seescandy.com*, 185 F.R.D. at 578. A plaintiff must first present specific facts showing that the information sought is reasonably likely to identify a real person who could be sued. Here, Blizzard has offered none, only collective allegations "on information and belief."

### C. *Contradiction and Prejudice Toward the Appearing Defendant*

Blizzard's own filings contradict themselves. The Mayer Declaration claims that the subpoenas "have nothing to do with, and will not impact" Defendant Zimmer. (Mayer Decl. ¶ 17.) Yet in the very next paragraph, counsel cites Zimmer's alleged "refusal to voluntarily provide information about third parties" and his decision not to waive the Rule 26(f) conference as the primary reason for seeking this discovery,

asserting that "Zimmer intends to delay discovery and obstruct Blizzard's ability to identify his co-defendants." (Id. ¶ 18.)

This inconsistency exposes the speculative and punitive nature of the motion. Blizzard simultaneously purports to exclude Zimmer while using him as its justification for ex parte relief, relief that will inevitably capture his own personal accounts on platforms like Reddit, Discord, YouTube, GitHub, and PayPal. Mr. Zimmer is a Michigan resident with no California contacts, has accepted service, preserved all materials, and is preparing his responsive pleading within the Rule 4(d) period. (Zimmer Decl. ¶¶ 2–9.) These facts foreclose any claim of concealment or spoliation. Compelling discovery against his personal accounts before jurisdiction is resolved would be premature and unfair. *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636–37 (C.D. Cal. 2005).

1. **Heavy Burden and Privacy Violations**

The requested discovery would impose a severe and irreversible burden. The subpoenas target platforms Mr. Zimmer has used in a purely social, non-commercial capacity. (Zimmer Decl. ¶¶ 4–6.) Disclosure of IP logs, billing records, or identifiers would invade privacy and chill lawful participation in online communities. Once anonymity is lost, it cannot be restored. The Ninth Circuit has recognized that anonymous online speech enjoys robust First Amendment protection. The Ninth Circuit adopted standards from cases like *Highfields Capital Management, L.P. v. Doe*, which require plaintiffs to provide a real evidentiary basis for believing the defendant engaged in wrongful conduct causing harm. If this threshold is met, courts assess the magnitude of harm to competing interests and allow disclosure only if it is necessary to remedy serious wrongs and causes relatively little harm to the defendant's First Amendment rights. *Music Group Macao Commercial Offshore Limited v. Does*, 82 F.Supp.3d 979, 982 (ND Cal. 2015).

**OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION**
**- 21**

### 2.    Premature by Design

Discovery before a Rule 26(f) conference is the exception, not the rule. *Semitool*, 208 F.R.D. at 276. Blizzard's own record shows no exigency and no loss of evidence. Instead, it seeks to bypass the scheduling protections of Rule 26(f) and the notice requirements of Rule 45, effectively converting speculative assertions into jurisdictional discovery. That approach violates both the letter and spirit of Rule 26. *Walden*, 571 U.S. at 284–86.

### D.    *Blizzard's Allegations Are Conclusory and Unsupported*

Blizzard's rhetoric of a "massive infringement enterprise" rests entirely on allegations "on information and belief." (Compl. ¶¶ 4–10, 52–55.) Such conclusory "group pleading" is insufficient under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). See also *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 963 (N.D. Cal. 2015) (collective allegations inadequate).

Blizzard cannot have it both ways: if it has already identified the key participants, there is no urgency; if it has not, speculation cannot justify a global dragnet. *Edgenet*, 259 F.R.D. at 387.

### 1.    Privacy and Fairness Require Denial

Finally, Blizzard's assurance that "no prejudice" will result ignores profound privacy and due-process concerns. The fifteen subpoenas seek identifying information from platforms hosting millions of users, most of whom have no connection to this litigation. Once IP addresses and billing identifiers are disclosed, anonymity and privacy are irretrievably lost. *Anonymous Online Speakers*, 661 F.3d at 1175; *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 614 (D.Ariz. 2001).

1

2

### 2. Delay defeats urgency.

Blizzard's own Complaint defeats its claim of urgency. It concedes that Turtle
WoW has been "among the largest and most sophisticated private WoW servers
available today." (Compl. ¶ 7.) The same pleading describes publicly accessible
websites, forums, and a "Download" launcher available through ordinary internet
searches for years. (Compl. ¶¶ 61–67.) These admissions establish that Blizzard has
long known of Turtle WoW's existence and open operation, yet chose not to act until
now.

This history is fatal to any assertion of emergency or irreparable harm. Courts in
this Circuit consistently hold that a plaintiff who delays in seeking relief cannot later
claim urgency as justification for extraordinary measures such as ex parte or expedited
discovery. See *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 950–52 (9th Cir. 2001)
(laches bars equitable relief where plaintiff was aware of alleged infringement but
delayed enforcement); *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 997 (9th Cir.
2006) (same). The equitable principle is straightforward: parties who "sleep on their
rights" may not later invoke the court's equitable powers to impose burdensome
discovery on others.

Here, Blizzard's years-long inaction undermines its own claim that early
discovery is necessary to prevent imminent harm or spoliation. Turtle WoW has been
public and traceable through ordinary search tools since at least 201, well before this
lawsuit. If Blizzard genuinely believed the project violated its rights, it had ample
opportunity to investigate and seek relief through normal Rule 26 procedures. Having
waited until 2025, Blizzard cannot now manufacture "urgency" to justify bypassing
Rule 26(f) and Rule 45 safeguards.

### E. *The subpoenas are overbroad, disproportionate, and would unduly burden Defendant and third parties.*

OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION
- 23

Rule 26(b)(1) demands proportionality. These fifteen subpoenas, spanning payments (PayPal/Paymentwall), domain/edge (Namecheap/Cloudflare), social (Discord/Reddit/X/Instagram/LinkedIn/YouTube), code (GitHub), engines (Epic/Unreal), and music (Spotify/Apple/SoundCloud), are scattershot and time-unbounded. Courts deny similarly expansive campaigns. *North Atl. Operating*, 293 F.R.D. at 369; *American LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009).

Because multiple targets overlap with Mr. Zimmer's personal accounts, the subpoenas would expose his data before the Court addresses jurisdiction, personal participation, or First Amendment concerns, an "undue burden" under Rule 45(d)(1). *Moon*, 232 F.R.D. at 636–37; *Anonymous Online Speakers*, 661 F.3d at 1175.

Separately, the Stored Communications Act restricts disclosure of content and certain records by providers. 18 U.S.C. §§ 2701–2712. Any order must exclude content, require notice, and be tightly constrained. See *In re Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 874–77 (N.D. Cal. 2022).( When adjudicating a subpoena or other request for compelled disclosure that would reveal the identity of an anonymous speaker, a court should: (1) notify the speaker and provide them with an opportunity to anonymously defend their anonymity; (2) require the party seeking disclosure to make a prima facie showing on the merits of their claim; and (3) balance the equities, weighing the potential harm to the party seeking disclosure against the speaker's interest in anonymity, in light of the strength of the underlying claim). Plaintiff does not offer it in its application.

**F.  *Blizzard's long-standing knowledge defeats any claim of emergency or necessity.***

**OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION**
**- 24**

Blizzard pleads that Turtle WoW "is among the largest and most sophisticated private WoW servers available today." (Compl. ¶ 7.) The Complaint also describes the public website, onboarding flow (sign up → download launcher → play), and community forums (Compl. ¶¶ 61–67), and discusses "World of Warcraft Classic" only being (re)launched by Blizzard in 2019 for legacy play (Compl. ¶¶ 37, 41–42). These admissions show multi-year public presence and Blizzard's awareness of a wider "private server" ecosystem (Plaintiff calls Turtle WoW "among the largest," necessarily recognizing others).

Courts reject emergency ex parte discovery where a plaintiff long knew of alleged activity. *Edgenet*, 259 F.R.D. at 387; *St. Louis Group, Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011). Blizzard's delay also undercuts any claim that logs are at imminent risk, particularly where Mr. Zimmer has sworn to preservation. (Zimmer Decl. ¶ 4.)

While laches cannot bar legal damages within § 507(b)'s three-year window, the Supreme Court recognizes that delay defeats equitable urgency. *Petrella v. MGM*, 572 U.S. 663, 677 (2014). The Court should weigh Blizzard's multi-year inaction against its request to bypass Rule 26.

### G. Jurisdiction is contested; ex parte unmasking cannot be used to manufacture it.

The Complaint's jurisdictional allegations (Compl. ¶ 15) rely on foreseeable harm to a California company, which is insufficient under *Walden*, 571 U.S. at 284–86, and *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069–72 (9th Cir. 2017). Nationwide website accessibility alone does not show "express aiming" at California. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229–30 (9th Cir. 2011).

Unlike *Mavrix*, Blizzard alleges no California-focused advertising, revenue, or audience targeting; its theory rests on nationwide accessibility and forum-resident harm, which *Walden* and *Axiom Foods* squarely reject.

**OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION**
**- 25**

Mr. Zimmer is a Michigan resident with no California contacts—he has never owned property, operated a business, or purposefully directed conduct toward the forum. (Zimmer Decl. ¶¶ 2, 8) Authorizing subpoenas that would inevitably sweep in his accounts would back-door merits and jurisdictional discovery in contravention of *Seescandy.com*, 185 F.R.D. at 578–79 (prima facie showing of jurisdiction required before unmasking Does).

Blizzard's reliance on gaming "cheats/bots" cases (*Activision v. EngineOwning*; *Blizzard v. Bossland*; *Blizzard v. Joyfun*) is misplaced. Those defendants commercially targeted U.S. consumers with interactive sales, apps, and currencies; the pleadings there documented direct U.S. commercialization. Here, by contrast, Turtle WoW is pleaded as an organic, international community; Mr. Zimmer swears he never administered servers, processed payments, or monetized any activity. (Zimmer Decl. ¶ 6.)

### H. *Blizzard has not shown the subpoenas are likely to identify new defendants; the prejudice is concrete.*

Under *Skout, Inc. v. Jen Processing, Ltd.*, courts ask whether discovery is reasonably likely to identify the Doe defendants. *Skout, Inc v. Jen Processing, Ltd*., Case No. 14-CV-02341-JSC, slip opinion, Dkt. No. 15, pages 4-5 (N.D. Cal., Aug. 7, 2014) ("Plaintiff has thus failed to demonstrate that it made a sufficient effort to identify the owners or operators of the domain names at issue through reasonably available mechanisms prior to seeking leave to conduct early discovery. Accordingly, because the record does not reflect any effort on the part of Plaintiff to identify the doe defendants through the contact information provided in the Whois database prior to seeking permission to issue Rule 45 subpoenas on the proxy registration services, Plaintiff has failed to establish good cause to issue the subpoenas and the motion is denied without prejudice. Any renewed motion for early discovery should attach the

proposed subpoenas."). Blizzard offers only speculation that fifteen providers "may" hold useful data. Meanwhile, Blizzard admits at least one putative user ("Torta") deleted accounts (Mayer Decl. ¶ 15), undermining the preservation rationale and suggesting any truly ephemeral data is already gone. Fishing expeditions are not permitted. *Seescandy.com*, 185 F.R.D. at 578–80.

By contrast, prejudice to Mr. Zimmer is immediate: the subpoenas would pierce personal accounts and identifiers before jurisdiction and Rule 26(f) protections attach, chilling lawful speech and community participation. See *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1095–97 (W.D. Wash. 2001) (protecting anonymous speakers absent clear necessity).

## I. *Procedural defects: inadequate notice and ex parte posture warrant denial or conversion to regular motion practice.*

Although styled as "on notice," the application functioned as ex parte. Plaintiff filed electronically on Friday evening, Oct. 10, 2025, immediately before the Columbus Day federal holiday, and unilaterally set a Tuesday, Oct. 14, 2025 at 3:00 p.m. response, effectively zero full business days. Under Rule 6(a)(1)(C), weekends and legal holidays are excluded when computing short intervals; thus, any purported "four-day notice" was illusory.

Courts require meaningful notice and opportunity to respond for any discovery that would pierce anonymity or burden third parties. *Rovio Entertainment Ltd. v. Royal Plush Toys, Inc.*, 907 F.Supp.2d 1086, 1099 (N.D. Cal. 2012) ; *American LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009). A late-Friday filing before a federal holiday on Monday does not satisfy constitute reasonable time to respond. The Court should deny the Application as procedurally improper, or at minimum convert it to a regularly noticed motion under Rule 6(c) with standard briefing.

**CONCLUSION**

Defendant respectfully submits that Blizzard's *Ex Parte* Application should be denied in its entirety. The application fails every element of the *Semitool* "good-cause" standard and disregards the due process protections that apply before compelling disclosure of private, identifying data.

Alternatively, should the Court determine that any limited discovery might be appropriate, Defendant requests that the Court convert Blizzard's *ex parte* application into a motion on notice, subject to the ordinary briefing schedule under Local Rule 7-9. The Central District disfavors ex parte discovery where the moving party cannot show immediate, irreparable harm, and fairness requires that all affected parties have a reasonable opportunity to respond.

Conversion would allow full briefing and ensure compliance with both Rule 26(d) and the Stored Communications Act, 18 U.S.C. § 2701 et seq. It would also preserve the rights of third parties and Mr. Zimmer to review, object, or move to quash before any subpoena issues.

Blizzard's seven-year delay, fifteen-platform dragnet, speculative allegations, and cursory notice fall far short of the "good cause" required for extraordinary *ex parte* relief. The Court should therefore deny Blizzard's *Ex Parte* Application outright, or, in the alternative, convert it to a noticed motion and grant Defendants adequate time to respond.

October 14, 2025                          Respectfully submitted,


                                           ___/s/ Frederic M. Douglas_____

                                           Frederic M. Douglas
                                           Attorney for Defendant

**OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION**
**- 28**

JOSIAH ZIMMER

    The undersigned counsel of record for Plaintiffs certifies that this brief contains 6,124 words, which complies with the word limit of L.R. 11-6.1.

           /s/ Frederic M. Douglas_____

           Frederic M. Douglas
           Attorney for Defendant
           JOSIAH ZIMMER
           October 14, 2025

////
////

**OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION**
**- 29**