MARC E. MAYER (SBN 190969)
  mem@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA  90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

THERESA B. BOWMAN (*admitted pro hac vice*)
  tbb@msk.com
MITCHELL SILBERBERG & KNUPP LLP
1818 N St., NW
Washington, D.C. 20036
Telephone: (202) 470-2752
Facsimile: (202) 470-2776

Attorneys for Plaintiff,
Blizzard Entertainment, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLIZZARD ENTERTAINMENT, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>TURTLE WOW, an entity of unknown form; AFKCRAFT LIMITED, a Hong Kong Company; YULIA SAVKO a/k/a JULIA SAVKO a/k/a Torta and Shenna, an individual; ERIC MAUSER a/k/a Shagu and Meph1s, an individual; JOSIAH ZIMMER a/k/a Akalix, an individual; STEFAN KOSTOV a/k/a brotalnia, an individual, JESSE LAUTENBACK a/k/a Niralthas, an individual, COSMIN POP a/k/a xerron, an individual, JAMEY DIEPBRINK a/k/a Jamma an individual, MAROS BETKO a/k/a Haaxor, an individual, MARCO KRETAS a/k/a MARCO KAPTEIN a/k/a Kruxis, an individual; ALEX JULEV a/k/a PepeSmite, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 2:25-cv-08194-SVW (SKx)<br><br>[Assigned to Honorable Stephen V. Wilson]<br><br>**REPLY MEMORANDUM IN SUPPORT OF *EX PARTE* APPLICATION OF PLAINTIFF BLIZZARD ENTERTAINMENT, INC. FOR LIMITED EARLY DISCOVERY TO IDENTIFY DOE DEFENDANTS**<br><br>Complaint Filed: August 29, 2025 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................... 1

II. GOOD CAUSE EXISTS FOR THE REQUESTED DISCOVERY .............. 3

    A. The Requested Doe Discovery Would Facilitate The Orderly Administration of Justice By Ensuring That All Necessary Defendants Are Named And Served ........................................................ 4

    B. There Is No Prejudice To Either Zimmer Or Any Of The Doe Defendants ................................................................................. 5

    C. Zimmer's Challenges To The Merits Of Blizzard's Claims Are Irrelevant And Meritless ................................................................. 8

III. ADDITIONAL BRIEFING IS UNNECESSARY ........................................ 11

IV. CONCLUSION ........................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Activision Publishing, Inc. v. Engineowning UG*,
  2023 WL 3272399 (C.D. Cal. April 4, 2023) ................................................... 11

*Arista Recs., LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010) ............................................................................... 7

*Blizzard Ent., Inc. v. Bossland GmbH*,
  2017 WL 412262 (C.D. Cal. Jan. 25, 2017) ..................................................... 11

*Davidson & Assocs., Inc. v. Internet Gateway, Inc.*,
  334 F. Supp. 2d 1164 (E.D. Mo. 2004) ............................................................ 10

*Gillespie v. Civiletti*,
  629 F.2d 637 (9th Cir. 1980) .............................................................................. 4

*In re Anonymous Online Speakers*,
  661 F.3d 1168 (9th Cir. 2011) ............................................................................ 6

*In re Subpoena to Twitter, Inc.*,
  608 F. Supp. 3d 868 (N.D. Cal. 2022) ............................................................ 6, 7

*Nexon Am., Inc. v. S.H.*,
  No. CV 10-9689 PA (JCX), 2011 WL 13217951
  (C.D. Cal. Dec. 13, 2011) ................................................................................. 10

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
  572 U.S. 663 (2014) ............................................................................................ 9

*Rovio Entertainment, Ltd. v. Royal Plush Toys, Inc.*,
  907 F. Supp. 2d 1086 (N.D. Cal. 2012) ............................................................. 3

*Semitool, Inc. v. Tokyo Electron Am., Inc.*,
  208 F.R.D. 273 (N.D. Cal. 2002) ............................................................... 3, 4, 5

*UMG Recordings, Inc. v. Doe*,
  2008 WL 4104214 (N.D. Cal. Sept. 3, 2008) ..................................................... 4

*Walden v. Fiore*,
  571 U.S. 277 (2014) .......................................................................................... 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Josiah Zimmer's Opposition to Blizzard's *Ex Parte* Application for limited discovery to identify necessary "Doe" defendants overcomplicates a simple request for limited third party discovery. Blizzard seeks leave of Court to serve narrow, tailored subpoenas on specific third party social media networks and online service providers. Those subpoenas request ***identifying information*** for the actual persons behind specific, known online aliases (e.g., online "handles" or usernames) and accounts being used by Turtle WoW and its administrators to advertise and monetize infringement of Blizzard's valuable intellectual property – including the "official" Turtle WoW online accounts (which appear as simply "TurtleWoW"). Seeking identifying information so that additional necessary parties may be added to a lawsuit and served with process is a routine and uncontroversial exercise, especially in the context of intellectual property infringement taking place entirely online by the coordinated efforts of anonymous individuals.

Zimmer's bottom line claim of prejudice from these third party subpoenas is murky. Zimmer implies in briefing that Blizzard is "jumping the gun" by not first asking him for this same information in discovery, but then also claims in a sworn statement he does not have or know the information Blizzard seeks. Zimmer claims the sought discovery would "expose his personal and online data" and "inevitably capture his own personal accounts" but also broadly claims in a sworn statement he has nothing to do with the defendants or the enterprise that allegedly own and operate the targeted online aliases and accounts. There is no practical or procedural reason to force Blizzard to wait for Zimmer to repeat these confusing denials in discovery before seeking answers from the third parties who will have them. Nor is there any basis in the federal rules to require Blizzard's prosecution of its case against numerous defendants to come to a halt while Zimmer (who

claims to have no relationship with or knowledge of the other defendants) mounts an (unlikely to succeed) jurisdictional challenge.

Blizzard's detailed descriptions[1] of the requested subpoenas confirm they will not prejudice Zimmer (or any other defendant) in any manner. Blizzard does not seek the content of online communications, does not seek to deprive Zimmer of any of his defenses in this action (including his jurisdictional defenses), and does not seek to violate any person's First Amendment rights or punish individuals from discussing matters of public interest online. Blizzard will agree to enter into a protective order to preserve the confidentiality of any non-public personal information such as social security numbers, IP addresses, or bank account numbers. Blizzard will provide ample time for any service providers to notify the account holders. Any person *actually* impacted by the subpoenas (because they own or operate the Turtle WoW accounts or assets at issue using online aliases) will have the ability, if they so choose, to seek to quash the subpoenas. Such persons also will have a full opportunity to litigate the merits of the case or interpose their own jurisdictional defenses.

At base, Blizzard sees no legitimate reason for Zimmer to claim any prejudice from the requested discovery. To the extent Zimmer is acting to conceal the identity of his co-conspirators for as long as possible because their involvement in this case *would* ultimately harm his defense and prove his sworn statements to be untrue – that is not genuine prejudice, but unlawful obfuscation. Zimmer is entitled to respond to Plaintiff's Complaint, and mount his own defense, in any way he chooses. He is not entitled to delay these proceedings as against ***other parties***, create unnecessary procedural roadblocks or drive up Blizzard's costs. Nor is this application the proper vehicle for Zimmer to air personal grievances and

---

[1] Should the Court wish to review the proposed subpoenas, Blizzard is prepared to lodge them with the Court. Blizzard refrained from including copies of the subpoenas with its Application due to fear that the impacted individuals would take the opportunity to delete their accounts before the subpoenas could be issued.

attacks on Blizzard, its counsel or its decision to pursue the Turtle WoW enterprise to begin with.

"Good cause" plainly exists for the requested discovery, and there is absolutely no prejudice to Zimmer (or anyone else) if this Application is granted.

## II.  GOOD CAUSE EXISTS FOR THE REQUESTED DISCOVERY

Zimmer agrees that discovery prior to a Rule 26 conference to identify "Doe" defendants who participate in online infringement activities is wholly within the discretion of the Court and requires only a showing of "**good cause**." *See Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). But Zimmer's characterization of that standard is incorrect. "Good cause" for early "Doe" discovery **does not require a showing of irreparable harm** or a motion for preliminary injunction. *Id.* at 276 (rejecting argument that early discovery requires irreparable injury, as "[s]uch a result is inconsistent not only with Rule 26(d), which requires the Court to consider, inter alia, "the interests of justice," but also the overarching mandate of Rule 1 which requires that the Rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action.")[2] All that is required is a showing that "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.* Moreover, courts have recognized that good cause "is frequently found in cases involving claims of infringement and unfair competition." *Id.* As set forth below, the interests in orderly administration of justice easily outweigh any purported prejudice (of which there is none).

---

[2] Zimmer's reliance on preliminary injunction cases such as *Rovio Entertainment, Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, is misplaced. These cases involved **substantive discovery requests** to support the **merits** of the claims in support of emergency injunctive relief – not narrow, tailored discovery focused on **identifying** anonymous defendants engaged in online infringement.

### A. The Requested Doe Discovery Would Facilitate The Orderly Administration of Justice By Ensuring That All Necessary Defendants Are Named And Served

The *only* issue presented by Blizzard's Application is "whether there is good cause to provide immediate access to the requested discovery rather than postponing its ultimate production during the normal course of discovery." *Semitool*, 208 F.R.D. at 276. As set forth in Blizzard's Application, and as Zimmer agrees, because the Doe defendants act entirely through anonymous usernames and online handles, it is not possible for Blizzard to identify and name all necessary defendants without the requested third party discovery. *Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir. 1980) ("situations arise, such as the present, where the identity of alleged defendants will not be known prior to the filing of a complaint. In such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds."). Zimmer himself claims in a sworn statement that he does *not* have any information concerning the identity of the Doe defendants (Zimmer Decl., ¶ 3). Thus, third-party discovery is the ***only way*** that Blizzard will ever learn the true identity of the unnamed, Doe defendants.[3] *UMG Recordings, Inc. v. Doe*, 2008 WL 4104214, at *4 (N.D. Cal. Sept. 3, 2008) ("In Internet infringement cases, courts routinely find good cause exists to issue a Rule 45 subpoena to discover a Doe defendant's identity, prior to a Rule 26(f) conference, where a plaintiff makes a prima facie showing of infringement, and there is no other way to identify the Doe defendant, and there is a risk an ISP will destroy its logs prior to the conference.")

---

[3] Zimmer's assurances that he has preserved his *own* documents are irrelevant given that this Application has nothing to do with Zimmer's documents – and Zimmer's own sworn statement he does not know or possess the information Blizzard seeks.

At minimum, if Blizzard is required to wait until after Zimmer agrees to participate in a Rule 26 conference, this case could be delayed for many months (especially since Zimmer evidently intends to file a voluminous Rule 12 motion). That alone is sufficient to warrant the requested discovery. *See Semitool*, 208 F.R.D. at 276 (allowing expedited discovery where "Plaintiff has not argued that it will be irreparably harmed if it does not receive expedited discovery [but] it contends expedited discovery would ultimately conserve party and court resources and expedite the litigation.")

### B. There Is No Prejudice To Either Zimmer Or Any Of The Doe Defendants

Zimmer cannot credibly identify *any* prejudice from the limited discovery requested by Blizzard. Zimmer's sworn statement includes a number of statements broadly denying he has anything to do with the owners and operators of the online accounts or aliases Blizzard seeks to identify. Zimmer claims he: does not know or possess information regarding any "Doe" defendants, Zimmer Decl., ¶ 3; has never "performed" "any specific act" "that corresponds to" Blizzard's complaint allegations, *id.*, ¶ 6; has never been an administrator, operator, or other part of the alleged Turtle WoW enterprise, *id.*, ¶ 7; and has "no knowledge or control of the unidentified individuals or entities at issue," *id.*, ¶ 8. If that is true, the requested discovery will reflect that *others* own and operate the targeted Turtle WoW aliases and accounts, not Zimmer. It is impossible to square these sworn statements with the *only* basis for Zimmer's claim of prejudice, *i.e.* that subpoenas would "inevitably sweep in his accounts[.]" Opp. at 26. If Zimmer is taken at his word, there can be no possibility that targeting Turtle WoW-affiliated accounts and aliases will "inevitably capture [Zimmer's] own personal accounts." Opp. 21.

Nor does the requested discovery stand to unfairly "back-door merits and jurisdictional discovery." Opp. at 26. Blizzard does not seek any merits or jurisdictional discovery. It does not and will not seek the *contents* of any emails,

1 direct messages, or other online posting. In fact, the service providers ***cannot***
2 disclose such content pursuant to the Stored Communications Act, 18 U.S.C. §
3 2701. It also will not include any requests for the identity of any account
4 belonging to Zimmer or his pseudonym, "Akalix." If Zimmer wishes to move to
5 quash any ***particular*** subpoena because it mistakenly targets one of his "personal
6 accounts" notwithstanding his broad sworn denials (Opp. at 21), he is free to do so.

7      Nor will any third party be prejudiced by the requested subpoenas. The
8 subpoenas will ***only*** seek information ***sufficient to identify*** the owner of specific
9 online accounts – namely, the accounts being used by Turtle WoW and its owners
10 and administrators. Blizzard will be entitled to this information in the normal
11 course of discovery, regardless of whether the claims against Zimmer proceed in
12 California or Michigan. All that Blizzard seeks is the ability to pursue this
13 discovery now (not several months from now) so that it can amend its Complaint
14 and ensure that this case can proceed against all necessary defendants, rather than
15 on a piecemeal basis.

16      Additionally, the service providers will give notice to the subpoenaed party
17 of the subpoena (or, the Court can order that they do so), so that any impacted
18 party will have an opportunity to object or move to quash. That is precisely what
19 happened in the cases cited by Zimmer, such as *In re Subpoena to Twitter, Inc.,*
20 608 F. Supp. 3d 868 (N.D. Cal. 2022). Additionally, Blizzard is prepared to enter
21 into an appropriate protective order to ensure that any non-public information it
22 receives remains confidential. *See In re Anonymous Online Speakers*, 661 F.3d
23 1168, 1177 (9th Cir. 2011) ("We leave to the district court the details of fashioning
24 the appropriate scope and procedures for disclosure of the identity of the
25 anonymous speakers. On this point, we note that the parties have a protective order
26 in place that provides different levels of disclosure for different categories of
27 documents to various recipients…")

Zimmer's concerns about the free speech rights of his potential co-defendants also are unfounded, even if he had standing to assert those rights on their behalf (which he does not).  Contrary to Zimmer's claim, unlike in *Twitter,* 608 F. Supp. 3d 868, this is not a situation in which the plaintiff is seeking to "unmask" an anonymous "speaker" for engaging in protected online activity.  Rather, Blizzard seeks to identify the individuals who are engaged in marketing, coding, operating, monetizing, and distributing the infringing Turtle WoW software and servers.  (In other words, those that operate and oversee the business).  This is ***not*** protected speech; it is large-scale copyright infringement.  *See Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) ("[T]o the extent that anonymity is used to mask copyright infringement . . . it is unprotected by the First Amendment.")  Since these people have concealed their identities, the only way that Blizzard can ascertain or confirm who they are is through their online social media accounts or business accounts – such as accounts used to process payments, pay hosting services, register domain names, and engage in marketing and promotional activities.

Finally, Zimmer is simply wrong when he states that Blizzard is engaged in a "fishing expedition" or that its claims against the defendants are "conclusory."  Blizzard has alleged that each defendant in this action, including each of the Doe defendants, is subject to the jurisdiction of this Court, including because each actively participated in some capacity in the development, marketing and distribution of Turtle WoW to the U.S. and this District.  *See* Complaint, ¶¶ 15, 19-34, 52-55.  The fact that Blizzard's allegations are made on "information and belief" does not make them speculative; all of the allegations were made after extensive investigation – and even Zimmer claims that he does not know who is behind the online aliases.  In large part, the subpoenas are directed at identifying the person or persons behind the "*official*" Turtle WoW accounts – in other words, the people who are ***directly*** responsible for promoting and operating the Turtle

Mitchell Silberberg & Knupp LLP

21110170.2

7

*EX PARTE* APPLICATION FOR LIMITED EARLY DISCOVERY

WoW private servers.[4] Each of these accounts necessarily was operated by a person or entity (or, quite possibly, multiple persons using a shared login) on behalf of the Turtle WoW enterprise. Such persons are likely to be subject to personal jurisdiction, since the entire purpose of this Motion is to subpoena the *U.S.-based* platforms, hosting providers, domain registrars, and payment processors that the unnamed defendants have been using to promote, advertise, monetize, host, code, and distribute the Turtle WoW software and servers. These platforms specifically have been used to communicate with and exhort payment from residents of the United States and the State of California, who comprise a significant portion of Turtle WoW's more than 40,000 "members." Moreover, in the event any person identified and added to the Complaint wishes to contest jurisdiction, he or she is free to do so. And, if, as Zimmer suggests (without support), some of the subpoenas will not "identify new defendants" (Opp. at 26), then certainly no one has been prejudiced.

### C.   Zimmer's Challenges To The Merits Of Blizzard's Claims Are Irrelevant And Meritless

Zimmer's opposition attempts to distract from the very simple issue presented in this Application by veering into scattershot arguments about the *merits* of Blizzard's case – including by referencing various affirmative defenses such as laches, statute of limitations, or lack of jurisdiction. All of this discussion is irrelevant. Zimmer's claims that Blizzard "cannot now claim urgent harm" (Opp. at 9) or "sle[pt] on its rights" (Opp. at 23) are wholly misplaced, because Blizzard is *not* seeking a preliminary injunction or temporary restraining order at this time against Zimmer. All that Blizzard seeks by this Application is the ability

---

[4] Zimmer misunderstands or misinterprets the nature and purpose of the exhibits attached to Blizzard's Application. The purpose of these exhibits was merely to demonstrate that "Turtle WoW" possesses accounts on various social media platforms. The only way to determine *who* is operating these accounts is to seek discovery on the platforms.

to learn the *identity* of other defendants. Zimmer (as well as any other defendant) will have a full and ample opportunity to litigate Blizzard's infringement claims at the appropriate time. Unless Blizzard is able to learn the identities of the anonymous defendants who are at the heart of Turtle WoW, Blizzard will never be able to even reach the merits of its claims or to obtain complete relief against the owners and operators of Turtle WoW. Zimmer cites no legal authority entitling him to interpose objections to Blizzard's pursuit of claims against other defendants. There is none.

In any event, Zimmer's invocation of various affirmative defenses is without legal merit. Laches is *not* a defense to claims for copyright infringement. *Petrella v. Metro-Goldwyn-Mayer, Inc.,* 572 U.S. 663, 679, 134 S. Ct. 1962, 1974, 188 L. Ed. 2d 979 (2014) (no laches defense to infringement claims because "in face of a statute of limitations enacted by Congress, laches cannot be invoked to bar legal relief.") Nor can Zimmer (or any other defendant) claim that Blizzard is precluded from asserting claims because it "allowed this and other private-server communities to operate in the open." Opp. at 9. *See Petrella,* at 682 ("It is hardly incumbent on copyright owners, however, to challenge each and every actionable infringement. And there is nothing untoward about waiting to see whether an infringer's exploitation undercuts the value of the copyrighted work, has no effect on the original work, or even complements it."). As set forth in the Complaint, Turtle WoW has escalated and expanded its infringing activities over the past few months, including by expanding its marketing efforts, creating a complete reproduction of *World of Warcraft* in a new game engine, and boasting that it need not comply with U.S. laws. *See* Complaint, ¶ 9.

Zimmer's use of an opposition to a discovery request as a vehicle to forward substantive argument that Turtle WoW is actually a "preservation" and "creative-modding effort" is particularly improper. Blizzard specifically alleges, in extensive detail, that Turtle WoW is a for-profit enterprise that is specifically

designed to compete with Blizzard's *World of Warcraft* by distributing pirated copies of the game to thousands of people, setting up two shell corporations, and operating multiple online servers that allow people to play the game without paying for it. There can be little serious dispute that the detailed and extensive allegations of the Complaint are sufficient to state a claim, including for direct and secondary copyright infringement, violation of the DMCA, intentional interference with contract, and participation in a RICO enterprise. *See Nexon Am., Inc. v. S.H.*, No. CV 10-9689 PA (JCX), 2011 WL 13217951, at *4 (C.D. Cal. Dec. 13, 2011) (operation of private server infringed copyrights and constituted unlawful trafficking in circumvention technology); *Davidson & Assocs., Inc. v. Internet Gateway, Inc.*, 334 F. Supp. 2d 1164, 1174 (E.D. Mo. 2004), a*ff'd sub nom. Davidson & Assocs. v. Jung*, 422 F.3d 630 (8th Cir. 2005) (same); *EngineOwning*, at *23-26 (plaintiff sufficiently alleged that operators of *Call of Duty* cheat were participants in a RICO enterprise).

Zimmer's anticipated jurisdictional challenges also are of no moment. Zimmer is free to challenge personal jurisdiction at the appropriate time. Whether *he* is subject to the jurisdiction of this Court has nothing to do with Blizzard's discovery request, which is designed to identify *other* participants in the enterprise. Blizzard does not seek to use the requested "Doe" discovery as a pretext for taking jurisdictional discovery. In fact, if Zimmer is willing to disclose which social media accounts belong to him, Blizzard will have no need to include them in the discovery requests, and will ensure they are not included.

Even if Zimmer's anticipated jurisdictional challenges were relevant to this inquiry, it is certainly not the case that Blizzard needs or seeks discovery to establish this Court has jurisdiction over Zimmer. Blizzard has reason to believe that Zimmer consented to the jurisdiction of this Court when he created a *World of Warcraft* account and accepted its end-user license agreement. *See* Compl. ¶ 15. But even if he had not, this Court consistently has held that conduct such as that

engaged in by Zimmer – i.e. developing, distributing, marketing and/or promoting infringing software products and circumvention devices – is exactly the type of "express aiming" that gives rise to personal jurisdiction under this Circuit's *Calder* test. *Activision Publishing, Inc. v. Engineowning UG,* 2023 WL 3272399 (C.D. Cal. April 4, 2023) (German individuals who created and sold infringing *Call of Duty* cheating software were subject to personal jurisdiction in California); *Blizzard Ent., Inc. v. Bossland GmbH*, 2017 WL 412262, at *5 (C.D. Cal. Jan. 25, 2017) (personal jurisdiction over German company selling *World of Warcraft* bots and cheats to U.S. customers).[5]

## III.   ADDITIONAL BRIEFING IS UNNECESSARY

Zimmer lastly argues that Blizzard's Application is procedurally improper because it was filed on an *ex parte* basis, rather than as a noticed motion. As Blizzard explained in its Application, the use of the *ex parte* process was necessary because Blizzard could not serve the parties potentially impacted by the Application (since they have not been identified), the only party that has appeared in this action (Josiah Zimmer) is not the subject of this Application, and a noticed motion would only have served to further delay this action for no apparent reason. In fact, the parties largely *agree* on the scope of potential early discovery: namely, that it (1) be limited to identifying information, (2) the impacted parties be given notice and an opportunity to object, and (3) personal information be kept

---

[5] Zimmer's argument that *Walden v. Fiore,* 571 U.S. 277 (2014), somehow precludes the exercise of personal jurisdiction over him and others is wrong. *See EngineOwning,* at *16 ("Plaintiff's counsel argued that this case could not be further from the facts of *Walden* given the extensive evidence that each individual Moving Defendant knowingly participated in an Enterprise with the express goal of selling products to a U.S. market and that were designed to injure an American-based game. The Court agrees with Plaintiff…. [I]n the Court's view, actions over the internet can just as easily be improperly used as a shield, allowing foreign defendants to point to their lack of physical presence in the forum in order to act over the internet with impunity, despite intentionally aiming allegedly wrongful conduct at the United States.")

confidential pursuant to a stipulated protective order. Courts in this District routinely grant requests for expedited discovery on an *ex parte* basis, and the fact that Zimmer has opposed the request at all is curious. *See, e.g., Order Granting Ex Parte Application, Activision Publishing, Inc. v. EngineOwning UG,* Case No. 2:22-cv-0051 (C.D. Cal. Jan. 14, 2022), Dkt. 10.

Regardless, Zimmer was given notice of the Application on Wednesday, October 8, and had sufficient time to prepare a lengthy 28-page memorandum opposing the *ex parte* Application. Thus, he cannot claim that he did not have a meaningful opportunity to respond. It is difficult to imagine what else he might argue that he did not have an opportunity to argue in his response, and there certainly has been no prejudice. Zimmer has also already requested a lengthy extension of his deadline to respond to Plaintiff's Complaint. In this regard, the Court should be aware that it was ***Zimmer*** who requested that Blizzard accept a waiver of service and the attendant 60-day timeline to respond ***after he was served*** – not the other way around, as Zimmer implies. Plaintiff has a legitimate concern that Zimmer will interpose additional delays while evidence is destroyed by other defendants in this case.

## IV. CONCLUSION

For the foregoing reasons, Blizzard's *Ex Parte* Application for leave to take expedited discovery should be granted.

DATED: October 15, 2025

MARC E. MAYER
THERESA B. BOWMAN
MITCHELL SILBERBERG & KNUPP LLP

By: */s/ Marc E. Mayer*
Marc E. Mayer
Attorneys for Plaintiff,
Blizzard Entertainment, Inc.

**Certificate of Compliance-L.R.11-6.2.**

The undersigned, counsel of record for Blizzard Entertainment, Inc., certifies that this brief contains 3,925 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 15, 2025            /s/ *Marc E. Mayer*
                                   Marc E. Mayer