Daniel M. Josephson (CA State Bar # 245895)
daniel@jurisjosephson.com
**JURISJOSEPHSON, PC**
9042 Garfield Avenue, Suite 101
Huntington Beach, California 92646
Telephone: (949) 512-0605

Attorney for Defendant,
**AFKCraft Limited**

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| BLIZZARD ENTERTAINMENT, INC., a Delaware Corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>TURTLE WOW, an entity of unknown form, AFKCRAFT LIMITED, a Hong Kong Company; YULIA SAVKO a/k/a JULIA SAVKO a/k/a Torta and Shenna, an individual; ERIC MAUSER a/k/a Shagu and Meph1s, an individual; JOSIAH ZIMMER a/k/a Akalix, an individual; STEFAN KOSTOV a/k/a brotalnia, an individual, JESSE LAUTENBACK a/k/a Niralthas, an individual, COSMIN POP a/k/a xerron, an individual, JAMEY DIEPBRINK a/k/a Jamma an individual, MAROS BETKO a/k/a Haaxor, an individual, MARCO KRETAS a/k/a MARCO KAPTEIN a/k/a Kruxis, an individual; ALEX JULEV a/k/a PepeSmite, an individual; and DOES 1 through 10, | Case No.: 2:25-cv-08194-SVW (SKx)<br><br>Judge: Hon. Stephen V. Wilson<br>Courtroom: 10A<br><br>**DEFENDANT AFKCRAFT LIMITED'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(b)(2) AND 12(b)(6)**<br><br>**Date: Monday, February 2, 2026**<br>**Time: 1:30 pm**<br>**Place: First Street U.S. Courthouse,**<br>**Courtroom 10A, 10th Floor**<br>**350 West 1st Street**<br>**Los Angeles, California 90012**<br>**Judge: Hon. Stephen V. Wilson**<br><br><br><br>Complaint Filed: August 29, 2025 |

1  inclusive,                                    )
                                                 )
2                                                )
3            Defendants
   _____

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on Monday, February 2, 2026, at 1:30 P.M., or as soon thereafter as counsel may be heard in Courtroom 10A, 10th Floor of the above-entitled Court, located at the First Street U.S. Courthouse, 350 W. 1st Street, Los Angeles, California 90012, before the Honorable Stephen V. Wilson, Defendant AFKCraft Limited ("AFKCraft" or "Defendant") will and hereby does move for an order dismissing Plaintiff Blizzard Entertainment, Inc.'s ("Blizzard") Original Compliant; finding that the Original Complaint fails to state a claim under Fed. R. Civ. P. 12(b)(2 and 12(b)(6).

This Motion is made following the conference of counsel, pursuant to L.R. 7-3 which took place via remote conferencing (Zoom) on November 24, 2025.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, all the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court before its ruling.

November 25, 2025                           Respectfully submitted,

                                    ___/s/ Daniel M. Josephson_____

                                    Daniel M. Josephson
                                    Attorney for Defendant,
                                    AFKCraft Limited

////

///

---

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 9

II.   STATEMENT OF RELEVANT FACTS.............................................................. 10

III.  LEGAL STANDARDS ........................................................................................ 11

IV.   ARGUMENT........................................................................................................ 13

   A.  THE COURT LACKS PERSONAL JURISDICTION OVER AFKCRAFT
(RULE 12(b)(2)) .................................................................................................. 13

    1.  The Ninth Circuit Applies a Rigorous Purposeful-Direction Standard for
Foreign Defendants Accused of Online Conduct.................................................... 13

    2.  Ninth Circuit Authority Confirms That Passive or Globally Accessible
Websites Do Not Create Jurisdiction....................................................................... 14

    3.  Complaint Failes to Allege AFKCraft Has Any Suit-Related Contacts with
California or the United States ................................................................................. 15

    4.  Blizzard's Collective "Enterprise" Allegations Cannot Establish Jurisdiction 16

    5.  Rule 4(k)(2) Does Not Apply ........................................................................... 17

   Exercising Jurisdiction Would Be Constitutionally Unreasonable ......................... 17

   B.  EVEN IF JURISDICTION EXISTED, THE COMPLAINT FAILS TO STATE
ANY CLAIM AGAINST AFKCRAFT, RULE 12(b)(6) ........................................ 18

   C.  Global Pleading Defects: Impermissible Group Pleading and Conclusory "Alter
Ego" and "Enterprise" Allegations ......................................................................... 19

   D.  Counts I-IV Fail to State Any Copyright-Based Claim Against AFKCraft Under
Rule 12(b)(6).......................................................................................................... 20

   E.  Count V (DMCA Trafficking) Fails to State a Claim Against AFKCraft .......... 23

   F.  Count VI: Intentional Interference with Contractual Relations Fails Under Rule
12(b)(6) .................................................................................................................. 24

   G.  Count VII: Lanham Act False Designation of Origin (15 U.S.C. § 1125(a)) Fails
to State a Claim Against AFKCraft ........................................................................ 26

   H.  Counts VIII-IX: Civil RICO and RICO Conspiracy Fail to State a Claim Against
AFKCraft ............................................................................................................... 28

    1.  Pleading Standards and Temporal Impossibility ............................................. 28

    2.  Substantive RICO (§ 1962(c)) Elements ........................................................ 29

3. Enterprise Structure.................................................................... 29

4. RICO Conspiracy (§ 1962(d))....................................................... 30

5. Domestic Injury Requirement (Civil RICO – 18 U.S.C. § 1964(c)) .............. 31

V. CONCLUSION.................................................................................... 33

## **TABLE OF AUTHORITIES**

**Cases**

*Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945 (N.D. Cal. 2015) 22, 26, 28

*AMA Multimedia, LLC v.* Wanat, 970 F.3d 1201 (9th Cir. 2020) ............... 16, 18, 19, 34

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006).................................... 33

*Armada (Singapore) PTE Ltd. v. Amcol Int'l Corp.*, 885 F.3d 1090 (7th Cir. 2018) ... 33

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................. passim

*Ass'n for Info. Media & Equip. v. Regents of the Univ. of Cal.*, No. CV 10-9378 CBM (MANx), 2011 WL 7447148 (C.D. Cal., Oct. 3, 2011).............................. 24

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017)............ passim

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)......................................... 13

*Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672 (9th Cir. 2005) .................... 27

*Boyle v. United States*, 556 U.S. 938 (2009) ............................................. 30

*Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997) ..................... passim

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir. 2014)....20, 31

*Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004)........................................................22

*Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104 (C.D. Cal. 2015) .............20

*Giacomini v. Google, Inc.*, 709 F.3d 984 (9th Cir. 2013)..............................................20

*Holland America Line Inc. v. Wartsila North America, Inc.*, 485 F.3d 450 (9th Cir. 2007)................................................................................................................16, 19, 34

*Howard v. Am. Online, Inc.*, 208 F.3d 741 (9th Cir. 2000) ...........................................31

*Humphrey v. GlaxoSmithKline PLC*, 905 F.3d 694 (3d Cir. 2018)...............................33

*In re Toyota Motor Corp. Unintended Acceleration Litig.*, 826 F. Supp. 2d 1180 (C.D. Cal. 2011) .................................................................................................................22

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ......................................................13

*Johnson v. Lucent Technologies, Inc.*, No. 09-55203, 653 F.3d 1000 (9th Cir. 2011) .25

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ...........................................32

*Keeton v. Hustler Magazine, Inc.*,465 U.S. 770 (1984)..................................................17

*Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209 (9th Cir. 1998)..................................27

*Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134 (9th Cir. 2006).....................................27

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)..............27

*Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068 (9th Cir. 2013) .......................22

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011).........16, 19, 34

*MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928 (9th Cir. 2010) ........................ 24

*MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) ..................................... 22, 24

*Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) (en banc) ............................... 30

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118 (1990) ......................... 26

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006) ............................... passim

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) ........................... 22

*Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017) ................................. 22

*Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015) ........................................ 17, 19, 34

*Realnetworks, Inc. v. DVD Copy Control Ass'n*, 641 F. Supp. 2d 913 (N.D. Cal. 2009)
   ............................................................................................................................. 24

*Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190 (9th Cir. 2012) .................. 28

*Reeves v. Hanlon*, 33 Cal. 4th 1140 (2004) ............................................................... 26

*Reves v. Ernst & Young*, 507 U.S. 170 (1993) .......................................................... 30

*RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325 (2016) ................................... 32, 33

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) .......... passim

*Steele v. Bulova Watch Co.*, 344 U.S. 280 (1952) ...................................................... 28

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ................................. 20, 26, 28, 29

*Trader Joe's Co. v. Hallatt*, 835 F.3d 960 (9th Cir. 2016) ......................................... 28

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ................................... 32

*VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723 (9th Cir. 2019) ....................................... 22

*Walden v. Fiore*, 571 U.S. 277 (2014) ..................................................................... passim

*Werner v.* Dowlatsingh, 818 F. App'x 671 (9th Cir. 2020) ............................... 15, 19, 34

**Statutes**

15 U.S.C. § 1125(a) ....................................................................................................... 27

17 U.S.C. § 1201(a)(2) ................................................................................................... 24

17 U.S.C. § 301 ........................................................................................................ 26, 27

18 U.S.C. § 1962(d) ....................................................................................................... 31

18 U.S.C. § 2319 ............................................................................................................ 32

18 U.S.C. § 2320 ............................................................................................................ 32

**Rules**

Federal Rule of Civil Procedure 4(k)(2) ....................................................................... 10

Federal Rule of Civil Procedure 8(a)(2) ....................................................................... 19

Rule 12(b)(2) .................................................................................................. 11, 12, 19, 34

Rule 12(b)(6) .................................................................................................. 11, 25, 27, 34

Rule 4(k)(2) .............................................................................................................. 18, 34

Rule 8(a) ......................................................................................................................... 25

Rule 9(b) ......................................................................................................................... 32

## MEMORANDUM OF POINTS AND AUTHORITIES

*IN SUPPORT OF DEFENDANT AFKCRAFT LIMITED'S MOTION TO DISMISS PURSUANT TO RULES 12(b)(2) AND 12(b)(6)*

## I.    INTRODUCTION

Defendant AFKCRAFT LIMITED ("AFKCraft") is a newly formed Hong Kong private company with no presence, operations, property, personnel, servers, business activity, or targeted contacts in California or anywhere in the United States. The Complaint does not allege that AFKCraft developed, hosted, maintained, distributed, promoted, administered, or monetized any "Turtle WoW" software, server, platform, launcher, or content. Blizzard instead sues AFKCraft in this Court based on a single, conclusory allegation that AFKCraft "purports" to own or operate unspecified servers and then treats AFKCraft as indistinguishable from eight other defendants through undifferentiated, collective allegations directed at "Defendants" or an asserted "Enterprise."

Under binding Supreme Court and Ninth Circuit precedent, personal jurisdiction must rest on defendant-specific facts demonstrating purposeful availment or purposeful direction, not on group pleading, *ipse dixit* "alter ego" labels, or a plaintiff's unilateral forum preference. AFKCraft has never conducted business in the United States, never subjected itself to U.S. law, never consented to any U.S. forum, never agreed to any Blizzard EULA or contractual terms, and has no involvement of any kind in any conduct alleged to have occurred in, or directed toward, the United States. The Complaint therefore does not and cannot establish the "minimum contacts" required by due process under either California's long-arm statute or Federal Rule of Civil Procedure 4(k)(2).

Separately, all nine causes of action fail as a matter of law because the pleading does not identify any act, omission, communication, transaction, server activity, code distribution, technical function, enforcement authority, or commercial benefit

attributable to AFKCraft itself. Instead, Blizzard relies solely on generalized "collective defendant" averments and unsubstantiated alter-ego and enterprise labels, which are insufficient under *Twombly* and *Iqbal* to state any claim for relief.

Because this Court lacks personal jurisdiction over AFKCraft, and because the Complaint fails to state a plausible claim against AFKCraft even if jurisdiction existed, all claims should be dismissed as to AFKCraft, with prejudice, under Rules 12(b)(2) and 12(b)(6).

## II.    STATEMENT OF RELEVANT FACTS

AFKCraft is a private limited company incorporated under the laws of the Hong Kong Special Administrative Region on March 4, 2025. Accordingly, Blizzard's allegations in its Complaint cannot apply to AFKCraft for any allegations claiming to have occurred before March 4, 2025.

The Complaint does not allege at all that AFKCraft maintains offices, any mailing address, telephone number, server facility, or registered agent in California or anywhere else in the United States. The Complaint does not allege that AFKCraft has any U.S. bank accounts, merchant accounts, or payment-processor accounts; that it has any U.S. tax registrations; that it has ever filed U.S. federal or state tax returns; or that it has ever employed, contracted with, or compensated any person or entity located in the United States. The Complaint makes no allegation that AFKCraft specifically owns, manages, leases, hosts, or operates any game server, whether in the United States or elsewhere; no allegation that  it develops, maintains, modifies, distributes, or provides access to any game client or launcher software, let alone the "Turtle WoW Client" or "Launcher" referenced in the Complaint; no allegation that AFKCraft itself provides technical support, customer support, moderation, or administration services associated with "Turtle WoW"; and does not allege that AFKCraft solicits, collects, receives, or processes any alleged "donations" or other payments relating to Turtle WoW.

AFKCraft's only business activity to date has been maintaining its corporate registration and, at most, hosting a passive informational webpage related to branded merchandise (afkcraft.com). That webpage is not used to market, promote, transact, or interact with any Turtle WoW-related product or service, and is not directed to or tailored toward California residents or U.S. users.

The Complaint does not allege that AFKCraft itself has ever created any World of Warcraft account, accessed Blizzard's online platform, assented to Blizzard's End-User License Agreement, or agreed to any California-based forum-selection, jurisdiction, or governing-law clauses.

The Complaint contains only conclusory factual allegations specific to AFKCraft. The sole AFKCraft-specific allegation asserts, on information and belief, that AFKCraft "purports to own and operate the Turtle WoW Servers" and is a "fictional shell company" and "alter ego" of unspecified individual defendants. (Compl. ¶ 21.) The pleading cites no factual basis for these assertions, identifies no server, IP address, payment record, technical involvement, communication, document, or alleged conduct attributable to AFKCraft, and instead relies on collective references to "Defendants," "the Turtle WoW Enterprise," and "participants in a common enterprise" to attribute identical alleged acts to nine different defendants without distinguishing AFKCraft's conduct from that of any other person or entity.

## III.  LEGAL STANDARDS

When a defendant challenges personal jurisdiction under Rule 12(b)(2) and the motion is decided on written submissions, the plaintiff bears the burden of making a prima facie showing of jurisdictional facts. Uncontroverted factual allegations in the complaint are accepted as true. The exercise of personal jurisdiction must also comply with due process, meaning the defendant must have minimum contacts with the forum such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Because California's long-arm statute is coextensive with federal due process, the constitutional analysis is dispositive. For foreign defendants not subject to general jurisdiction in any state, Rule 4(k)(2) permits the assertion of federal long-arm jurisdiction only if the plaintiff shows that the defendant has sufficient minimum contacts with the United States as a whole and that exercising jurisdiction would be consistent with the Constitution. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068-69 (9th Cir. 2017).

Specific personal jurisdiction in intentional-tort cases is assessed under the *Calder* effects test as refined by *Walden v. Fiore*, 571 U.S. 277 (2014), and applied by the Ninth Circuit in *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004), *Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006), *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997), and *Axiom Foods*. The plaintiff must show that the defendant committed an intentional act expressly aimed at the forum and that any alleged harm was caused by the defendant's own forum-directed conduct, not merely by the plaintiff's residence or alleged downstream effects. *Walden*, 571 U.S. at 284-86; *Axiom Foods*, 874 F.3d at 1069-70.

To withstand a Rule 12(b)(6) motion, a complaint must contain enough factual matter to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts disregard labels, conclusions, and naked assertions unsupported by factual enhancement, and do not credit allegations that merely recite the elements of a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Pleadings that attribute the same conduct to multiple defendants collectively, without identifying specific conduct by the particular defendant, are insufficient to state claims requiring scienter, intent, participation, or individualized conduct.

## IV.  ARGUMENT

### A. THE COURT LACKS PERSONAL JURISDICTION OVER AFKCRAFT. (RULE 12(b)(2))

Blizzard cannot carry its burden to establish personal jurisdiction over AFKCraft, a recently formed Hong Kong company with no offices, employees, servers, bank or payment accounts, tax presence, assets, property, or commercial activity in California or anywhere in the United States. Due process requires that a defendant have "minimum contacts" with the forum arising from its own suit-related conduct; jurisdiction cannot rest on the plaintiff's domicile, speculative assumptions, or the conduct of third parties. *Walden*, 571 U.S. at 284-86. Nothing in the Complaint or in the record satisfies that standard.

### 1. The Ninth Circuit Applies a Rigorous Purposeful-Direction Standard for Foreign Defendants Accused of Online Conduct.

Under Ninth Circuit precedent, specific jurisdiction requires either purposeful availment (contract/commerce claims) or purposeful direction (intentional tort claims). *Schwarzenegger*, *supra*, 374 F.3d at 802. Blizzard asserts intentional-tort theories based on alleged online activity; the *Calder* effects test, as narrowed by *Walden*, therefore governs. Under that test, Blizzard must show: (1) an intentional act; (2) expressly aimed at the forum; (3) causing harm the defendant knew would likely be suffered in the forum. *Walden*, *supra*, 571 U.S. at 284–86.

The express-aiming inquiry focuses on the defendant's contacts with the forum itself, not with persons who reside there. *Id.* at 285. Allegations that a website is globally accessible, that the plaintiff resides in the forum, or that the plaintiff feels harm there do not constitute purposeful direction.

///

## 2. Ninth Circuit Authority Confirms That Passive or Globally Accessible Websites Do Not Create Jurisdiction.

The Ninth Circuit has repeatedly held that foreign defendants accused of trademark or copyright violations via online content are not subject to California jurisdiction absent targeted, forum-specific conduct:

In *Pebble Beach Co. v. Caddy*, the court held that a United Kingdom resident who used a "Pebble Beach" domain name and maintained a passive informational website did not expressly aim conduct at California; there was no jurisdiction. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156-60 (9th Cir. 2006).

In *Cybersell, Inc. v. Cybersell, Inc.*, a Florida company's passive website using a similar mark did not constitute purposeful availment or purposeful direction; jurisdiction in Arizona was lacking. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418-20 (9th Cir. 1997).

In *Schwarzenegger*, advertisements appearing solely in Ohio did not target California; the plaintiff's California residency could not supply the missing contacts. *Schwarzenegger*, *supra*, 374 F.3d at 802-07.

In *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, even a deliberate email sent into the United States was deemed "too attenuated" to establish express aiming at California or the United States. *Axiom*, *supra*, 874 F.3d at 1068-71.

In *Werner v. Dowlatsingh*, the Ninth Circuit held that uploading videos to a foreign version of YouTube and taking an unrelated trip to California was not "express aiming" at the United States; Rule 4(k)(2) jurisdiction was rejected. *Werner v. Dowlatsingh*, 818 F. App'x 671, 673-74 (9th Cir. 2020).

The Ninth Circuit has reiterated that substantial U.S. user traffic or knowledge that U.S. users may access a site does not, standing alone, create jurisdiction. In *AMA Multimedia, LLC v. Wanat*, the operator of a globally accessible website with significant U.S. traffic was not subject to Rule 4(k)(2) jurisdiction because the site was

not designed or operated to target the United States. *AMA Multimedia, LLC v.* Wanat, 970 F.3d 1201, 1206-12 (9th Cir. 2020).

In *Mavrix Photo, Inc. v. Brand Techs., Inc.*, the court emphasized that website accessibility is insufficient; a defendant must "cultivate" a market in the forum. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1226 (9th Cir. 2011). And in *Holland America Line Inc. v. Wartsila North America, Inc.*, the court rejected jurisdiction where foreign defendants lacked forum-directed conduct despite commercial relationships abroad. *Holland America Line Inc. v. Wartsila North America, Inc.*, 485 F.3d 450, 459 (9th Cir. 2007).

These cases collectively foreclose jurisdiction based on the mere existence of globally accessible internet content, generalized knowledge that U.S. users exist, or the plaintiff's residency in California.

## 3. The Complaint Fails to Allege AFKCraft Has Any Suit-Related Contacts with California or the United States.

The Complaint does not allege that AFKCraft:

   a) has ever operated Turtle WoW servers in California or the United States;

   b) has ever developed, distributed, maintained, or hosted the alleged Turtle WoW Client or Launcher;

   c) has ever contracted with U.S. hosting providers, CDNs, payment processors, ISPs, or advertisers;

   d) has ever targeted, solicited, or directed any users in California or the United States;

   e) has ever received, processed, or transmitted "donations" or game-related payments through any U.S.-based system; and

f)  has ever entered into any contract governed by California law or containing a California forum clause.

The sole AFKCraft-specific allegation, in paragraph 21, asserts "on information and belief" that AFKCraft "purports to" own foreign servers and is a "fictional shell company" and "alter ego." Those statements are legal conclusions, not well-pleaded facts, and must be disregarded. *Iqbal*, *supra*, 556 U.S. at 678-79. They do not allege what AFKCraft actually did, where, when, or how any act was directed at California or the United States.

## 4. Blizzard's Collective "Enterprise" Allegations Cannot Establish Jurisdiction.

Blizzard's jurisdictional theory is fundamentally collective. It asserts that "Defendants" jointly carried out activities directed at California and the United States and then seeks to impute those alleged contacts to AFKCraft. But group pleading cannot create personal jurisdiction over a specific defendant.

In *Ranza v. Nike, Inc.*, the Ninth Circuit held that alter-ego and agency allegations must be supported by factual assertions of actual control, commingling, or disregard of corporate formalities; conclusory labels are insufficient. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070-73 (9th Cir. 2015). And as the Supreme Court observed in *Keeton v. Hustler Magazine, Inc.*, a plaintiff may not attribute one defendant's forum contacts to another absent a basis in law and fact; each defendant's contacts must be assessed individually. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984).

Blizzard pleads no facts showing that AFKCraft controlled, managed, funded, oversaw, or directed any server, developer, moderator, or administrator of Turtle WoW; that it received revenue or processed payments; that it controlled hosting

credentials; or that it issued any instructions related to Turtle WoW. Under *Walden*, jurisdiction must be based on contacts "created by the defendant itself." *Walden*, *supra*, 571 U.S. at 284. Blizzard's reliance on collective "Defendants" allegations cannot satisfy that requirement.

### 5. Rule 4(k)(2) Does Not Apply

Rule 4(k)(2) does not relax due process; it simply shifts the inquiry from state contacts to national contacts. *Axiom Foods*, *supra*, 874 F.3d at 1068-69. A foreign defendant must still have suit-related contacts that show it expressly directed conduct at the United States as a whole. *AMA Multimedia*, 970 F.3d at 1206-12.

AFKCraft has none. It conducts no business in the United States, has no U.S. accounts or processors, no U.S. contracts, no U.S. servers, and no U.S. personnel. It has never targeted U.S. users or availed itself of U.S. law.

If the mere globally accessible nature of internet infrastructure were sufficient, *AMA Multimedia*, *Pebble Beach*, *Cybersell*, *Werner*, and *Axiom Foods* would have been decided the opposite way. They were not. Those decisions confirm that Blizzard's Rule 4(k)(2) theory fails as a matter of law.

### 6. Exercising Jurisdiction Would Be Constitutionally Unreasonable.

Even if Blizzard could identify some contact relevant to the forum (which it has not), jurisdiction would still fail under the "fair play and substantial justice" factors. See *Pebble Beach*, *supra*, 453 F.3d at 1159-60.

AFKCraft is a small foreign entity with exclusively foreign operations. The burden of litigating in California would be severe. The United States has no legitimate interest in compelling a foreign company with no U.S. activity to defend claims here, especially where Blizzard is free to pursue claims in a more appropriate foreign forum, such as Hong Kong. See *Id.* at 1159-60 (reasonableness factors weighed against jurisdiction where defendant was a foreign resident whose conduct occurred abroad).

These factors independently foreclose jurisdiction.

Blizzard has not met, and cannot meet, its burden to show that AFKCraft purposefully directed any conduct toward California or toward the United States. Under *Walden*, *Axiom Foods*, *AMA Multimedia*, *Pebble Beach*, *Cybersell*, *Schwarzenegger*, *Mavrix*, *Holland America*, *Werner*, and *Ranza*, the due-process requirements for personal jurisdiction are not satisfied. All claims against AFKCraft must therefore be dismissed with prejudice under Rule 12(b)(2).

### B. EVEN IF JURISDICTION EXISTED, THE COMPLAINT FAILS TO STATE ANY CLAIM AGAINST AFKCRAFT UNDER RULE 12(b)(6).

The Complaint offers only conclusory, group-pleaded assertions that AFKCraft "purports" to own servers and acts as an "alter ego" of unidentified individuals, without alleging a single specific act attributable to AFKCraft, and therefore fails to state a plausible claim under the Copyright Act, DMCA, Lanham Act, RICO, or California tort law.

Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," which in turn requires factual matter sufficient to make liability as to each defendant plausible, not merely possible. *Twombly*, 550 U.S. at 555–57; *Iqbal*, 556 U.S. at 678.

Under *Twombly*, a complaint must allege "enough facts to state a claim to relief that is plausible on its face," and allegations that are "merely consistent with" liability "stop short of the line between possibility and plausibility of entitlement to relief." 550 U.S. at 557, 570. *Iqbal* further holds that courts must disregard "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," and must determine whether the well-pleaded factual content allows the court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,

*supra*, 556 U.S. at 678-79. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and are "not entitled to the assumption of truth." *Id.*

The Ninth Circuit applies those standards defendant-by-defendant. See *Giacomini v. Google, Inc.*, 709 F.3d 984, 989 (9th Cir. 2013) (affirming dismissal where plaintiff "failed to allege what role each defendant played in the alleged harm"); *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule 8 requires more than generalized allegations against 'defendants'."). Pleadings that lump defendants together, especially in claims requiring scienter, knowledge, or control, are insufficient.

Courts in this District likewise dismiss bare "alter ego" allegations that lack facts concerning capitalization, commingling, disregard of formalities, or use of the corporate form to perpetrate a fraud. See *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1136-38 (C.D. Cal. 2015). Allegations that a corporation is a "shell" or "alter ego," without supporting factual detail, are insufficient both to pierce the corporate veil and to transform ordinary business relationships into a RICO "enterprise." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997-1000 (9th Cir. 2014).

### C. Global Pleading Defects: The Complaint Relies Upon Impermissible Group Pleading and Conclusory "Alter Ego" and "Enterprise" Allegations.

Nearly every operative paragraph in the Complaint attributes conduct to "Defendants" collectively: "Defendants have infringed Blizzard's copyrights," "Defendants have actively encouraged and induced users," "Defendants provide ongoing technical support," "Defendants profit from 'donations'," etc. (Compl. ¶¶ 86, 94, 101-03, 110-12, 118-21, 133-35, 141-45, 152-61, 170-75.) Nowhere does the operative pleading allege that AFKCraft itself copied a file, ran a server, processed a payment, posted any content, or communicated with any user.

Paragraph 21 is the only AFKCraft-specific paragraph. It simply asserts that AFKCraft "purports" to own and operate servers in Southeast Asia and then labels AFKCraft a "fictional shell company" and "alter ego" of unidentified individuals. It pleads no facts about AFKCraft's capitalization, bookkeeping, corporate formalities, or any misuse of the corporate form. Such "naked assertions devoid of further factual enhancement" cannot support veil-piercing or enterprise liability. *Iqbal*, *supra*, 556 U.S. at 678.

Because all nine counts rest entirely on these collective and conclusory allegations, the Complaint fails to state any claim against AFKCraft.

### D. Counts I–IV Fail to State Any Copyright-Based Claim Against AFKCraft Under Rule 12(b)(6).

The dispositive question for Counts I–IV is whether Blizzard has pled any non-conclusory factual allegation showing that AFKCraft itself engaged in direct, inducement, contributory, or vicarious copyright infringement, rather than relying solely on undifferentiated group pleading and the assertion that AFKCraft merely "purports" to own servers.

To survive dismissal, each copyright theory must be supported by defendant-specific facts, not generic "Defendants" allegations. *Iqbal*, *supra*, 556 U.S. at 678-79; *Twombly*, *supra*, 550 U.S. at 555-57. The Ninth Circuit expressly holds that such collective allegations are insufficient. *Swartz*, *supra*, 476 F.3d at 764-65; *Giacomini v. United States*, 588 F.3d 1219, 1225 (9th Cir. 2009). Where a complaint fails to identify "which defendants did what," dismissal is required. *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015); see also *In re Toyota Motor Corp. Unintended Acceleration Litig.*, 826 F. Supp. 2d 1180, 1202 (C.D. Cal. 2011).

Direct copyright infringement requires volitional conduct by the defendant. A plaintiff must allege volitional copying, distribution, public display, or creation of

derivative works by that defendant. *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666-68 (9th Cir. 2017) ("providing a system used to commit infringement is insufficient"). *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731-32 (9th Cir. 2019) likewise reaffirms that direct infringement requires volitional conduct, not mere operation of a system others use. The Complaint alleges no such AFKCraft-specific conduct. (Compl. ¶¶ 84-91.)

Inducement requires purposeful acts intended to foster infringement. *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936-37 (2005). The Complaint contains no AFKCraft-specific inducement acts; it relies solely on collective references to "Defendants." (Compl. ¶¶ 92-99.)

Contributory infringement requires knowledge of specific infringing acts and material contribution. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007); *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072-73 (9th Cir. 2013) (affirming dismissal where complaint failed to plausibly allege that carrier defendants knew of, or materially contributed to, specific infringing acts). Blizzard does not allege that AFKCraft possessed such knowledge or that it provided files, servers, tools, or support to any infringer. (Compl. ¶¶ 100-107.)

Vicarious liability requires (1) the right and ability to supervise infringing activity and (2) a direct financial benefit from the infringement. *Perfect 10*, *supra*, 847 F.3d at 673-75; *Ellison v. Robertson*, 357 F.3d 1072, 1078-79 (9th Cir. 2004). A generalized allegation that "Defendants" receive "donations" is insufficient to plead that AFKCraft, specifically, derived a direct financial benefit or had supervisory authority. (Compl. ¶¶ 108-116.)

Here, Blizzard repeatedly alleges that "Defendants" collectively developed, distributed, hosted, marketed, profited from, or controlled "Turtle WoW" (e.g., Compl. ¶¶ 15, 33-35, 52-55, 76-78) and asserts without factual support that AFKCraft "purports" to own servers. (Compl. ¶¶ 20-21.) No paragraph in Counts I-IV alleges a

single affirmative act taken by AFKCraft, nor identifies any date, method, transaction, server, code contribution, payment channel, communication, file transfer, directive, or software tool attributed to AFKCraft itself.

The Complaint does not allege a single act, omission, decision, or communication attributable to AFKCraft that satisfies any element of any copyright theory. It does not allege that AFKCraft ever operated, leased, hosted, controlled, administered, or accessed any alleged Turtle WoW servers or the related client software; that AFKCraft developed, modified, compiled, distributed, or transmitted the alleged game client; that AFKCraft provided or supported any launcher, installer, download, troubleshooting instructions, or technical platform; or that AFKCraft processed, received, shared, or benefitted from any "donations," payments, or consideration associated with Turtle WoW.

Instead of pleading facts, Blizzard relies on undifferentiated group allegations coupled with a single, unexplained sentence asserting that AFKCraft "purports" to own servers. (Compl. ¶¶ 20-21.) Such allegations do not permit the Court or Defendant to determine what AFKCraft supposedly did, when it did it, through whom, via what mechanism, or with what knowledge, intent, or benefit. See, *Iqbal*, *supra*, 556 U.S. at 679.

Without factual allegations linking AFKCraft to any element of any asserted copyright theory, Counts I-IV amount to the exact type of speculative and conclusory pleading rejected in *Twombly* and *Iqbal*. Because Blizzard has not pled any defendant-specific factual content showing that AFKCraft engaged in direct, inducement, contributory, or vicarious infringement, Counts I-IV must be dismissed as a matter of law under Rule 12(b)(6).

///

///

### E. Count V (DMCA Trafficking) Fails to State a Claim Against AFKCraft.

Blizzard has not plausibly pled a DMCA trafficking claim under 17 U.S.C. § 1201(a)(2) or § 1201(b)(1) against AFKCraft because the Complaint is devoid of a single factual allegation that AFKCraft itself offered, marketed, provided, distributed, or trafficked in any alleged circumvention technology, relying instead on impermissible group pleading.

To state a § 1201 trafficking claim, a plaintiff must allege facts showing that the particular defendant offered to the public, provided, marketed, or otherwise trafficked in a device that (1) is primarily designed for circumvention, (2) has limited commercially significant use other than circumvention, and (3) was supplied with knowledge of its circumvention purpose. *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 952-53 (9th Cir. 2010); *Realnetworks, Inc. v. DVD Copy Control Ass'n*, 641 F. Supp. 2d 913, 941 (N.D. Cal. 2009); *Grokster*, *supra*, 545 U.S. at 936-37.

Blizzard asserts that unidentified "Defendants" used, marketed, and trafficked the Turtle WoW Client as a circumvention tool (Compl. ¶¶ 117-27), but does not allege that AFKCraft itself (i) created the Turtle WoW Client, (ii) hosted it, (iii) provided it to any user, (iv) advertised it, (v) uploaded it, (vi) distributed a download link, (vii) received proceeds from it, or (viii) communicated with users regarding it. Courts dismiss § 1201 claims where the complaint fails to identify any act by the particular defendant that constitutes "offering," "providing," or "trafficking" in a circumvention technology. *See Ass'n for Info. Media & Equip. v. Regents of the Univ. of Cal.*, No. CV 10-9378 CBM (MANx), 2011 WL 7447148, at *5 (C.D. Cal., Oct. 3, 2011) (dismissing § 1201(a)(2) claim where the complaint "does not allege … what actions Defendants took that constitute the 'manufacture, import, offer to the public, prov[ision], or otherwise traffic[king]'" in circumvention technology, and holding such conclusory allegations insufficient to state an anti-trafficking claim). See also, *Johnson v. Lucent Technologies, Inc.*, No. 09-55203, 653 F.3d 1000, 1010, 2011 WL 3332368,

*8 (9th Cir. 2011) ("Conclusory allegations and unwarranted inferences [] are insufficient to defeat a motion to dismiss.").

The only AFKCraft-specific allegation is that it "purports" to own or operate servers. (Compl. ¶¶ 20-21.) That assertion is unsupported, conclusory, and legally insufficient under *Iqbal* because it offers no factual allegations describing what AFKCraft supposedly did, who acted for AFKCraft, when, how, or to whom. And the pleadings do not even assert that AFKCraft possessed, controlled, or transmitted the so-called "Launcher" or Client. The § 1201 claim therefore lacks both the *act* element and the *knowledge* element required by *MDY* and *Realnetworks*.

Because Blizzard pleads no non-conclusory, defendant-specific facts showing that AFKCraft engaged in any act of offering, distributing, marketing, or trafficking in circumvention technology, Count V fails to satisfy Rule 8(a) and the plausibility standards of *Twombly* and *Iqbal*, and must be dismissed as to AFKCraft under Rule 12(b)(6).

### F. Count VI: Intentional Interference with Contractual Relations Fails Under Rule 12(b)(6).

Blizzard has not stated a legally plausible claim for intentional interference with contractual relations against AFKCraft where the Complaint contains no AFKCraft-specific factual allegations showing knowledge of the WoW EULA, intentional procurement of breach, or causation, and instead rests entirely on undifferentiated group pleading.

Under California law, intentional interference with contractual relations requires: (1) a valid contract; (2) defendant's actual knowledge of it; (3) intentional acts designed to induce breach or disruption; (4) actual breach or disruption; and (5) resulting damages. *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990). Mere awareness of a business relationship is insufficient; the defendant must

have engaged in conduct directed toward disrupting it. *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1148 (2004).

Count VI alleges that "Defendants" induced WoW subscribers to breach the Blizzard EULA by using Turtle WoW. (Compl. ¶¶ 129-136.) But the Complaint does not allege any AFKCraft-specific facts supporting any element of this tort:

      1)    there is no allegation that AFKCraft knew Blizzard's EULA existed, much less knew its terms:

      2)    there is no allegation that AFKCraft communicated with, solicited, encouraged, instructed, or provided anything to any WoW subscriber;

      3)    there is no allegation that AFKCraft undertook any action for the purpose of breaching or interfering with Blizzard's contracts; and

      4)    there is no allegation that AFKCraft benefitted from, profited from, or was even aware of any alleged subscriber activity.

The Complaint does not show that AFKCraft ever created a WoW account, ever assented to the EULA, or had any involvement in offering, distributing, maintaining, or supporting the alleged Turtle WoW platform. Under *Twombly* and *Iqbal*, these omissions are fatal because Blizzard has pled only a legal conclusion of "interference" without factual enhancement. *Iqbal*, *supra*, 556 U.S. at 678-79.

The defect is compounded by the Complaint's oblique reliance on collective references to "Defendants," without distinguishing acts attributable to AFKCraft. Such impermissible group pleading is insufficient to state a claim. *Swartz*, *supra*, 476 F.3d at 764-65; *Adobe*, *supra*, 125 F. Supp. 3d at 964.

To the extent Count VI seeks to impose liability for allegedly encouraging or enabling players to access or use unauthorized copies of WoW, the theory merely re-labels Blizzard's exclusive copyright enforcement rights and is therefore preempted by the Copyright Act, 17 U.S.C. § 301. See *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998); *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1138-41

(9th Cir. 2006). Blizzard cannot obtain broader remedies by re-casting alleged infringement as "contract interference," particularly where AFKCraft has no alleged contractual or communications nexus with subscribers.

Because Blizzard's intentional-interference claim contains no AFKCraft-specific factual allegations establishing knowledge, intent, causation, or damages, and instead relies on conclusory group pleading, Count VI fails to state a claim under Rule 12(b)(6) and is independently preempted by 17 U.S.C. § 301.

### G. Count VII: Lanham Act False Designation of Origin (15 U.S.C. § 1125(a)) Fails to State a Claim Against AFKCraft.

Blizzard has not stated a plausible Lanham Act false-designation claim under 15 U.S.C. § 1125(a) against AFKCraft where the Complaint does not allege that AFKCraft itself used Blizzard's marks in commerce, in the United States, or in any manner likely to cause confusion, and instead relies solely on undifferentiated group pleading.

A viable false-designation claim requires factual allegations showing that this particular defendant used the plaintiff's mark in commerce in a manner likely to cause confusion as to affiliation, sponsorship, or origin. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131-32 (2014); *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676-77 (9th Cir. 2005) ("use in commerce" is required).

Lanham Act claims also require factual allegations of commercial use, not merely passive internet association. *Cybersell*, *supra*, 130 F.3d at 419-20; *Pebble Beach*, 453 F.3d at 1157-60. Mere reference to another's marks on the internet, without commercial use or sales, does not trigger Lanham Act liability. *Bosley*, *supra*, 403 F.3d at 678-79. Further, a Lanham Act claim must plausibly allege U.S. commercial activity, as the statute does not extend extraterritorially absent U.S. use and impacts.

*Steele v. Bulova Watch Co.*, 344 U.S. 280, 285-86 (1952); *Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 969-70 (9th Cir. 2016).

Count VII alleges that "Defendants" used Blizzard's marks on Turtle-WoW-related websites, in-game content, and social-media channels. (Compl. ¶¶ 137-145.) But the Complaint does not allege a single AFKCraft-specific fact showing that AFKCraft: (1) operated or controlled the turtle-wow.org domain; (2) authored, uploaded, or approved any content using Blizzard marks; (3) maintained, administered, or owned any Turtle WoW social-media account; (4) used Blizzard's marks on any AFKCraft-controlled website, product, advertisement, payment page, or merchandise; (5) directed any allegedly infringing materials to U.S. consumers; or (6) engaged in any commercial transaction involving Turtle WoW.

The Complaint instead relies on collective references to "Defendants" and the vague assertion that AFKCraft "purports" to own servers. That form of group pleading is legally insufficient. *Swartz*, *supra*, 476 F.3d at 764-65; *Adobe*, *supra*, 125 F. Supp. 3d at 964. Absent allegations that AFKCraft itself used Blizzard's marks "in commerce" in connection with goods or services, the Complaint fails to state a §1125(a) claim against AFKCraft. See *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202-03 (9th Cir. 2012).

Even if Turtle WoW content contained Blizzard's marks, Blizzard pleads no factual connection between that content and AFKCraft's conduct. Under *Cybersell* and *Pebble Beach*, foreign passive or informational content with no U.S. targeting is not actionable and does not constitute "use in commerce" under § 1125(a).

Because Blizzard alleges no AFKCraft-specific factual conduct constituting commercial use of a mark in the United States, and instead relies exclusively on impermissible group pleading, Count VII fails to state a claim under Rule 12(b)(6) and must be dismissed as to AFKCraft.

### H. Counts VIII-IX: Civil RICO and RICO Conspiracy Fail to State a Claim Against AFKCraft.

Blizzard has not plausibly alleged that AFKCraft, a Hong Kong company formed in March 2025, conducted or participated in the operation or management of any alleged RICO enterprise, engaged in two or more domestic racketeering predicates, or knowingly agreed to join a RICO conspiracy as is required for RICO claims. The Complaint contains no AFKCraft-specific factual allegations and relies exclusively on undifferentiated group pleading directed at "Defendants."

### 1. The Complaint Violates Pleading Standards and Raises Temporal Impossibility.

At the motion-to-dismiss stage, a complaint must allege specific, concrete facts that, if true, would allow the Court to draw a plausible inference of liability as to each defendant individually. *Iqbal*, *supra*, 556 U.S. at 678-79; *Twombly*, *supra*, 550 U.S. at 555-57. The Ninth Circuit rejects group-pleading in RICO just as in other contexts. *Swartz*, *supra*, 476 F.3d at 764-65.

Here, Blizzard alleges in conclusory fashion that "Defendants together form an association-in-fact enterprise" and have collectively operated it "for at least five years" to develop, market, and distribute Turtle WoW. (Compl. ¶¶ 152-155.) Nowhere does the Complaint allege that AFKCraft: (1) directed enterprise operations within the meaning of *Reves*'s "operation or management" test; (2) exercised decision-making authority or coordinated enterprise structure as required under *Odom* and *Boyle*; (3) controlled any relevant website, server, platform, launcher, code repository, or payment infrastructure; or (4) received any revenue, financial benefit, property, or other consideration derived from the alleged scheme.

Moreover, Blizzard alleges that the purported enterprise has existed "for at least five years" and that predicate conduct began "as early as 2018." (Compl. ¶¶ 155, 161.)

Blizzard also alleges, and public business records confirm that AFKCraft was not formed until March 2025. An entity that did not exist cannot retroactively join, manage, operate, or participate in a racketeering enterprise, nor commit predicate acts before coming into existence. Allegations that place AFKCraft inside an enterprise timeline that predates its existence are facially implausible. See *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-57.

### 2. The Complaint Lacks The Substantive RICO (§ 1962(c)) Elements.

To state a claim under 18 U.S.C. § 1962(c), Blizzard must allege facts showing that AFKCraft: (1) conducted or participated, (2) in the conduct, (3) of an enterprise's affairs, (4) through a pattern, (5) of racketeering activity, and (6) that such conduct proximately caused a cognizable injury to business or property. *Reves v. Ernst & Young*, 507 U.S. 170, 179-85 (1993); *Odom v. Microsoft Corp.*, 486 F.3d 541, 552-53 (9th Cir. 2007) (en banc).

Liability attaches only to those who participate in the "operation or management" of the enterprise; mere association, awareness, or provision of services is not enough. *Reves*, *supra*, 507 U.S. at 179, 183. Here, the Complaint does not allege that AFKCraft exercised managerial, supervisory, operational, financial, logistical, or technical control over the alleged enterprise; that AFKCraft directed decisions; controlled code repositories, servers, websites, or advertising; handled donations or financial transactions; or executed a single predicate act. Under *Reves* and *Odom*, that omission is fatal.

### 3. The Complaint Impermissibly Omits Enterprise Structure Allegations.

To satisfy the enterprise element, Blizzard must plead an association-in-fact enterprise with: (1) a common purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to pursue that purpose. *Boyle v. United States*, 556 U.S. 938, 945-47 (2009). The Ninth Circuit requires allegations of actual

organizational structure and coordinated functioning, not simply that defendants acted with similar goals. *Eclectic Props.*, *supra*, 751 F.3d at 997-1000; *Howard v. Am. Online, Inc.*, 208 F.3d 741, 749-51 (9th Cir. 2000). Parallel conduct alone does not suggest a RICO enterprise. *Id*.

The Complaint does not allege that AFKCraft managed enterprise infrastructure or assets; processed financial payments, revenues, or donations; issued directives or governance-level decisions; supervised participants; engaged with users, developers, or administrators; or maintained technical platforms, access credentials, or support systems. Instead, Blizzard rests on collective assertions that "Defendants coordinate and work together" and "have operated and acted through the Enterprise for at least five years." (Compl. ¶¶ 152-155.) Those are precisely the conclusory, collective recitals rejected in *Reves*, *Iqbal*, and *Swartz*.

### 4. RICO Conspiracy (§ 1962(d)) Claims Suffer Unresolvable Infirmities.

To plead a civil RICO conspiracy under 18 U.S.C. § 1962(d), Blizzard must allege that AFKCraft "knowingly agreed to facilitate a scheme which, if completed, would satisfy all of the elements of a substantive RICO offense." *Howard*, *supra*, 208 F.3d at 751. Mere knowledge, association, shared interests, or parallel conduct does not establish conspiratorial agreement. *Id.* at 749-52; *Twombly*, 550 U.S. at 556-57.

Count IX asserts that "Defendants knowingly, willfully and unlawfully conspired" to operate and promote the alleged enterprise. (Compl. ¶¶ 170-172.) Yet Blizzard pleads no fact showing that AFKCraft entered into any agreement with any identified individual; communicated with any alleged enterprise participant about racketeering conduct; agreed to commit any predicate act; or possessed criminal scienter. Instead, Blizzard relies on boilerplate collective statements such as "each Defendant committed at least one overt act," without identifying what AFKCraft

---

allegedly did, when, or how it joined the conspiracy. That is insufficient under *Howard*, *Twombly*, and *Iqbal*.

Further, Blizzard's predicate-act allegations (Compl. ¶¶ 162-169) are not tied to AFKCraft at all. Each element is attributed to "Defendants" collectively without alleging that AFKCraft: (a) used or applied counterfeit marks under 18 U.S.C. § 2320; (b) uploaded, distributed, or reproduced copyrighted works under 18 U.S.C. § 2319; (c) took any affirmative overt act; or (d) possessed specific criminal intent. Because many of the asserted predicates sound in fraud-like conduct, they must satisfy Rule 9(b)'s heightened particularity standard, which requires the who, what, when, where, and how of the alleged scheme. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106-07 (9th Cir. 2003); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-26 (9th Cir. 2009). Blizzard alleges none of those particulars as to AFKCraft.

Finally, as an entity formed in 2025, AFKCraft cannot have conspired to commit alleged racketeering acts dating back to "at least 2018" (Compl. ¶ 172), rendering the conspiracy allegations chronologically impossible and therefore implausible. Because Blizzard fails to plead: (1) knowing and intentional agreement, (2) defendant-specific predicate acts, (3) any overt act by AFKCraft, (4) Rule 9(b) particularity, and (5) a viable underlying § 1962(c) claim, Count IX must be dismissed with prejudice as to AFKCraft. See, e.g., *Howard*, *supra*, 208 F.3d at 751.

### 5. The Complaint Fails to Meet The Domestic Injury Requirement (Civil RICO – 18 U.S.C. § 1964(c))

Civil RICO has no extraterritorial application absent a showing that both the alleged injury and the predicate conduct are sufficiently domestic. *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 346-54 (2016). A plaintiff must allege a domestic injury to business or property, and an injury suffered abroad under § 1964(c), even if alleged by a U.S. plaintiff. *Id.* at 352-53. Courts applying *RJR Nabisco* focus on where

the plaintiff actually experienced economic loss, not merely where it is incorporated or headquartered. *Armada (Singapore) PTE Ltd. v. Amcol Int'l Corp.*, 885 F.3d 1090, 1094-96 (7th Cir. 2018); *Humphrey v. GlaxoSmithKline PLC*, 905 F.3d 694, 706 (3d Cir. 2018). Predicate acts themselves must also be plausibly domestic, as RICO does not permit reliance on extraterritorial predicate conduct absent express congressional authorization in the predicate statute. *RJR Nabisco*, *supra*, 579 U.S. at 336-40. And RICO demands direct, concrete, domestic economic harm tied to domestic predicate acts by the particular defendant; generalized competitive harm or global revenue loss is insufficient. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458-61 (2006).

Here, Blizzard does not plead any domestic predicate conduct or domestic injury attributable to AFKCraft. The Complaint alleges that the servers are located abroad; that development and modification of code are performed abroad; that the alleged actors include individuals located in the Netherlands and Russia (Compl. ¶¶ 152-155, 157); that AFKCraft is a Hong Kong company formed in March 2025 (Compl. ¶¶ 2-3); and that the alleged conduct involves non-U.S. infrastructure, assets, and participants. It does not allege that AFKCraft performed any predicate act in the United States, caused any act to occur in the United States, or directed conduct at the United States. Nor does it allege any economic injury caused by AFKCraft, let alone one domestically realized.

The only injury allegations consist of Blizzard's headquarters in California and generalized lost subscription revenue "worldwide and in the United States." (Compl. ¶¶ 166, 169.) Under *RJR Nabisco*, *Armada*, and *Humphrey*, those allegations are legally insufficient; corporate domicile does not establish domestic injury, and global revenue loss is not a domestic injury unless traceable to this defendant's domestic predicate acts.

Accordingly, even if Blizzard had adequately alleged a RICO enterprise and predicate acts (which it has not), Counts VIII and IX must be dismissed because the

Complaint pleads no domestic injury and no domestic predicate conduct attributable to AFKCraft.

## V.    CONCLUSION

AFKCraft is a Hong Kong company with no operations, employees, servers, or revenue in the United States and no involvement in the alleged Turtle WoW activities. Under controlling Supreme Court and Ninth Circuit authority, including *Walden*, *Axiom Foods*, *AMA Multimedia*, *Pebble Beach*, *Cybersell*, *Schwarzenegger*, *Mavrix*, *Holland America*, *Werner*, and *Ranza*, this Court cannot exercise personal jurisdiction over AFKCraft consistent with due process, whether under California's long-arm statute or Rule 4(k)(2).

Moreover, even if jurisdiction existed, the Complaint fails to allege any specific conduct by AFKCraft sufficient to state a plausible claim under any of the nine counts. The pleading rests entirely on group-pleading, bare "alter ego" labels, and an enterprise theory that is chronologically impossible as applied to AFKCraft. Under *Twombly*, *Iqbal*, and the Ninth Circuit authorities cited above, such allegations are insufficient as a matter of law.

For these reasons, AFKCraft respectfully requests that the Court grant its motion and dismiss all claims against AFKCRAFT LIMITED, with prejudice, pursuant to Rules 12(b)(2) and 12(b)(6).

DATED: November 25, 2025        ___/s/ Daniel M. Josephson_____

                                Daniel M. Josephson
                                Attorney for Defendant,
                                **AFKCRAFT LIMITED**

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant AFKCRAFT LIMITED, certifies that this brief contains 6,961 words, which complies with the word limit of L.R. 11-6.1.

DATED: November 25, 2025          __/s/ Daniel M. Josephson_____

Daniel M. Josephson
Attorney for Defendant,
**AFKCRAFT LIMITED**