1  MARC E. MAYER (SBN 190969)
     mem@msk.com
2  MITCHELL SILBERBERG & KNUPP LLP
   2049 Century Park East, 18th Floor
3  Los Angeles, CA 90067-3120
   Telephone: (310) 312-2000
4  Facsimile: (310) 312-3100

5  THERESA B. BOWMAN (admitted *pro hac vice*)
     tbb@msk.com
6  MITCHELL SILBERBERG & KNUPP LLP
   1818 N Street, NW, 7th Floor
7  Washington, DC 20036-2406
   Telephone: (202) 355-7900
8  Facsimile: (202) 355-7899

9  Attorneys for Plaintiff Blizzard
   Entertainment, Inc.

10

11

                 UNITED STATES DISTRICT COURT

                 CENTRAL DISTRICT OF CALIFORNIA

12

13  BLIZZARD ENTERTAINMENT,            CASE NO. 2:25-cv-08194-SVW (SKx)
    INC., a Delaware Corporation,

14            Plaintiff,              [Assigned to Honorable Stephen V. Wilson]

15       v.                          **MEMORANDUM OF POINTS AND
                                     AUTHORITIES OF PLAINTIFF
16  TURTLE WOW, an entity of unknown  BLIZZARD ENTERTAINMENT,
    form; AFKCRAFT LIMITED, a Hong    INC. IN OPPOSITION TO
17  Kong Company; YULIA SAVKO a/k/a   DEFENDANT JOSIAH ZIMMER'S
    JULIA SAVKO a/k/a Torta and       MOTION TO DISMISS**
18  Shenna, an individual; ERIC MAUSER
    a/k/a Shagu and Meph1s, an individual;  Date:      February 2, 2026
19  JOSIAH ZIMMER a/k/a Akalix, an    Time:      1:30 p.m.
    individual; STEFAN KOSTOV a/k/a   Location:  Courtroom 10A
20  brotalnia, an individual, JESSE              350 West 1st Street
    LAUTENBACK a/k/a Niralthas, an               Los Angeles, CA 90012
21  individual, COSMIN POP a/k/a xerron,
    an individual, JAMEY DIEPBRINK
22  a/k/a Jamma an individual, MAROS
    BETKO a/k/a Haaxor, an individual,  Filed:     August 29, 2025
23  MARCO KRETAS a/k/a MARCO
    KAPTEIN a/k/a Kruxis, an individual;
24  ALEX JULEV a/k/a PepeSmite, an
    individual; and DOES 1 through 10,
25  inclusive,

26            Defendants.

27

28

Mitchell
Silberberg &
Knupp LLP

21325317.1

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ...................................................................................7

I.    SUMMARY OF ALLEGATIONS .....................................................8

II.   BLIZZARD DOES NOT RELY ON IMPROPER "GROUP PLEADING." ..............................................................................11

III.  BLIZZARD HAS SUFFICIENTLY ALLEGED EACH OF ITS CLAIMS AGAINST ZIMMER. ....................................................13

      A.    Blizzard Has Sufficiently Alleged Its Claims for Direct, Contributory, and Vicarious Copyright Infringement. ......................14

            1.    Zimmer Directly Participated in the Reproduction and Distribution of the Turtle WoW Client. ...................................14

            2.    Zimmer Encouraged and Induced Turtle WoW Players to Infringe Blizzard's Copyrights. ................................................16

            3.    Zimmer Received a Direct Financial Benefit from and Had the Right and Ability to Control Copyright Infringement........20

      B.    Blizzard Has Sufficiently Alleged Its Claims for Trafficking in Circumvention Devices.........................................................22

      C.    Blizzard Has Sufficiently Alleged Its Claim for Intentional Interference with Blizzard's EULA. ..................................................24

      D.    Blizzard Has Sufficiently Alleged Its Claim for Trademark Infringement. .......................................................25

IV.   ZIMMER'S TIMELINESS AND FIRST AMENDMENT ARGUMENTS ARE FRIVOLOUS.................................................26

CONCLUSION........................................................................................27

Mitchell
Silberberg &
Knupp LLP

21325317.1

OPPOSITION TO DEFENDANT ZIMMER'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A&M Recs., Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ................................................................. 19, 21

*Adobe Sys. Inc. v. Blue Source Grp., Inc.*,
   125 F. Supp. 3d 945 (N.D. Cal. 2015) ............................................................ 12

*Allstar Mktg. Grp., LLC v. Your Store Online, LLC*,
   666 F. Supp. 2d 1109 (C.D. Cal. 2009) .......................................................... 14

*Blizzard Ent., Inc. v. Bossland GmbH*,
   2017 WL 7806600 (C.D. Cal. Mar. 31, 2017) ................................................. 20

*Blizzard Ent. Inc. v. Ceiling Fan Software LLC*,
   28 F. Supp. 3d 1006 (C.D. Cal. 2013) .................................................. 24, 25, 27

*Cable/Home Commc'n Corp. v. Network Prods., Inc.*,
   902 F.2d 829 (11th Cir. 1990) ...................................................................... 19

*Celestial Arts, Inc. v. Neyler Color-Lith Co.*,
   339 F. Supp. 1018 (E.D. Wis. 1971) .............................................................. 14

*Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*,
   2021 WL 9763371 (N.D. Cal. Feb. 8, 2021), *opinion vacated in part on
   reconsideration*, 2021 WL 11714935 (N.D. Cal. Dec. 7, 2021) ....................... 11

*Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.*,
   793 F. Supp. 2d 1138 (C.D. Cal. 2011) .......................................................... 13

*Columbia Pictures Indus., Inc. v. Fung*,
   710 F.3d 1020 (9th Cir. 2013) ........................................................ 17, 19, 21, 22

*Comcast of Illinois X, LLC v. Hightech Elecs., Inc.*,
   2004 WL 1718522 (N.D. Ill. July 29, 2004) ................................................... 23

*ConsumerDirect, Inc. v. Pentius, LLC*,
   2022 WL 1585702 (C.D. Cal. Apr. 4, 2022) .............................................. 11, 13

*CoStar Grp., Inc. v. LoopNet, Inc.*,
   373 F.3d 544 (4th Cir. 2004) ........................................................................ 16

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Davidson & Assocs., Inc. v. Internet Gateway, Inc.*,
   334 F. Supp. 2d 1164 (E.D. Mo. 2004), *aff'd sub nom. Davidson & Assocs. v. Jung*, 422 F.3d 630 (8th Cir. 2005) ................................... 15

*Davidson & Assocs. v. Jung*, 422 F.3d 630 (8th Cir. 2005) ........................... 22, 23

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
   844 F.3d 79 (2d Cir. 2016) ................................................................. 16

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
   76 F.3d 259 (9th Cir. 1996) ........................................................... 20, 21

*Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*,
   443 F.2d 1159 (2d Cir. 1971) ............................................................. 20

*Green v. United States Dep't of Just.*,
   111 F.4th 81 (D.C. Cir. 2024) ............................................................ 27

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
   2019 WL 4166864 (N.D. Ill. Sept. 3, 2019) ......................................... 24

*In re Packaged Seafood Prods. Antitrust Litig.*,
   242 F. Supp. 3d 1033 (S.D. Cal. 2017) ................................................ 11

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*,
   599 U.S. 140 (2023) .......................................................................... 27

*Luft v. Crown Publishers, Inc.*,
   772 F.Supp. 1378 (S.D.N.Y. 1991) ..................................................... 14

*MAI Sys. Corp. v. Peak Computer, Inc.*,
   991 F.2d 511 (9th Cir. 1993) ............................................................. 15

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
   629 F.3d 928 (9th Cir. 2010) ........................................................ 8, 22

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
   518 F. Supp. 2d 1197 (C.D. Cal. 2007) ............................................... 17

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005) ..................................................................... 14, 19

1

## TABLE OF AUTHORITIES
<u>(continued)</u>

2

3

**Page(s)**

4

*Microsoft Corp. v. Silver Star Micro, Inc.*,
    2008 WL 115006 (N.D. Ga. Jan. 9, 2008) .......................................24

5

6

*New Kids on the Block v. News Am. Pub., Inc.*,
    971 F.2d 302 (9th Cir. 1992) ..................................................26

7

8

*Nexon Am., Inc. v. S.H.*,
    2011 WL 13217951 (C.D. Cal. Dec. 13, 2011) ........................14, 15, 19, 20, 23

9

10

*Parity Networks, LLC v. Moxa Inc.*,
    2020 WL 6064636 (C.D. Cal. Sept. 11, 2020)............................11, 13

11

12

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ..................................................16

13

14

*Petrella v. Metro-Goldwyn-Mayer*,
    572 U.S. 663 (2014) ..........................................................26

15

*Playboy Enters., Inc. v. Russ Hardenburgh, Inc.*,
    982 F. Supp. 503 (N.D. Ohio 1997) .................................16

16

17

*Sony Music Ent. Inc. v. Does 1-40*,
    326 F. Supp. 2d 556 (S.D.N.Y. 2004).................................27

18

19

*Symbria, Inc. v. Callen*,
    2022 WL 60530 (N.D. Ill. Jan. 6, 2022) .....................................11, 12

20

21

*Universal City Studios, Inc. v. Corley*,
    273 F.3d 429 (2d Cir. 2001) .........................................22, 23

22

23

*Warner Chappell Music, Inc. v. Nealy*,
    601 U.S. 366 (2024) ........................................................26, 27

24

25

*Yuga Labs, Inc. v. Ripps*,
    144 F.4th 1137 (9th Cir. 2025)..........................................25

## STATUTES

26

27

17 U.S.C.
    § 106 ........................................................................14

28

    § 1201 ......................................................................8, 27

Mitchell
Silberberg &
Knupp LLP

21325317.1

5

# TABLE OF AUTHORITIES
<u>(continued)</u>

<u>Page(s)</u>

§ 1201(a) ................................................................................................24
§ 1201(a)(2) ...............................................................................22, 23, 24

## OTHER AUTHORITIES

Fed. R. Civ. P.
8 .......................................................................................................11, 13
8(a)(2) ...............................................................................................11
9 ............................................................................................................13
9(b) .......................................................................................................13

Mitchell
Silberberg &
Knupp LLP

21325317.1

OPPOSITION TO DEFENDANT ZIMMER'S MOTION TO DISMISS

# **INTRODUCTION**[1]

Defendant Josiah Zimmer's Motion to Dismiss ("Mot.") should be denied in its entirety. Zimmer's scattershot of unsupported, cursory assertions ignores the detailed factual allegations of Plaintiff Blizzard Entertainment, Inc.'s ("Blizzard") well-pleaded Complaint and misconstrues established law.

Zimmer does not contest the most basic fact that is the fundamental premise of this case: Turtle WoW is an enterprise engaged in the development, operation, and promotion of a network of unauthorized emulated *World of Warcraft* ("WoW") servers built entirely on massive copyright and trademark infringement, circumvention software, and systemic EULA violations. Zimmer's only substantive argument is that because he was one of several key participants in the enterprise, Blizzard engaged in improper "group pleading." That argument is unsupported by the law or the allegations of the Complaint. Blizzard's Complaint alleged, in detail, the structure of the Turtle WoW enterprise, each participant's individual role within it (including Zimmer's), and how each of the Defendants (including Zimmer) engaged in a coordinated effort to violate Blizzard's rights for their own benefit. Zimmer attempts to re-characterize his conduct as mere "non-commercial online commentary" (Mot. at 8, 14, 18), but Blizzard expressly alleges the opposite: Zimmer is a core member of the Turtle WoW enterprise who serves as Turtle WoW's spokesperson and Lead of Marketing and in that role exhorts users to download the infringing client, promotes the enterprise, and provides ongoing community and technical support. That is actionable conduct—not protected speech.

Zimmer is not only jointly and severally liable with his co-defendants for the unlawful activities of the enterprise as a whole; he is also independently liable for his *personal* conduct in contributing to and facilitating direct, contributory, and vicarious copyright infringement, trafficking in circumvention technology in

---

[1] Unless otherwise noted, citations and internal quotation marks are omitted.

Mitchell Silberberg & Knupp LLP

21325317.1

**OPPOSITION TO DEFENDANT ZIMMER'S MOTION TO DISMISS**

violation of 17 U.S.C. § 1201, intentional interference with Blizzard's EULA, and misuse of Blizzard's trademarks in violation of the Lanham Act.

## I.    SUMMARY OF ALLEGATIONS

**Blizzard and *World of Warcraft.*** Blizzard is a video game developer and the owner of all rights in the popular video game *World of Warcraft* ("WoW"). Compl. ¶ 1. WoW is an online, multiplayer role-playing game where players together explore and engage in adventures across a massive fantasy world. *Id.* ¶¶ 1, 36.

To play WoW, players must install on their computers a substantial set of software and media files known as the "client." Additionally, they must create a password-protected account and connect to one of Blizzard's remote WoW servers. *Id.* ¶¶ 38(a)-(b). These servers connect players to each other and generate the living virtual world in which the game takes place—that is, the "real-time experience of traveling through different worlds, hearing their sounds, viewing their structures, encountering their inhabitants and monsters, and encountering other players." *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 942-43 (9th Cir. 2010).

Blizzard employs contractual and technical measures to ensure that members of the public do not unlawfully copy WoW or play WoW on unlicensed private (or "emulated") servers. Compl. ¶¶ 42-46, 48-51. When installing the WoW client and creating a WoW account, all players must affirmatively assent to Blizzard's End User License Agreement ("EULA"), which prohibits users from "facilitat[ing], creat[ing] or maintain[ing] any … connection to any unauthorized server that emulates, or attempts to emulate, the Platform… ." *Id.* ¶ 45. The WoW client also includes technical measures that prevent it from being used on servers other than the official Blizzard WoW servers. *Id.* ¶ 42. Thus, to play WoW on any server other than Blizzard's official servers, these protocols must be disabled or circumvented. *Id.* ¶¶ 42, 48-50.

**Zimmer and Turtle WoW.** The defendants in this action collectively own, operate, maintain, and market a network of unauthorized WoW "emulated" servers known as "Turtle WoW." *Id.* ¶¶ 4-5, 19, 52. Each of the defendants plays a particular role in the operation, maintenance, growth, and monetization of Turtle WoW. *Id.* ¶¶ 52-55. Zimmer (a/k/a Akalix) is a key player in the Turtle WoW enterprise: he is the "Lead of Marketing" for Turtle WoW, its head of "Public Relations," manager of the Turtle WoW online community, spokesperson for Turtle WoW, and the person responsible for Turtle WoW's growth and popularity. *Id.* ¶ 24. Zimmer communicates and works together with the other defendants (who include coders, system administrators, and software developers) to ensure that Turtle WoW functions properly, remains appealing to its existing and potential customers, and is profitable for all involved. *Id.* ¶ 33.

The primary purpose of Turtle WoW is to profit from the unauthorized exploitation and use of WoW by enabling members of the public to play the game without paying monthly subscription fees, creating a WoW account, observing Blizzard's rules of conduct, or obtaining a license from Blizzard. *Id.* ¶¶ 5, 19, 56. To onboard users, Turtle WoW operates a professional-looking website, formerly located at www.turtle-wow.org. *Id.* ¶ 7. The Turtle WoW Website promotes Turtle WoW as offering both WoW itself and a "fan-made expansion story for World of Warcraft Vanilla" called "Mysteries of Azeroth." *Id.* ¶¶ 58-59. The Turtle WoW Website is filled with artwork and images from WoW, videos of WoW, and dozens of pages promoting the version of WoW it offers. *Id.* ¶¶ 61-62. The Turtle WoW Website also includes a community "forum" for players to receive customer support and technical support. *Id.* ¶ 61.

The Turtle WoW Website features a large "DOWNLOAD" button that, when clicked, instantly downloads to a user's computer the Turtle WoW "launcher." *Id.* ¶¶ 63-66. When executed, the launcher downloads and installs to the user's computer a ***complete copy*** of Blizzard's WoW software client, with

certain modifications, including alterations that disable or circumvent the technical measures that prevent the WoW client from connecting to and being played on unauthorized servers, as well as additional content derived from WoW (the "Turtle WoW Client"). *Id.* ¶¶ 66-72. Turtle WoW also has been developing and promoting a project it calls "Turtle WoW 2.0"—a complete re-make of Blizzard's WoW client in a new game engine. *Id.* ¶¶ 9, 60.

In his role as "Lead of Marketing," Zimmer (on behalf of the Turtle WoW enterprise) has extensively promoted Turtle WoW and exhorted and encouraged members of the public to download the infringing Turtle WoW Client and use it to connect to the Turtle WoW servers. *Id.* ¶¶ 24, 60. These promotional activities have been increasingly aggressive and include posts and advertisements via social media networks such as X, Discord, YouTube, Instagram, Reddit, and others. *Id.* ¶ 60. These social media posts are filled with unlicensed, infringing images, videos, and artwork from WoW. These efforts have been successful, as the number of players of Turtle WoW has been growing each month. *Id.* ¶ 56.

**Procedural History.** On August 29, 2025, Blizzard filed this lawsuit against various individuals and entities that it identified as being primarily responsible for the business and technical operations of Turtle WoW, including Zimmer. In its Complaint, Blizzard asserted nine causes of action: direct and secondary copyright infringement (Count I-IV), trafficking in circumvention technology (Count V), intentional interference with contract (Count VI), false designation of origin (Count VII), and violation of the RICO statute (Counts VIII and IX). On November 13, 2025, the parties agreed to dismissal of the RICO claims without prejudice in exchange for Zimmer's agreement to personal jurisdiction and venue. Dkt. 32, 33. Zimmer now moves to dismiss all of the remaining claims against him.

## II.    BLIZZARD DOES NOT RELY ON IMPROPER "GROUP PLEADING."

Rule 8 requires a "short and plain statement" of the plaintiff's claims.  Fed. R. Civ. P. 8(a)(2).  To explain *concisely* how a large, complex network of individuals together carry out multiple, intertwined courses of conduct, a plaintiff is permitted to make shorthand reference to conduct carried out by all "defendants" (working together), and/or to defined sub-groupings of defendants.  *See, e.g.*, *ConsumerDirect, Inc. v. Pentius, LLC*, 2022 WL 1585702, at *5-6 (C.D. Cal. Apr. 4, 2022); *Symbria, Inc. v. Callen,* 2022 WL 60530, at *10 (N.D. Ill. Jan. 6, 2022) ("although Plaintiffs have not detailed each Defendant's specific misconduct, Plaintiffs have pled that the entities are interrelated through common management and employees").  This shorthand, in service of Rule 8-*required* brevity and clarity, is permissible so long as "group pleading is limited to defendants who are similarly situated," *Parity Networks, LLC v. Moxa Inc.*, 2020 WL 6064636, at *3 (C.D. Cal. Sept. 11, 2020), and "it can be reasonably inferred that" allegations made against all defendants are also made "against each individual defendant[.]"  *Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*, 2021 WL 9763371, at *5 (N.D. Cal. Feb. 8, 2021), *opinion vacated in part on reconsideration*, 2021 WL 11714935 (N.D. Cal. Dec. 7, 2021); *see also In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1059 (S.D. Cal. 2017) ("some level of group pleading is permissible" so long as "the Court is able to discern that these groups, and their actions, include the [individual defendants]").  Additionally, where, as here, a complaint "contains details about the structure and content" of a complex enterprise along with allegations about the role of each defendant therein, "it would be a meaningless exercise to force [a plaintiff] to re-allege … that [defendants] were individually involved in" any more specific activity "when the Court can already see that."  *Packaged Seafood*, 242 F. Supp. 3d at 1059.  Thus, "group pleading does not violate Fed. R. Civ. P. 8 so long as the complaint provides

Mitchell Silberberg & Knupp LLP

21325317.1

OPPOSITION TO DEFENDANT ZIMMER'S MOTION TO DISMISS

1    sufficient detail to put the defendants on notice of the claims." *Symbria*, 2022 WL
2    60530, at *10.

3         Zimmer does not claim, and cannot possibly claim, that he lacks notice of
4    the claims against him or cannot ascertain from the Complaint what alleged
5    wrongdoing he is alleged to have participated in.  To the contrary, Blizzard plainly
6    alleged that each Defendant individually engaged in various, specific activities
7    related to developing, updating, marketing, distributing, selling, and supporting the
8    Turtle WoW Client and Turtle WoW Servers, and each did so "collectively in
9    furtherance of a single goal:  namely, to ensure, encourage, enable, or otherwise
10   facilitate the widespread distribution and use of Turtle WoW for their own
11   financial benefit."  Compl. ¶ 55.  Thus, when the Complaint refers to
12   "Defendants," it plainly includes Zimmer as among those individuals who engaged
13   in or participated in the infringing activities.  *See Adobe Sys. Inc. v. Blue Source*
14   *Grp., Inc.*, 125 F. Supp. 3d 945, 965 (N.D. Cal. 2015) (rejecting a group-pleading
15   challenge where, although the complaint asserted some claims against
16   "'Defendants' generally, … [it] define[d] the term 'Defendants' to be 'inclusive' of
17   [the moving defendant]," and therefore "provide[d] sufficient notice … as to the
18   nature of the claims asserted," including "what conduct is at issue").[2]

19        Moreover, Zimmer is wrong when he claims that Blizzard failed to
20   "distinguish[] Zimmer's role from that of any other defendant."  Mot. at 13.
21   Zimmer's specific role in the enterprise is clearly defined:  he is the "Lead of
22   Marketing," "head of 'Public Relations,'" and "manager of the Turtle WoW online
23   community"—and in this role he "promoted the Turtle WoW Website and
24   exhorted and encouraged members of the public … to download the Turtle WoW

25

26   [2] As Zimmer's own cited authority confirms, group pleading is permissible where, as here, the Complaint defines "Defendants" to include a particular defendant and
27   separately pleads that individual's role.  *See Adobe Sys.*, 125 F. Supp. 3d at 964-66. Zimmer's reliance on *Adobe* is misplaced; that case actually held that allegations
28   directed at "defendants" collectively were sufficient to place the moving defendant on notice of the claims against it.

Mitchell
Silberberg &
Knupp LLP
21325317.1

**OPPOSITION TO DEFENDANT ZIMMER'S MOTION TO DISMISS**

Client and use it to connect to and access the Turtle WoW Servers" and "acted as the public face of Turtle WoW and frequently speaks on behalf of Turtle WoW." Compl. ¶ 24; *see also id.* ¶ 33 ("While some of Defendants have worked behind the scenes, and others (***such as Zimmer*** and Savko) have a public-facing presence, all of them communicate and work together to ensure that Turtle WoW functions properly, remains appealing to its existing and potential customers, and is profitable for all involved." (emphasis added)).  Courts within this Circuit consistently confirm that allegations similar to, if not far less detailed than, those here are sufficient to give notice.  *See Parity Networks*, 2020 WL 6064636, at *3 (permissible group pleading put defendants on notice of each defendant's general role in the conduct with allegation one entity was the "sales arm" of the other); *Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.*, 793 F. Supp. 2d 1138, 1145-46 (C.D. Cal. 2011) (same where the complaint also contained "individualized allegations"); *ConsumerDirect*, 2022 WL 1585702, at *5-6 (allegations properly "delineate different roles for the different defendants").  Defendants cannot claim any genuine confusion or lack of notice regarding what conduct allegedly caused the harm Plaintiff now claims.[3]

## III.   BLIZZARD HAS SUFFICIENTLY ALLEGED EACH OF ITS CLAIMS AGAINST ZIMMER.

Although Blizzard's Complaint is detailed, cogent, and clearly lays out the factual basis of each of the claims against him, Zimmer has purported to attack ***each and every one*** of Blizzard's claims.  Zimmer's threadbare arguments ignore both the law and Blizzard's factual allegations.

---

[3] Zimmer cites several securities ***fraud*** cases for the proposition that "a complaint is deficient under Fed. R. Civ. P. 9(b) when it relies on 'shotgun' or 'puzzle' pleading."  Mot. at 10.  But Blizzard's Complaint is governed by the ordinary "notice pleading" standard of ***Rule 8***—not the heightened pleading standard of Rule 9, which requires that "a party must state with particularity the circumstances constituting ***fraud or mistake*.*"  Fed. R. Civ. P. 9(b).

**A.   Blizzard Has Sufficiently Alleged Its Claims for Direct, Contributory, and Vicarious Copyright Infringement.**

"Copyright infringement is proven by showing (1) ownership of the works infringed, and (2) that a defendant violated at least one exclusive right under 17 U.S.C. § 106." *Nexon Am., Inc. v. S.H.*, 2011 WL 13217951, at *4 (C.D. Cal. Dec. 13, 2011). "The Copyright Act also recognizes 'secondary' liability for those who knowingly encourage, induce, or facilitate copyright infringement." *Id.* (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 919 (2005)).

Zimmer does not dispute that Blizzard has sufficiently alleged its ownership of the copyright in WoW, including the WoW Client software, the audiovisual assets contained within the WoW Client, and the dynamic virtual world created when the WoW Client interacts with a remote multiplayer server. Compl. ¶¶ 18, 85. Instead, Zimmer claims, in cursory fashion, that Blizzard's allegations are insufficient to establish that he engaged in, participated in, or otherwise can be held jointly and severally liable for the undisputed copyright infringement, contributory infringement (or inducing infringement), or vicarious infringement committed by the Turtle WoW enterprise. Each of his arguments is without merit.

**1.   Zimmer Directly Participated in the Reproduction and Distribution of the Turtle WoW Client.**

It is well-established that "all parties who unite to produce counterfeit copies of copyrighted material are liable for damages." *Celestial Arts, Inc. v. Neyler Color-Lith Co.*, 339 F. Supp. 1018, 1019 (E.D. Wis. 1971); *see also Luft v. Crown Publishers, Inc.*, 772 F.Supp. 1378, 1379 (S.D.N.Y. 1991) ("All participants of a copyright infringement are jointly and severally liable[,]" including "persons and corporations who participate in, exercise control over, or benefit from the infringement"); *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1121 (C.D. Cal. 2009) (holding that allegations that individual defendants "personally participated and encouraged the sales of allegedly infringing products"

were sufficient to establish that they were "the moving force behind the infringing activity").

Blizzard alleges that Zimmer engaged in or participated in acts of direct infringement in at least three ways:

**First,** Zimmer participated in the creation and development of the infringing Turtle WoW Client, thereby violating Blizzard's exclusive adaptation right. Compl. ¶¶ 58-59, 71-72, 84-87; *see Nexon*, 2011 WL 13217951, at *4 (plaintiff's adaptation right was violated where "Defendant modified and altered the MapleStory EXE file contained within the MapleStory client").

**Second,** Zimmer participated in the distribution of the infringing Turtle WoW Client, which was made available from the Turtle WoW Website and downloaded by thousands of U.S. users. Compl. ¶¶ 61-72, 84-87; *see Nexon*, 2011 WL 13217951, at *4 ("Defendant distributed the infringing RydahMS EXE" and "thus infringed Plaintiff's exclusive right of distribution of its copyrighted work"); *Davidson & Assocs., Inc. v. Internet Gateway, Inc.*, 334 F. Supp. 2d 1164, 1174 (E.D. Mo. 2004) (copyright infringement liability where "Defendants distributed the BNS utility program, which allowed Blizzard games to connect to bnetd servers."), *aff'd sub nom. Davidson & Assocs. v. Jung*, 422 F.3d 630 (8th Cir. 2005).

**Third,** Zimmer created and/or participated in the creation of Turtle WoW marketing content, including the Turtle WoW Website and Turtle WoW social media posts, which are filled with infringing artwork, screen captures, and videos. Compl. ¶¶ 60, 62, 86.[4]

---

[4] Although the allegations concerning Defendants' collective and coordinated activities are more than sufficient to state a claim against Zimmer, the allegations also plausibly allege that Zimmer **personally** engaged in **his own** infringing activities, such as (1) downloading the Turtle WoW client and installing it to his personal computer (which would necessarily have occurred in order for him to play Turtle WoW) (*see MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518-19 (9th Cir. 1993)), and (2) creating marketing and promotional material containing unauthorized WoW artwork and content. *See, e.g.*, https://josiahz.me/#work ("I've

**OPPOSITION TO DEFENDANT ZIMMER'S MOTION TO DISMISS**

Zimmer's claim that he did not engage in a "volitional" act (Mot. at 13-14) misunderstands the law.  An act of infringement is "volitional" as long as the defendant "causes in some meaningful way an infringement."  *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2004).  Zimmer is not a passive transmitter or conduit through which infringing content passes, akin to an Internet service provider or the owner of a photocopy machine.  *Id.* at 549-51.  He engaged in active, volitional conduct when he directly and knowingly participated in an enterprise entirely built on copyright infringement.  *See, e.g.*, *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 96 (2d Cir. 2016) (rejecting argument by file-sharing network that its copying of infringing album covers to its system was not a volitional act because "company's LockerSync system was designed to retrieve one aspect of a copyrighted work (the album art) whenever a user uploaded another aspect of a copyrighted work (the song)"); *Playboy Enters., Inc. v. Russ Hardenburgh, Inc.*, 982 F. Supp. 503, 512-13 (N.D. Ohio 1997) (BBS operator's encouragement of infringing photo uploads constituted sufficient volitional activity to transform him from a mere "passive" provider of space where infringement occurred so as to warrant direct and contributory copyright liability).

## 2.    Zimmer Encouraged and Induced Turtle WoW Players to Infringe Blizzard's Copyrights.

To be liable under a contributory or "inducement" theory of liability, Blizzard need only allege that Zimmer "(1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement."  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007).  Under an "inducement" theory, Zimmer will be liable if he participated in distributing a service or product "with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster

---

done a great deal of marketing for a private gaming network … [which] include[s] management of the brand across YouTube, Discord, Reddit, Facebook, Instagram, Bluesky, X/Twitter, and TikTok for over two years.").

Mitchell Silberberg & Knupp LLP

21325317.1

**OPPOSITION TO DEFENDANT ZIMMER'S MOTION TO DISMISS**

infringement." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013).  "[M]aterial contribution and inducement are the two doctrinal subsets of the contributory infringement theory of liability."  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1227 (C.D. Cal. 2007). Blizzard sufficiently alleged the elements of both species of claims.

**Direct Infringement.**  Blizzard has sufficiently alleged (and Zimmer does not dispute) that when members of the public visit the Turtle WoW Website, download the Turtle WoW Client onto their computers, install the Turtle WoW Client onto their computer hard drives, and then connect the Turtle WoW Client to Turtle WoW's unauthorized servers, they violate Blizzard's reproduction and adaptation rights.  Compl. ¶¶ 57-72, 93, 101; *see Fung*, 710 F.3d at 1034 ("Both uploading and downloading copyrighted material are infringing acts.  The former violates the copyright holder's right to distribution, the latter the right to reproduction.").

**Knowledge.**  Blizzard alleged (and Zimmer does not dispute) that Zimmer had knowledge of infringing activity being undertaken by Turtle WoW players. Compl. ¶¶ 80-82, 94, 102.  In fact, Blizzard specifically alleged that ***Zimmer*** personally communicated with Turtle WoW players about the infringing nature of the Turtle WoW private servers, assuring players that Turtle WoW was "taking seriously" the possibility of being taken down due to infringement claims and was considering relocating Turtle WoW to a location without copyright laws.  *Id*. ¶ 82. Contrary to Zimmer's claim, this is not just "generalized awareness of infringement" (Mot. at 15); Zimmer had specific knowledge that ***every person*** who played Turtle WoW was engaged in acts of copyright infringement, including because it is impossible to play Turtle WoW without downloading the infringing Turtle WoW Client and connecting to the unauthorized Turtle WoW servers.

**Material Contribution and Inducement.**  Blizzard specifically alleged that Zimmer, as "Lead of Marketing," head of "Public Relations," and manager of the

Turtle WoW community, "promoted the Turtle WoW Website and exhorted and encouraged members of the public … to download the Turtle WoW Client and use it to connect to and access the Turtle WoW Servers."  Compl. ¶ 24.  Blizzard also included numerous detailed allegations about the ways in which Zimmer facilitated and provided encouragement and support for infringement, such as by "provid[ing] updates concerning the use of the Turtle WoW Client and Servers," "offer[ing] technical support to users of Turtle WoW," and "help[ing] promote Turtle WoW." *Id.* ¶ 54.  For example, Zimmer:

- "Aggressively market[s] and advertise[s] Turtle WoW in the United States, including via social media networks, such as X (@turtlewowteam), Discord (Turtle WoW Europe), YouTube (@TurtleWoWTeam), Instagram (turtlewowteam), Reddit (r/turtlewow) and others."  Compl. ¶ 60.

- "Promote[s] and enable[s] access to Turtle WoW via a dedicated Turtle WoW Website" which "provides players and potential players with information about Turtle WoW, technical instructions as to how to install and play Turtle WoW, and access to the Turtle WoW Client."  *Id.* ¶ 61.

- Maintains "a forum or message board, where Defendants and users of the Turtle WoW Servers provide technical support, announce updates to the game, recruit new staff members, promote new features, talk about the game, and trade tips on how to access and play Turtle WoW on the Turtle WoW Servers."  *Id.*

- "Provide[s] ongoing technical support via message boards contained on the Turtle WoW Website and related online communities such as Discord, X, and Reddit."  *Id.* ¶ 77.

As a result of these activities, including "Defendants' increasingly aggressive online marketing and promotional efforts," the number of people playing Turtle WoW and infringing Blizzard's copyrights has continued to grow. Compl.  ¶ 57; *see also id.* ¶¶ 94, 102.

These are exactly the types of activities that courts (including this Court) have found will give rise to liability for both inducing copyright infringement and materially contributing to copyright infringement. *See Grokster*, 545 U.S. at 937-38 ("The classic instance of inducement is by advertisement or solicitation that broadcasts a message designed to stimulate others to commit violations."); *Fung*, 710 F.3d at 1036 ("As in *Grokster*, … Fung 'communicated a clear message by responding affirmatively to requests for help in locating and playing copyrighted materials.'"); *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021-22 (9th Cir. 2001) (finding Napster contributorily liable "because it knew of the availability of infringing music files on its system, assisted users in accessing such files, and failed to block access to such files"); *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 846 (11th Cir. 1990) (party that financially promoted and encouraged the manufacture of "pirate chips" which copied plaintiffs' copyrighted computer program was liable for direct and contributory copyright infringement).

*Nexon Am., Inc. v. S.H.* is directly on point. There, as here, the defendant operated and promoted a private server for the plaintiff's video game *MapleStory*. As the court explained, "[i]t [was] undisputed that Defendant advertised [the infringing client] on the Internet, instructed potential users how to download, install and use the server and modified client, and offered extensive technical support to his customers[,]" while being "aware that his conduct and that of his customers constituted copyright infringement." 2011 WL 13217951, at *5. The court further emphasized that "Defendant specifically knew that the links he posted to the MapleStory client were to websites not affiliated with Plaintiff," and that "users were downloading infringing copies of the MapleStory client using those links." *Id.* "Indeed, Defendant, on his website, frequently discussed Plaintiff and the fact that RyhdahMS was engaged in copyright infringement and otherwise unlawful activity", and even "moved his forum and website to the Netherlands" in

an effort to "avoid U.S. law." *Id.* On those facts, the court held that the defendant's conduct—"evincing an intent to foster infringement by others and actions taken to contribute directly to such infringement"—"constitute[d] both 'material contribution' and 'inducement' to infringe Plaintiff's copyright." *Id.*[5]; *see also Blizzard Ent., Inc. v. Bossland GmbH*, 2017 WL 7806600, at *5 (C.D. Cal. Mar. 31, 2017) (allegations that defendant "encourage[d] and induce[d]" third parties "to fraudulently obtain access to the Blizzard Games" and "engage in the unauthorized reproduction of the Blizzard Games", including by "advertis[ing] these uses by offering advice on its online forums on how to avoid Blizzard's detection", sufficiently stated inducement and contributory infringement). These are exactly the types of activities that Zimmer is alleged to have engaged in with respect to Turtle WoW.

### 3.  Zimmer Received a Direct Financial Benefit from and Had the Right and Ability to Control Copyright Infringement.

"[O]ne may be vicariously liable if he has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262 (9th Cir. 1996) (quoting *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)). Blizzard has sufficiently alleged both elements as to Zimmer.

**Direct Financial Benefit.** Blizzard has alleged that Defendants, including Zimmer, profit directly from their infringing activity and that of their users, including by soliciting monetary "donations." Compl. ¶ 4 ("Defendants have found a lucrative way to exploit and profit from the popularity of the WoW game

---

[5] Zimmer attempts to distinguish *Nexon* by asserting that he did not ***personally*** develop the infringing Turtle WoW Client or build the Turtle WoW servers. That distinction fails. In *Nexon*, the court imposed inducement and contributory liability based on the defendant's knowing promotion, facilitation, and support of infringement—including advertising the infringing client, instructing users how to download and use it, and providing extensive technical and community support— conduct the court held sufficient to establish both "material contribution" and "inducement." 2011 WL 13217951, at *5-6. Zimmer is alleged to have engaged in the same types of conduct here.

Mitchell
Silberberg &
Knupp LLP

21325317.1

**OPPOSITION TO DEFENDANT ZIMMER'S MOTION TO DISMISS**

experience"); *id.* ¶ 55 ("All of the Defendants work collectively in furtherance of a single goal: namely, to ensure, encourage, enable, or otherwise facilitate the widespread distribution and use of Turtle WoW for their own financial benefit."); *id.* ¶ 78 ("Defendants profit from their unlawful activities by encouraging users to make monetary 'donations' to fund Turtle WoW's continued operation… Defendants have made hundreds of thousands, if not millions, of dollars from user 'donations'"); *id.* ¶ 111 ("Defendants derive a direct financial benefit from this infringement, including, but not limited to, money received from 'donations' by users of Turtle WoW.").

**Right and Ability to Control.** Defendants, including Zimmer, have the "right and ability" to supervise or control infringing activities engaged in by their users. Defendants could easily and completely stop all infringement simply by disabling their infringing Turtle WoW servers, Turtle WoW Website, and/or all links to the infringing Turtle WoW Client. Compl. ¶ 75 ("[P]layers need only possess a Turtle WoW account and the Turtle WoW Client, which are free to obtain and entirely within the control of Defendants."); *see Napster*, 239 F.3d at 1023 ("The ability to block infringers' access to a particular environment for any reason whatsoever is evidence of the right and ability to supervise."). Moreover, the Turtle WoW servers are password-protected, and Turtle WoW requires that every player create an account and agree to its Terms of Service. Compl. ¶¶ 69, 81. Thus, Defendants have total control over Turtle WoW's online environment and could restrict or terminate access at any time. *See Fung*, 710 F.3d at 1046 ("Fung unquestionably had the ability to locate infringing material and terminate users' access."); *Fonovisa*, 76 F.3d at 262-64 (defendant had the right to terminate third-party vendors' right to participate in the flea market).

Finally, Defendants—and Zimmer in particular—could significantly curtail or stop the massive infringement of Blizzard's intellectual property rights by ceasing to aggressively advertise and promote Turtle WoW; eliminating customer

support; and closing all social media platforms that it uses to build, service, and grow the Turtle WoW player community.  *Fung*, 710 F.3d at 1046 ("Fung's ability to control infringing activity on his websites went well beyond merely locating and terminating users' access to infringing material.  As noted, there is overwhelming evidence that Fung engaged in culpable, inducing activity…").  In Zimmer's ***own*** words, his ***personal*** efforts resulted in "[g]rowth of a Discord server from 14,000 to over 100,000 members[,]" "[m]ore than 1.5 million organic YouTube views[,]" and "[q]uadrupling (or better) engagement on all social platforms." https://josiahz.me/#work.

### B.    Blizzard Has Sufficiently Alleged Its Claims for Trafficking in Circumvention Devices.

Section 1201(a)(2) of the DMCA prohibits trafficking in technology that (i) is primarily designed to circumvent access controls, (ii) has only limited commercially significant purpose other than circumvention, or (iii) is marketed for use in circumventing technological measures that control access to copyrighted works.  17 U.S.C. § 1201(a)(2); *see also Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 440 (2d Cir. 2001).  Blizzard sufficiently alleged that Defendants' creation and distribution of Turtle WoW, including the Turtle WoW Client, constitutes trafficking in circumvention technology.  Specifically:

- Blizzard incorporated technological measures into its WoW Client and WoW servers that effectively control access to the WoW game and its dynamic virtual world.  Compl. ¶¶ 48-51.  These technological measures include both software code that prevents Blizzard's WoW Client from connecting to unauthorized servers, as well as an authentication protocol built into the WoW servers that ensures that the WoW Client is authentic and that the user has an active, fully-paid account.  *Id.*; *see Davidson & Assocs.*, 422 F.3d at 640-41 ("secret handshake" that restricted access to the plaintiff's online game server was an effective access control measure); *MDY Indus.*, 629 F.3d at 954 (WoW

**OPPOSITION TO DEFENDANT ZIMMER'S MOTION TO DISMISS**

1  authentication protocol "effectively controls access to WoW's dynamic non-literal

2  elements.").

3      •      The primary purpose of the Turtle WoW Client is to "avoid, bypass,

4  remove, or deactivate" the security measures that are present in Blizzard's official

5  WoW Client and thereby allow the Client to access and connect to Turtle WoW's

6  unauthorized emulated servers.  Compl. ¶¶ 70, 71, 118.

7      Courts consistently hold that a modified software client constitutes a

8  circumvention "technology," "product," or "component" under § 1201(a)(2)

9  because it is the means by which access-control measures are bypassed, and

10  distributing such a client—even in full-game form—is "trafficking" under the

11  DMCA.  *See, e.g.*, *Nexon*, 2011 WL 13217951, at *6 ("As a result of his admitted

12  modification of the MapleStory EXE (to create the Rydah EXE), and his

13  subsequent distribution of the RydahMS EXE, Defendant is liable under this

14  provision.  The primary—indeed, the only—purpose of the RydahMS EXE is to

15  circumvent the authentication mechanisms of the MapleStory EXE that would

16  normally function to prohibit the playing of MapleStory on an unauthorized

17  server."); *Davidson & Assocs.*, 422 F.3d at 640-41 (software enabling unauthorized

18  server access circumvents access controls and violates § 1201(a)(2)); *Corley*, 273

19  F.3d at 440 (software decryption tools qualify as "technology" under § 1201(a)(2)).

20      Whether Zimmer ***personally*** developed or coded the Turtle WoW Client is

21  irrelevant.  Liability for trafficking under Section 1201(a)(2) is not limited to the

22  person or entity that ***created*** the circumvention device, but to any person who

23  "offered to the public" the device or who participated in, encouraged, assisted, or

24  otherwise facilitated the distribution of that device.  *See Comcast of Illinois X, LLC*

25  *v. Hightech Elecs., Inc.*, 2004 WL 1718522, at *7 (N.D. Ill. July 29, 2004)

26  (circumvention claim against defendants who were "allegedly assisting sellers of

27  illegal cable equipment in distributing such equipment.").  Additionally, courts

28  analyze "contributory and vicarious liability under the DMCA in the same manner

as determining personal liability for violations of the Copyright Act." *Microsoft Corp. v. Silver Star Micro, Inc.*, 2008 WL 115006, at *8 n.8 (N.D. Ga. Jan. 9, 2008); *see also In re Dealer Mgmt. Sys. Antitrust Litig.*, 2019 WL 4166864, at *13-14 (N.D. Ill. Sept. 3, 2019) (secondary liability principles apply to section 1201(a)).  Thus, at minimum, Zimmer is liable for violating the anti-trafficking provisions of the DMCA for the same reasons he is liable for inducing, contributing to, or failing to exercise the right and ability to control, infringement of Blizzard's copyrights.[6]

## C.   Blizzard Has Sufficiently Alleged Its Claim for Intentional Interference with Blizzard's EULA.

Blizzard has alleged all of the elements of a claim for intentional interference:  (1) Blizzard's EULA is a valid contract between Blizzard and its players (Compl. ¶¶ 43-47, 130-131); (2) Defendants (including Zimmer) are aware of the EULA (*id.* ¶¶ 81, 132); (3) Defendants (including Zimmer) engaged in intentional acts designed to (and which did) induce a breach of the EULA (*id.* ¶¶ 24, 58-60, 76-77, 81, 133); and (4) the breach caused damage to Blizzard (*id.* ¶ 79). *See Blizzard Ent. Inc. v. Ceiling Fan Software LLC*, 28 F. Supp. 3d 1006, 1016 (C.D. Cal. 2013) (company that sold WoW "bots" engaged in intentional interference with Blizzard's EULA).  Blizzard further alleged, specifically, that every user who downloads the Turtle WoW Client and connects to Turtle WoW's unauthorized servers necessarily breaches the EULA, because such conduct is expressly prohibited by its terms.  Compl. ¶¶ 45-46, 79.  Zimmer's claim that "Blizzard identifies no specific contract or counterparty that he knew about; alleges no communication by Zimmer with any particular Blizzard customer; pleads no intentional act aimed at causing any contract to be breached; and fails to allege any

---

[6] Section 1201(a)(2) also imposes liability on those who "market" a device "for use in circumventing a technological measure that effectively controls access to a work protected under this title."  Zimmer marketed Turtle WoW and encouraged members of the public "to download the Turtle WoW Client and use it to connect to and access the Turtle WoW Servers."  Compl. ¶ 24.

actual breach resulting from his conduct" (Mot. at 19) is bizarre.  Blizzard has alleged *all* of these facts, and specifically alleged that Zimmer "exhorted and encouraged members of the public… to download the Turtle WoW Client and use it to connect to and access the Turtle WoW servers"—conduct directly prohibited by the EULA.

These allegations also plausibly allege intentional interference because Zimmer's promotional activities and instructions have no purpose other than enabling players to access and play WoW on unauthorized Servers—a result that *necessarily* requires breaching the EULA.  Compl. ¶¶ 45-46; *see Ceiling Fan*, 28 F. Supp. 3d at 1016 (finding intentional interference where defendants went beyond designing and selling software and "continued licensing", "educating their customers", and provided ongoing support to facilitate EULA breaches).

## D. Blizzard Has Sufficiently Alleged Its Claim for Trademark Infringement.

Blizzard plainly has alleged, and even included screen captures demonstrating, that Turtle WoW engaged in extensive *commercial* use of Blizzard's registered trademarks—including the BLIZZARD, WORLD OF WARCRAFT, and WOW names and logos—on the Turtle WoW Website and social media accounts.  Compl. ¶¶ 62-68, 137-143.  Such use suggests to members of the public that Turtle WoW and its content are licensed, authorized, sponsored, or otherwise endorsed by Blizzard.  *Id.* ¶¶ 141-143.  At the pleading stage, Blizzard need only allege facts that plausibly support a likelihood of confusion, which Blizzard has done by alleging unauthorized use of identical marks in a directly competitive context.

Zimmer's vague claim of "nominative" fair use (Mot. at 20) is without merit.  None of the alleged uses qualify for that defense, since none is used merely to describe *Blizzard's* game.  Instead, Turtle WoW is using *Blizzard's* trademarks to identify its *own* infringing product.  Compl. ¶¶ 68, 141-42; *see Yuga Labs, Inc.*

Mitchell Silberberg & Knupp LLP

21325317.1

25

1    *v. Ripps*, 144 F.4th 1137, 1165 (9th Cir. 2025) ("Defendants did not use the BAYC

2    Marks merely to reference Yuga's NFTs.  They incorporated some of the marks

3    into their own NFTs and used others in marketing their NFTs, thereby

4    'implicat[ing] the source-identification function that is the purpose of

5    trademark.'").  The defense also is not available because Turtle WoW plainly took

6    more of Blizzard's marks than "is reasonably necessary to identify the product or

7    service" and used the marks in a manner that "suggest[s] sponsorship or

8    endorsement by the trademark holder."  *New Kids on the Block v. News Am. Pub.,*

9    *Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).  In any event, nominative fair use is an

10   affirmative defense that cannot be resolved on a motion to dismiss unless the

11   complaint itself establishes the defense, which it plainly does not.

12   **IV.    ZIMMER'S TIMELINESS AND FIRST AMENDMENT**

13   **ARGUMENTS ARE FRIVOLOUS.**

14          In a final effort to manufacture nonexistent defects in Blizzard's Complaint,

15   Zimmer asserts strained arguments about the statute of limitations, laches, and the

16   First Amendment.  None can withstand scrutiny.

17          ***First***, Zimmer argues that Blizzard's copyright claims are time-barred under

18   the Copyright Act's statute of limitations or the doctrine of laches.  Mot. at 20-21.

19   But Zimmer's own authority—*Petrella v. Metro-Goldwyn-Mayer*, 572 U.S. 663,

20   671-72 (2014)—confirms that laches is ***not*** a defense to copyright infringement.

21   Nor are the claims barred by the statute of limitations, because Zimmer's conduct

22   occurred within the last three years and is continuing to the present.  Because the

23   Complaint alleges ongoing infringement well within the limitations period, no

24   tolling or accrual doctrine is even implicated.  As for Zimmer's claim that

25   Blizzard's ***damages*** should be limited or foreclosed as a result of purported delay,

26   that argument is foreclosed by *Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366

27   (2024), which held that "[t]here is no time limit on monetary recovery.  So a

28

copyright owner possessing a timely claim for infringement is entitled to damages, no matter when the infringement occurred." *Id.* at 372.

**Second**, Zimmer claims, without **any** support, that his commercial marketing and customer support activities constitute protected First Amendment activity. Mot. at 21. However, Zimmer never explains how any of his alleged conduct (*i.e.*, advertising Turtle WoW, building Turtle WoW online communities, providing technical support, and exhorting members of the public to engage in copyright infringement and contractual breaches) could conceivably be entitled to First Amendment protection. None of this conduct is expressive in the Constitutional sense, and therefore it does not trigger First Amendment scrutiny at all. "The First Amendment … does not protect copyright infringement, and the Supreme Court, accordingly, has rejected First Amendment challenges to copyright infringement actions." *Sony Music Ent. Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 562-63 (S.D.N.Y. 2004). Nor does the First Amendment protect Zimmer's acts of trafficking in circumvention devices, trademark infringement, or contractual interference. *Green v. United States Dep't of Just.*, 111 F.4th 81, 100 (D.C. Cir. 2024) (rejecting First Amendment challenge to Section 1201); *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 159 (2023) ("'[T]he trademark law generally prevails over the First Amendment' when 'another's trademark (or a confusingly similar mark) is used without permission' as a means of 'source identification.'"); *Ceiling Fan*, 28 F. Supp. 3d at 1016 (granting summary judgment on similar intentional interference claims).

## CONCLUSION

Blizzard respectfully requests that the Court deny Zimmer's Motion. In the alternative, should the Court conclude that additional detail is required to support Blizzard's claims against Zimmer, Blizzard requests that it be granted leave to amend the Complaint.

DATED: January 12, 2026

MARC E. MAYER
THERESA B. BOWMAN
MITCHELL SILBERBERG & KNUPP LLP


By: */s/ Marc E. Mayer*
    Marc E. Mayer
    Attorneys for Plaintiff
    Blizzard Entertainment, Inc.

1

## <u>Certificate of Compliance-L.R.11-6.2.</u>

2        The undersigned, counsel of record for Plaintiff Blizzard Entertainment,

3 Inc., certifies that this brief contains 6,682 words, which complies with the word

4 limit of L.R. 11-6.1.

5

6 Dated: January 12, 2026                 */s/ Marc E. Mayer*
                                       Marc E. Mayer

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

21325317.1

**OPPOSITION TO DEFENDANT ZIMMER'S MOTION TO DISMISS**