1  MARC E. MAYER (SBN 190969)
    mem@msk.com
2  MITCHELL SILBERBERG & KNUPP LLP
   2049 Century Park East, 18th Floor
3  Los Angeles, CA 90067-3120
   Telephone: (310) 312-2000
4  Facsimile: (310) 312-3100

5  THERESA B. BOWMAN (admitted *pro hac vice*)
    tbb@msk.com
6  MITCHELL SILBERBERG & KNUPP LLP
   1818 N Street, NW, 7th Floor
7  Washington, DC 20036-2406
   Telephone: (202) 355-7900
8  Facsimile: (202) 355-7899

9  Attorneys for Plaintiff Blizzard
   Entertainment, Inc.

10            UNITED STATES DISTRICT COURT

11            CENTRAL DISTRICT OF CALIFORNIA

12

13  BLIZZARD ENTERTAINMENT,            CASE NO. 2:25-cv-08194-SVW (SKx)
    INC., a Delaware Corporation,
                                       [Assigned to Honorable Stephen V.
14            Plaintiff,               Wilson]

15       v.                           **MEMORANDUM OF POINTS AND
                                      AUTHORITIES OF PLAINTIFF
16  TURTLE WOW, an entity of unknown   BLIZZARD ENTERTAINMENT,
    form; AFKCRAFT LIMITED, a Hong     INC. IN OPPOSITION TO
17  Kong Company; YULIA SAVKO a/k/a    MOTION OF DEFENDANT
    JULIA SAVKO a/k/a Torta and        AFKCRAFT LIMITED TO
18  Shenna, an individual; ERIC MAUSER DISMISS FOR LACK OF
    a/k/a Shagu and Meph1s, an individual; PERSONAL JURISDICTION AND
19  JOSIAH ZIMMER a/k/a Akalix, an     FAILURE TO STATE A CLAIM**
    individual; STEFAN KOSTOV a/k/a
20  brotalnia, an individual, JESSE    [Declaration of Marc E. Mayer and
    LAUTENBACK a/k/a Niralthas, an     (Proposed) Order filed concurrently
21  individual, COSMIN POP a/k/a xerron, herewith]
    an individual, JAMEY DIEPBRINK
22  a/k/a Jamma an individual, MAROS    Date:       February 2, 2026
    BETKO a/k/a Haaxor, an individual,  Time:       1:30 p.m.
23  MARCO KRETAS a/k/a MARCO           Location:   Courtroom 10A
    KAPTEIN a/k/a Kruxis, an individual;            350 West 1st Street
24  ALEX JULEV a/k/a PepeSmite, an                  Los Angeles, CA 90012
    individual; and DOES 1 through 10,
25  inclusive,

26            Defendants.             Filed:       August 29, 2025

27

28

Mitchell
Silberberg &
Knupp LLP

21325580.1

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................7

I.     STATEMENT OF FACTS ..........................................................................8

II.    AFKCRAFT IS SUBJECT TO THIS COURT'S PERSONAL
       JURISDICTION. ......................................................................................13

       A.     Blizzard Has Made a *Prima Facie* Case That AFKCraft Is an Alter
              Ego of, and Participated In, the Turtle WoW Enterprise...................14

       B.     AFKCraft and Turtle WoW Purposefully Directed Their Activities
              at the Forum. .......................................................................................17

              1.     Turtle WoW Engaged in Intentional Acts. ..............................17

              2.     AFKCraft and the Enterprise "Expressly Aimed" Their
                     Activities at the United States. ...............................................18

                     a.     Turtle WoW Targeted the U.S. Market..........................18

                     b.     The Enterprise Knowingly and Deliberately Targeted
                            Blizzard........................................................................20

              3.     AFKCraft Knew Harm Would Be Felt in the United States
                     and California. .........................................................................21

       C.     The Exercise of Jurisdiction Is Not Unreasonable.............................22

       D.     At Minimum, Blizzard Is Entitled to Jurisdictional Discovery. .........22

III.   AFKCRAFT'S RULE 12(b)(6) ARGUMENTS ARE FRIVOLOUS. .........23

       A.     Blizzard's Copyright, Trafficking, Intentional Interference, and
              Trademark Claims Are Sufficiently Pleaded.....................................24

       B.     Blizzard Has Sufficiently Stated Its Claims Under the RICO
              Statute.................................................................................................26

CONCLUSION................................................................................................29

OPPOSITION TO DEFENDANT AFKCRAFT LIMITED'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*3DO Co. v. Poptop Software, Inc.*,
   1998 WL 962202 (N.D. Cal. Oct. 27, 1998) .......................................................18

*Activision Publ'g, Inc. v. EngineOwning UG*,
   2023 WL 3272399 (C.D. Cal. Apr. 4, 2023) .......................................................28

*ADO Fin., AG v. McDonnell Douglas Corp.*,
   931 F. Supp. 711 (C.D. Cal. 1996) ............................................... 13, 14, 15, 16

*Adobe Sys. Inc. v. Blue Source Grp., Inc.*,
   125 F. Supp. 3d 945 (N.D. Cal. 2015) ...............................................................24

*AMA Multimedia LLC v. Sagan Ltd.*,
   2016 WL 5946051 (D. Ariz. Oct. 13, 2016) ......................................................22

*Asahi Metal Indus. Co. v. Sup.Ct.*,
   480 U.S. 102 (1987) ...........................................................................................18

*Blizzard Ent., Inc. v. Ceiling Fan Software LLC*,
   28 F. Supp. 3d 1006 (C.D. Cal. 2013) ...............................................................25

*Blizzard Entm't, Inc. v. Bossland GmbH*,
   2017 WL 412262 (C.D. Cal. Jan. 25, 2017) ...........................................13, 20, 21

*Blizzard Entm't, Inc. v. Joyfun Inc. Co.*,
   2020 WL 1972284 (C.D. Cal. Feb. 7, 2020) ...........................................13, 17, 19

*Burri L. PA v. Skurla*,
   35 F.4th 1207 (9th Cir. 2022) ..................................................................... 17, 20

*Cal Brewing Co. v. 3 Daughters Brewing LLC*,
   2016 WL 1573399 (E.D. Cal. Apr. 19, 2016) ....................................................20

*Calder v. Jones*,
   465 U.S. 783 (1984) ...........................................................................................16

*CollegeSource, Inc. v. AcademyOne, Inc.*,
   653 F.3d 1066 (9th Cir. 2011) ...........................................................................21

Mitchell
Silberberg &
Knupp LLP

21325580.1

3

**OPPOSITION TO DEFENDANT AFKCRAFT LIMITED'S MOTION TO DISMISS**

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Colt Studio, Inc. v. Badpuppy Enters.*,
   75 F. Supp. 2d 1104 (C.D. Cal. 1999)..................................................19

*CYBERsitter, LLC v. People's Republic of China*,
   805 F. Supp. 2d 958 (C.D. Cal. 2011)..................................................17

*Davidson & Assocs., Inc. v. Internet Gateway, Inc.*,
   334 F. Supp. 2d 1164 (E.D. Mo. 2004)................................................25

*DirecTV, Inc. v. Leo*,
   2010 WL 2740072 (C.D. Cal. July 8, 2010) .......................................16

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014)..............................................................27

*Flynt Distrib. Co. v. Harvey*,
   734 F.2d 1389 (9th Cir. 1984)............................................................15

*Good Job Games Bilism Yazilim Ve Pazarlama A.S. v. SayGames, LLC*,
   2021 WL 5861279 (9th Cir. Dec. 10, 2021) ......................................23

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
   328 F.3d 1122 (9th Cir. 2003) ...........................................................23

*Hendricks v. New Video Channel Am., LLC*,
   2015 WL 3616983 (C.D. Cal. June 8, 2015)......................................18

*Lang Van, Inc. v. VNG Corp.*,
   40 F.4th 1034 (9th Cir. 2022)...........................................14, 19, 20, 21

*Lavastone Cap. LLC v. Coventry First LLC*,
   2015 WL 1939711 (S.D.N.Y. Apr. 22, 2015) ...................................27

*Luft v. Crown Publishers, Inc.*,
   772 F. Supp. 1378 (S.D.N.Y. 1991) ..................................................24

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
   647 F.3d 1218 (9th Cir. 2011) ...........................................................17

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
   629 F.3d 928 (9th Cir. 2010) ...............................................................9

Mitchell Silberberg & Knupp LLP

21325580.1

4

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    243 F. Supp. 2d 1073 (C.D. Cal. 2003) .......................................................14, 19

*Mezzonen, S.A. v. Wright*,
    1999 WL 1037866 (S.D.N.Y. Nov. 16, 1999) ...................................................28

*Nexon Am., Inc. v. S.H.*,
    2011 WL 13217951 (C.D. Cal. Dec. 13, 2011) .................................................25

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) .....................................................................................26, 27

*Rio Props., Inc. v. Rio Int'l Interlink*,
    284 F.3d 1007 (9th Cir. 2002) ..........................................................................22

*Riot Games, Inc. v. Suga PTE, Ltd.*,
    638 F. Supp. 3d 1102 (C.D. Cal. 2022) .............................................................16

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) .......................................................................13, 22

*State Comp. Ins. Fund v. Capen*,
    2015 WL 13322034 (C.D. Cal. Dec. 18, 2015) .................................................27

*Symbria, Inc. v. Callen*,
    2022 WL 60530 (N.D. Ill. Jan. 6, 2022) ...........................................................24

*Television Events & Mktg., Inc. v. AMCON Distrib., Co.*,
    484 F. Supp. 2d 1124 (D. Haw. 2006) ...............................................................14

*United States v. Bondarenko*,
    2019 WL 2450923 (D. Nev. June 12, 2019) ......................................................28

*Walden v. Fiore*,
    571 U.S. 277 (2014) ...........................................................................................21

*Wolf Designs, Inc. v. DHR Co.*,
    322 F. Supp. 2d 1065 (C.D. Cal. 2004).............................................................16

Mitchell
Silberberg &
Knupp LLP

21325580.1

5

# TABLE OF AUTHORITIES
<u>(continued)</u>

<u>**Page(s)**</u>

## RULES

Fed. R. Civ. P.

    4(k) .................................................................................................... 20

    4(k)(2) .............................................................................................. 8, 13

    8(a) ..................................................................................................... 23

    12(b)(6) ........................................................................................... 8, 23

Mitchell
Silberberg &
Knupp LLP

21325580.1

**OPPOSITION TO DEFENDANT AFKCRAFT LIMITED'S MOTION TO DISMISS**

## **INTRODUCTION**

The motion ("Mot.") of Defendant AFKCraft Limited ("AFKCraft") to dismiss the Complaint of Blizzard Entertainment, Inc. ("Blizzard") **confirms** that AFKCraft is nothing more than an *alter ego* shell corporation created to conceal the identities of the individual defendants who are the real actors operating the Turtle WoW business enterprise, and to function as a pass-through for monetary transactions.  Rather than offer even the most basic explanation of its business purpose or operational structure, AFKCraft offers only silence and misdirection. AFKCraft cannot even muster a declaration, much less a shred of evidence, to demonstrate that it engages in any of the basic functions of a legitimate company. Instead, it relies on unsupported assertions that contradict the Complaint's detailed factual allegations.

Blizzard's Complaint includes detailed allegations establishing that AFKCraft serves as one of the entities through which Turtle WoW conducts and obscures its activities.  These allegations, supported by evidence, include that: AFKCraft appears on Turtle WoW's own legal page as a responsible entity; it shares an address with Turtle WoW's Kazakh proprietorship; its corporate filings do not reflect any employees or business activity, but only a sole director linked to the same location as Turtle WoW; and its purported merchandise website is functionally inoperable and exists solely to display infringing Turtle WoW content. Taken together, these facts establish that AFKCraft is a mere instrumentality of the enterprise and its separate corporate form should be disregarded for jurisdictional purposes.

Because AFKCraft is a mere alter ego of the Turtle WoW enterprise (and, more specifically, of the individuals that comprise that enterprise), and **also** is a primary participant in the alleged conduct, the U.S. contacts of the enterprise must be imputed to AFKCraft.  There is more than ample basis for personal jurisdiction. For example, Blizzard alleges, and AFKCraft does not dispute, that the Turtle

Mitchell
Silberberg &
Knupp LLP

21325580.1

7

WoW enterprise operates a comprehensive, English-language, U.S.-facing marketing campaign across numerous online platforms; distributes the infringing Turtle WoW Client to tens of thousands of users in the United States; targets the U.S. market and U.S.-based Blizzard's intellectual property, and derives substantial benefit from a U.S. player base. These allegations, supported by clear evidence, readily satisfy the purposeful direction, express aiming, and forum harm requirements of the Ninth Circuit's jurisdictional test under Rule 4(k)(2). Having submitted no evidence to contradict these allegations or to identify any alternative forum in which it is subject to jurisdiction, AFKCraft cannot carry its burden to demonstrate that the exercise of jurisdiction would be unreasonable. At minimum, Blizzard should be entitled to jurisdictional discovery to assess AFKCraft's claims.

Finally, to the extent AFKCraft challenges the sufficiency of Blizzard's substantive claims, those arguments merely echo those raised by co-defendant Zimmer and fail for the same reasons addressed in Blizzard's concurrently filed opposition to Zimmer's motion to dismiss. The Complaint pleads each claim with clarity and specificity, and AFKCraft's cursory Rule 12(b)(6) arguments provide no basis for dismissal.

I.    STATEMENT OF FACTS

**Blizzard and *World of Warcraft*.**  Blizzard is a video game developer and publisher headquartered in Irvine, California. Blizzard is the owner of the immensely popular video game *World of Warcraft* ("WoW"), an online, multiplayer role-playing game where players together explore a massive fantasy world. Compl. ¶¶ 1, 17-18, 35-37.

Two components are required to play WoW:  First, players must install to their computers a substantial set of software and media files known as the "client." The client contains the game's software engine, digital assets, sound and music files, artwork, and maps. Compl. ¶¶ 38-39. The WoW client is made available for download via Blizzard's online digital store, Battle.net. Second, for players to

experience WoW's dynamic world, they must create a password-protected account and connect to one of Blizzard's remote servers. Compl. ¶¶ 40-42. These servers connect players to each other and generate the game's virtual world. *See MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 942-43 (9th Cir. 2010). To recoup its massive and continuing investment in WoW, Blizzard charges players a monthly or yearly subscription fee to download the WoW Client and to access and play the game through the WoW servers. Compl. ¶ 37.

Blizzard employs contractual and technical measures to prevent people from unlawfully copying WoW. When installing the client and creating an account, all players must affirmatively assent to Blizzard's End-User License Agreement ("EULA"), which prohibits users from "facilitat[ing], creat[ing] or maintain[ing] any … connection to any unauthorized server that emulates, or attempts to emulate, the Platform." *Id.* ¶¶ 43-46. Additionally, the WoW client contains software protocols that prevent it from connecting to unauthorized servers. *Id.* ¶¶ 48-51.

**Turtle WoW.** "Turtle WoW" is an unauthorized, emulated version of WoW created and operated without Blizzard's authorization or consent. Turtle WoW claims that it has thousands of players across at least fifteen "dedicated" unauthorized WoW servers. Compl. ¶¶ 56, 57. Turtle WoW purports to offer its users the ability to play WoW for free, though in reality it is a commercial enterprise that generates revenue through so-called "donations," which provide players with in-game rewards. *Id.* ¶¶ 8, 78. Turtle WoW is owned and operated by individuals located in various countries, including in the United States. *Id.* ¶¶ 4, 19, 22-31. According to Turtle WoW's (U.S.-based) "Head of Marketing," Josiah Zimmer, Turtle WoW employs "[o]ver 100 team … consisting of artists, developers, modelers, animators, etc," offers "24/7 support," and has "an entire new client in development…" Declaration of Marc E. Mayer ("Mayer Decl.") ¶ 29 & Ex. 29.

OPPOSITION TO DEFENDANT AFKCRAFT LIMITED'S MOTION TO DISMISS

To play on Turtle WoW's servers, users must download a modified version of the WoW client (the "Turtle WoW Client"), which was created by and is made available by Turtle WoW.  The Turtle WoW Client is a **complete copy** of Blizzard's WoW client, with alterations that disable or circumvent the technical measures that prevent the WoW client from connecting to and being played on unauthorized servers.  Compl. ¶¶ 5, 7-8, 70-72.  The Turtle WoW Client also includes additional content derived from WoW.  *Id*. ¶¶ 58-59.

To onboard users, Turtle WoW operates an English-language website, located at www.turtle-wow.org (the "Turtle WoW Website").  The Turtle WoW Website is filled with artwork and images from WoW, videos of WoW, and dozens of pages promoting its infringing copy of WoW.  *Id*. ¶ 62.  The Turtle WoW Website also includes a community "forum" for players to receive customer support and technical support.  *Id*. ¶¶ 61, 77.  The Turtle WoW Website features a prominent "DOWNLOAD" button that, when clicked, instantly downloads to a user's computer the Turtle WoW "launcher."  When the launcher is run, it downloads the latest version of the infringing Turtle WoW Client.  *Id*. ¶¶ 63-65.  Once downloaded, all that a user needs to do to play WoW for free—and without a licensed copy of the WoW client or active WoW account—is to create an account and run the "Turtle WoW" launcher, which connects to one of Turtle WoW's unauthorized servers.  *Id*. ¶¶ 7-8, 63-65, 69-75.  ***It is uncontested that Turtle WoW distributed thousands or tens of thousands of copies of the Turtle WoW Client to the U.S. and tens of thousands of U.S.-based players have created Turtle WoW accounts (and thereby entered into contracts with Turtle WoW).*** *Id*. ¶¶ 57, 72, 76.

**Turtle WoW's U.S. and California Targeting.**  Turtle WoW aggressively markets its service to users around the world, especially in the United States.  Turtle WoW's marketing is primarily undertaken by U.S.-based Zimmer, who is "Lead of Marketing," "one of the leads for the project," and the public face of

Turtle WoW.  Mayer Decl. ¶ 29 & Ex. 29.  Turtle WoW (through or at the direction of Zimmer in the U.S.) maintains and regularly posts (always in English) to "official" accounts on U.S.-based social media platforms such as Facebook, Twitter/X, YouTube, Bluesky, Instagram, and Reddit.  *Id.* ¶ 21 & Exs. 16-25.  In Zimmer's own words, he has "manage[d]… the [Turtle WoW] brand across YouTube, Discord, Reddit, Facebook, Instagram, Bluesky, X/Twitter, and TikTok for over two years."  *Id.* ¶ 34 & Ex. 34, p. 5.  All of these social media accounts are filled with unauthorized artwork, screen captures, and images from WoW.  *Id.*, Exs. 16-25.  Turtle WoW also has accounts on music distribution platforms such as Apple Music, Spotify, and SoundCloud, where it distributes music files featuring infringing artwork.  *Id.*  Turtle WoW even maintains an online "radio station" (the "Everlook Broadcasting Company") that broadcasts (in English) a variety of talk shows featuring U.S.-based players and influencers.  *Id.* ¶ 23 & Ex. 27.  From his home in Michigan, Zimmer hosts a monthly podcast where he discusses "the latest server news."  *Id.* ¶¶ 31-32 & Exs. 31-32.  He also is frequently interviewed on influencer channels and podcasts, such as a U.S.-based video series called "FlightPath."  *Id.* ¶ 31 & Ex. 31.

This U.S.-focused marketing effort was successful in attracting U.S. players. Zimmer has boasted that through his efforts he grew the Turtle WoW "Discord server from 14,000 to over 100,000 members," attracted "[m]ore than 1.5 million organic YouTube views," and "Quadrupl[ed] (or better) engagement on all social platforms."  *Id.* ¶ 29 & Ex. 29.  Online sources reflect that the United States is one of the most popular markets for Turtle WoW.  *Id.* ¶ 20 & Exs. 13-14.  This is consistent with discussions on its social media pages and online forums, which are entirely in English and filled with U.S. users.  *Id.* ¶¶ 19, 22 & Exs. 11-12, 26.  U.S. players frequently announce themselves in these forums and (with staff knowledge and approval) reassure others that Turtle WoW not only is accessible in the U.S., but performs well.  *Id.* ¶¶ 22, 33 & Exs. 26, 33.

**Turtle WoW's Shell Games and Strawmen, Including AFKCraft.** Turtle WoW's owners and operators know that they are infringing Blizzard's copyrights on a massive scale. Thus, to dodge U.S. copyright laws, Turtle WoW's owners conceal their identities through anonymous screen names and conduct business through shell corporations and strawmen. According to the "legal" page of their website (which was removed after this lawsuit was filed), "Turtle WoW" is comprised of two companies: (1) "Turtle WoW (Europe)," an "individual proprietorship" in Kazakhstan and (2) AFKCraft Ltd., a company based in Hong Kong. *Id*. ¶ 6 & Ex. 2.

AFKCraft did not disclose ***anything*** in its papers about its business and did not submit a declaration. AFKCraft obviously is not a functioning company, but is an underfunded corporate shell without any employees. Its "Registered Office" is a corporate registration service. The sole "owner" and "director" of AFKCraft is "Pavel Reznik," who is located in Priozersk, Kazakhstan—which, not coincidentally, is also the location for Turtle WoW (Europe). *Id*. ¶¶ 9-13 & Exs. 5-6. AFKCraft maintains a website (www.afkcraft.com)[1], but it appears to be fake. *Id*. ¶ 14 & Ex. 7. The AFKCraft website (which is in Russian) purports to sell ***only*** Turtle WoW T-shirts (which depict infringing artwork from WoW), but in reality the website does not allow the visitor to actually complete a purchase. *Id*. ¶¶ 15-16 & Ex. 8. Additionally, the website contains a hidden page disclosing that it is owned or operated by ***Turtle WoW***, accompanied by Turtle WoW's Priozersk, Kazakhstan address. *Id*. ¶ 17 & Exs. 9 & 10. The only logical conclusion is that AFKCraft is a vehicle used by the individual defendants and the Turtle WoW enterprise to conduct its illegal business.

---

[1] Notably, the owner of the turtle-wow.org domain name also is located in Kazakhstan. Mayer Decl. ¶ 8 & Ex. 4.

## II.    AFKCRAFT IS SUBJECT TO THIS COURT'S PERSONAL JURISDICTION.

AFKCraft's cursory challenge to personal jurisdiction is unsupported by evidence and inconsistent with the large body of controlling Ninth Circuit authority.  Under this Circuit's test for specific jurisdiction, Blizzard need only make a *prima facie* case: (1) the nonresident defendant has (a) purposefully directed his activities at the forum or (b) purposefully availed himself of the privilege of conducting activities in the forum; and (2) the claim arises out of or relates to the defendant's forum-related activities.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  Once Blizzard has done so, the burden shifts to ***AFKCraft*** to present a "***compelling case***" that the exercise of jurisdiction would "***not*** be reasonable." *Id.* (emphasis added).

Because Blizzard's claims (including its copyright infringement, DMCA, trademark infringement, and RICO claims) arise under federal law and AFKCraft has not conceded or represented that it has submitted to the jurisdiction of any state's court (just the opposite; it apparently claims that it is not subject to personal jurisdiction anywhere in the U.S.), the federal long-arm statute, Fed. R. Civ. P. 4(k)(2), applies.  That means that this Court applies the Ninth Circuit's test for specific jurisdiction, "except that instead of looking at the defendant's contact with the forum state, the Ninth Circuit considers contacts with the nation as a whole." *Blizzard Entm't, Inc. v. Bossland GmbH*, 2017 WL 412262, at \*4 (C.D. Cal. Jan. 25, 2017); *see also Blizzard Entm't, Inc. v. Joyfun Inc. Co.*, 2020 WL 1972284, at \*5 (C.D. Cal. Feb. 7, 2020) (same).

Additionally, where the plaintiff has alleged that the defendant is an alter ego, "the Court may 'pierce the corporate veil' jurisdictionally and attribute 'contacts' accordingly." *ADO Fin., AG v. McDonnell Douglas Corp.*, 931 F. Supp. 711, 715 (C.D. Cal. 1996).  In other words, if AFKCraft is merely an alter ego of the Turtle WoW enterprise (and/or those who control that enterprise), then if

personal jurisdiction exists over the enterprise it also exists over AFKCraft. *Id.* At this stage, Blizzard "need only make a prima facie showing of alter ego liability in order to defeat the instant motion." *Id.* at 717.

Blizzard easily has met its burden: it made specific, detailed allegations regarding AFKCraft's status as the alter ego of the Turtle WoW Enterprise and the jurisdictional contacts of the Enterprise in the United States. These allegations not only are ***uncontested*** (and therefore must be taken as true), but are supported by evidence. *See Lang Van, Inc. v. VNG Corp.*, 40 F.4th 1034, 1038 (9th Cir. 2022) ("[U]ncontroverted allegations in the complaint must be taken as true.… [And] [c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor.").

### A.   Blizzard Has Made a *Prima Facie* Case That AFKCraft Is an Alter Ego of, and Participated In, the Turtle WoW Enterprise.

"[T]he standard for personal jurisdiction under an alter ego theory is lower than the standard for liability under an alter ego theory." *Television Events & Mktg., Inc. v. AMCON Distrib., Co.*, 484 F. Supp. 2d 1124, 1142 (D. Haw. 2006). At the jurisdictional stage, Blizzard need only make a *prima facie* showing that "'(1) there is such unity of interest and ownership that the separate personalities of [the corporations] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice.'" *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073, 1098 (C.D. Cal. 2003). Where that showing is made, "the Court may 'pierce the corporate veil' jurisdictionally and attribute [the enterprise's forum] 'contacts' accordingly [to the alter ego entity]." *ADO Fin.*, 931 F. Supp. at 715. The undisputed factual allegations, supported by the evidence, easily satisfy this standard.

***First,*** Blizzard specifically alleges that AFKCraft "is an underfunded, fictional shell company that operates as a mere alter ego of the individual Defendants." Compl. ¶ 21. These allegations are confirmed by evidence, which

reflects that AFKCraft does not have an office or employees, does not conduct any actual business, does not have a telephone number, is "owned" by an individual in Kazakhstan with no online footprint, and in fact did not exist until March 2025. Mayer Decl. ¶¶ 9-14 & Exs. 5-7.  AFKCraft's only online presence is a fake Turtle WoW merchandise website associated with Turtle WoW's (likely fake) purported Kazakhstan address.

      **Second,** Blizzard alleges that AFKCraft exists solely for the purposes of "hid[ing] the identities of the individual Defendants" and "acting as a conduit for monetary and other transactions related to Turtle WoW."  Compl. ¶ 21.  This is precisely the type of conduct that courts have found to constitute the type of "fraud and injustice" that warrants piercing the veil for jurisdictional purposes.  *E.g.*, *ADO Fin.*, 931 F. Supp. at 715-16; *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1393-94 (9th Cir. 1984).

      AFKCraft does not contest *any* of Blizzard's allegations.  If AFKCraft were a legitimate company with any function other than to serve as a smokescreen to protect the individual Defendants, it could, at minimum, have submitted a declaration or documentary evidence to that effect.  But AFKCraft has not even offered the barest evidence that it observes *any* corporate formalities, is adequately capitalized, maintains an office or employees, or conducts any legitimate business. Moreover, while AFKCraft claims in its Motion papers that it does not control any servers, does not receive revenue, and does not "issue any instructions related to Turtle WoW" (Mot. at 9-11), it has not submitted *any* evidence whatsoever to contest or contradict Blizzard's allegations to the contrary, including the specific allegations that AFKCraft "own[s] and operate[s] the Turtle WoW Servers" and "act[s] as a conduit for monetary and other transactions related to Turtle WoW." Compl. ¶ 21.

      These facts also confirm that AFKCraft is not a standalone actor, but an integral component of the Turtle WoW enterprise itself.  As alleged, Turtle WoW

operates as an enterprise comprised of individual defendants and shell entities, unified by a common purpose, shared infrastructure, and coordinated conduct. Compl. ¶¶ 20-21, 152-155.  Where an entity functions as an alter ego or instrumental part of such an enterprise, courts may disregard formal corporate separateness and assess personal jurisdiction by reference to the enterprise as a whole, imputing the enterprise's forum contacts to the alter-ego entity.  *See ADO Fin.*, 931 F. Supp. at 715-16.  Courts applying these principles have closely scrutinized coordinated online infringement operations involving nominal or intermediary entities, including in the video-game context, to determine whether enterprise-based jurisdiction is warranted based on shared control, infrastructure, and monetization.  *E.g.*, *Riot Games, Inc. v. Suga PTE, Ltd.*, 638 F. Supp. 3d 1102, 1120-22 (C.D. Cal. 2022).

Moreover, even if the Court were to look beyond alter-ego principles, the Complaint independently establishes personal jurisdiction over AFKCraft because it is alleged to be among the "primary participants" in the intentional, forum-directed misconduct at issue.  *See Calder v. Jones*, 465 U.S. 783, 790 (1984) ("[P]etitioners are primary participants in an alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them is proper on that basis.").  Courts in this District exercise personal jurisdiction where defendants exercised control over, and directly participated in, the infringing conduct.  *E.g.*, *Wolf Designs, Inc. v. DHR Co.*, 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004); *DirecTV, Inc. v. Leo*, 2010 WL 2740072, at *3 (C.D. Cal. July 8, 2010).  The allegations, which are taken as true, are that AFKCraft specifically facilitated, encouraged, and oversaw the infringing activity undertaken by the members of the Turtle WoW enterprise, including by operating remote servers and engaging in financial and other business transactions on behalf of the enterprise.

### B.    AFKCraft and Turtle WoW Purposefully Directed Their Activities at the Forum.

Because all of Blizzard's claims sound in tort, the relevant inquiry is whether AFKCraft (and, by extension, Turtle WoW) "purposefully directed" its activities at the United States.  *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011).  To establish "purposeful direction," this Court applies the "effects" test, which requires a showing that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix Photo*, 647 F.3d at 1228.  "Jurisdiction may be constitutionally maintained in such a scenario even if the defendant never set foot in the forum state." *Burri Law PA v. Skurla*, 35 F.4th 1207, 1213 (9th Cir. 2022).  Blizzard easily has met its light burden as to each prong.

#### 1.    Turtle WoW Engaged in Intentional Acts.

The Turtle WoW Enterprise (of which AFKCraft was a key part) engaged in numerous "intentional acts"—*i.e.*, "actual, physical act[s] in the real world." *CYBERsitter, LLC v. People's Republic of China*, 805 F. Supp. 2d 958, 969 (C.D. Cal. 2011).  It developed, maintains, updates, operates, and pays for the Turtle WoW Client and Servers.  It created and operates an interactive website through which users download the Client and sign up for a Turtle WoW account.  It also aggressively markets and advertises Turtle WoW.  *See Joyfun*, 2020 WL 1972284, at *6 (intentional acts include "advertising the Infringing Game via platforms like Facebook").  In fact, Turtle WoW's U.S.-based marketing lead ***personally*** operates or oversees nearly a dozen social media accounts, a Discord server, a website forum, and a dedicated subreddit, and—while based in ***the U.S.***—recruited Turtle WoW staff members, including moderators, content creators, and software developers.  Mayer Decl. ¶¶ 21, 29-30, 34 & Exs. 16-25, 29-30, 34.  All of these acts were undertaken in order to grow the Turtle WoW Servers and generate

Mitchell Silberberg & Knupp LLP

21325580.1

1  revenue for participants in the Enterprise.

2  **2.    AFKCraft and the Enterprise "Expressly Aimed" Their**

3  **Activities at the United States.**

4  **a.    Turtle WoW Targeted the U.S. Market.**

5  To determine whether an intentional act is "expressly aimed" at the forum,

6  the Ninth Circuit requires allegations of conduct "indicat[ing] an intent or purpose

7  to serve the market in the forum State." *Asahi Metal Indus. Co. v. Sup.Ct.,* 480

8  U.S. 102, 112 (1987).  Examples include "advertising in the forum, 'marketing the

9  product through a distributor who has agreed to serve as the sales agent in the

10 forum State,' and 'creat [ing], control[ling], or employ[ing] the distribution system

11 that brought its [product] to' the forum."  *Hendricks v. New Video Channel Am.,*

12 *LLC*, 2015 WL 3616983, at *6 (C.D. Cal. June 8, 2015) (citing *Asahi*, 480 U.S. at

13 112).  Turtle WoW engaged in precisely this conduct.  As a result of U.S.-targeted

14 activities, tens or hundreds of thousands of players ***in the United States*** visited the

15 Turtle WoW Website, downloaded the infringing Turtle WoW Client, accessed

16 and connected that Client to the infringing Turtle WoW servers, and engaged with

17 Blizzard's copyrighted WoW dynamic virtual world without Blizzard's

18 authorization.  Compl. ¶¶ 7-10, 57-60, 73.

19 ***First***, Turtle WoW—knowing that there is a substantial market for WoW

20 private servers in the U.S. (*i.e.*, many people who wished to play WoW for free)—

21 created, controlled, and employed a distribution system designed to onboard U.S.

22 players to its unauthorized private servers.  Defendants operated a professional,

23 English-language website and online forum, easily accessible to U.S. users, for the

24 purpose of marketing and distributing the infringing Turtle WoW Client and

25 facilitating access to the unauthorized servers.  *See 3DO Co. v. Poptop Software,*

26 *Inc.*, 1998 WL 962202, at *3 (N.D. Cal. Oct. 27, 1998) ("Defendants have posted a

27 website, accessible by California residents, which permits users to download

28 [infringing content].").  Turtle WoW accepts payment methods widely used in the

Mitchell
Silberberg &
Knupp LLP

21325580.1

18

United States.  Compl. ¶ 78.  Turtle WoW could have—but deliberately chose not to—block U.S. users from accessing their website, client, or servers.  *See Lang Van, Inc.*, 40 F.4th at 1042 (failure to geoblock indicates "intent to serve customers in the U.S. market.").  Instead, its "staff" regularly communicated with U.S. players and provided support and encouragement.

*Second*, Turtle WoW markets and advertises its Client and Servers to U.S. customers.  Turtle WoW operates English-language Discord servers; posts to YouTube, X and Facebook accounts; and produces recurring (English-language) podcast content to promote Turtle WoW.  It even created and posted musical recordings on U.S.-based platforms, replete with infringing WoW artwork.  Mayer Decl. ¶¶ 21, 23, 32 & Exs. 16-25, 27, 32.

*Third,* Turtle WoW engages directly with U.S. players, including through its Discord servers, a dedicated subreddit, and an online forum, through which it provides technical support, encouragement, and community management.  *See Joyfun*, 2020 WL 1972284, at *6 (express aiming where defendant provided English-language chat rooms and communicated with users via Discord); *Grokster*, 243 F. Supp. 2d at 1087 (relevant factors include "whether the defendant encouraged residents of the forum state to engage in relevant contacts with the defendant" and "whether the defendant exchanged messages with forum residents").  Each time a U.S. customer created a Turtle WoW account, that user entered into a contractual relationship with Turtle WoW and AFKCraft.  *See* Compl. ¶¶ 63-65; *see also Colt Studio, Inc. v. Badpuppy Enters*., 75 F. Supp. 2d 1104, 1109-10 (C.D. Cal. 1999) ("The sale of each subscription essentially involves an agreement between [the operator] and a consumer… .").

*Finally*, Turtle WoW's express aiming is demonstrated by its recruitment and management of personnel based in the United States.  Turtle WoW's U.S.-based marketing lead publicly recruited moderators and staff through pinned forum posts and ongoing communications, and managed U.S.-facing marketing and

community operations from within the United States.  Mayer Decl. ¶¶ 30, 34 & Exs. 30, 34; Compl. ¶¶ 24, 157.  Zimmer boasted that through these efforts he greatly expanded Turtle WoW's customer base.  Mayer Decl. ¶ 29 & Ex. 29.

### b.    The Enterprise Knowingly and Deliberately Targeted Blizzard.

Turtle WoW expressly targeted *Blizzard*, which it knew was a U.S. company headquartered in California.  *See Bossland*, 2017 WL 412262, at *4 ("Bossland had to anticipate that Blizzard, a company well known to be based in the United States, would suffer loss in the United States as a result of Bossland's software.").  Turtle WoW *knew* that its conduct was unlawful and would cause harm to Blizzard in the U.S.  *See Lang Van*, 40 F.4th at 1041 ("VNG purposefully targeted American companies and their intellectual property.").

"[T]he Ninth Circuit has held that specific jurisdiction exists where a plaintiff … alleges that defendant intentionally infringed its intellectual property rights knowing [the plaintiff] was located in the forum state.'"  *Cal Brewing Co. v. 3 Daughters Brewing LLC*, 2016 WL 1573399, at *3 (E.D. Cal. Apr. 19, 2016); *Burri*, 35 F.4th at 1215 (defendant engages in express aiming when conduct is "for the very purpose of having their consequences felt in the forum state.").  Turtle WoW's conduct was targeted at Blizzard in every possible way.  In fact, Turtle WoW, *by design,* is intended to harm Blizzard by offering for free the very same game that Blizzard charges for.  *See Lang Van*, 40 F.4th at 1041.

In *Bossland*, Blizzard's affiliate Activision Publishing, Inc. brought claims against German nationals engaged in the development and distribution of cheating software for Blizzard games.  The defendants moved to dismiss for lack of personal jurisdiction.  Applying Rule 4(k), the Court denied the motion, finding the sale of cheating software constituted an "intentional act," and that by selling software in the United States, the defendant aimed its conduct at the United States—and at Blizzard in particular:

> Bossland's business is parasitic in nature—it functions by piggybacking on Blizzard's sale of its games and undermining the gaming environment Blizzard is seeking to create. But like a direct competitor, Bossland's actions are pointedly undermining Blizzard's brand and profitability. Indeed, Bossland's activity is even more intermeshed with Blizzard's business than a direct competitor's would be, as Bossland's products can be used only after a person has already purchased a Blizzard game.

2017 WL 412262, at *6.  Likewise, here, Turtle WoW is a product designed for one purpose: to cannibalize Blizzard's own market by diverting paying customers to an unauthorized, free alternative.[2]

### 3. AFKCraft Knew Harm Would Be Felt in the United States and California.

"[A] corporation incurs economic loss, for jurisdictional purposes, in the forum of its principal place of business." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011).  Turtle WoW was designed to replicate, replace, and divert customers from Blizzard's WoW, a product developed, maintained, and monetized by Blizzard from its California headquarters.  Blizzard is headquartered in California, and Turtle WoW knew that its conduct would cause economic and reputational harm to Blizzard in California and throughout the United States.  It was foreseeable—and Turtle WoW was abundantly aware—that the distribution of Turtle WoW would harm Blizzard in the United States.  *See CollegeSource*, 653 F.3d at 1079; *see also Bossland*, 2017 WL 412262, at *6.

---

[2] To the extent that AFKCraft suggests that *Walden v. Fiore,* 571 U.S. 277 (2014), has altered this analysis, that is incorrect.  *See Bossland*, 2017 WL 412262, at *5.  *Walden* specifically did not address the issue of "virtual contacts."  *Id.*  And, *Lang Van* now confirms that targeting a U.S. company can be a critical piece of the jurisdictional analysis.

Mitchell Silberberg & Knupp LLP

21325580.1

**C.    The Exercise of Jurisdiction Is Not Unreasonable.**

Once a plaintiff makes a prima facie showing of purposeful direction, the burden shifts to the ***defendant*** to present a "compelling case" that the exercise of jurisdiction would be unreasonable and thus violate due process. *See Schwarzenegger*, 374 F.3d at 802. In assessing reasonableness, the Ninth Circuit considers seven factors. *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1021 (9th Cir. 2002). AFKCraft, however, has not engaged with ***any*** of these factors or offered ***any*** evidence pertinent to any of these factors, let alone presented a "***compelling case***" that litigating in this jurisdiction is so unreasonable that it would be constitutionally unfair.[3] In fact, each of the *Rio* factors plainly favor the exercise of jurisdiction here. For example, there is no dispute that all of the claims arise under U.S. law (and thus there is no conflict with another country's sovereignty), that Turtle WoW injected itself into the U.S. market, and that "[t]he United States has a significant interest in resolving disputes of United States copyright law involving infringement by foreign defendants." *AMA Multimedia LLC*, 2016 WL 5946051, at *7. AFKCraft has not even argued that it would be unduly burdened by defending the case here, and has not claimed that there is any other venue that would be more appropriate for this action.

**D.    At Minimum, Blizzard Is Entitled to Jurisdictional Discovery.**

Even without the benefit of any formal discovery, Blizzard has made a *prima facie* showing of personal jurisdiction. However, should the Court have any hesitation, Blizzard requests that the Court exercise its discretion to permit discovery on jurisdictional and alter ego issues prior to resolving this Motion.[4] *See*

---

[3] These factors are: (1) the extent of the defendant's purposeful interjection into the forum; (2) the burden on the defendant; (3) conflicts with the sovereignty of the defendant's state; (4) the forum's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

[4] Limited jurisdictional discovery would include, without limitation: (a) the relationships among Defendants and the manner in which each Defendant

*Good Job Games Bilism Yazilim Ve Pazarlama A.S. v. SayGames, LLC*, 2021 WL 5861279, at *1 (9th Cir. Dec. 10, 2021) (reversing district court and remanding for jurisdictional discovery because "[t]he question of jurisdiction in the Internet age is not well-settled" and "discovery … might well demonstrate facts sufficient to constitute a basis for jurisdiction"); *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (remanding for discovery on alter ego issues because "[f]urther discovery on this issue might well demonstrate facts sufficient to constitute a basis for jurisdiction").  Discovery plainly would be appropriate here, since the evidence, ***at minimum***, raises serious questions about the nature and business operations of AFKCraft—none of which are answered by AFKCraft in its motion.

## III.   AFKCRAFT'S RULE 12(b)(6) ARGUMENTS ARE FRIVOLOUS.

In addition to its jurisdictional arguments, AFKCraft attacks each and every one of the causes of action asserted in the Complaint.  AFKCraft's arguments—which parrot those asserted by Zimmer in his Motion—all rest on the basic premise that Blizzard engaged in improper "group pleading" and did not sufficiently allege how ***AFKCraft*** engaged or participated in the alleged conduct.  That is legally and factually incorrect.  Blizzard has more than satisfied its obligations under Fed. R. Civ. P. 8(a).  Blizzard alleged, in detail, that the Enterprise is a complex network of corporations and individuals that collectively conduct the business of owning, operating, marketing, and monetizing Turtle WoW.  Blizzard also specifically alleged AFKCraft's role in the overall Turtle WoW Enterprise—it is a vehicle

---

contributed to the development, operation, marketing, and distribution of Turtle WoW; (b) the identity of the individuals and entities involved in developing and maintaining the infringing game; (c) the nature and extent of Defendants' marketing and promotional activities directed to the United States; (d) the number of U.S. users; (e) revenues or other consideration received from U.S.-based users; (f) communications with U.S.-based users; (g) AFKCraft's corporate structure, capitalization, observance of corporate formalities, officers, directors, employees, and business operations; and (h) ownership, control, and hosting arrangements for the Turtle WoW servers and related infrastructure.  *See SayGames*, 2021 WL 5861279, at *1.

through which the individual members of the Enterprise engage in financial transactions while concealing their identities. *Symbria, Inc. v. Callen,* 2022 WL 60530, at *10 (N.D. Ill. Jan. 6, 2022) ("Plaintiffs have pled that the entities are interrelated through common management and employees"). AFKCraft has adequate notice of the claims against it and how it is alleged to have participated in the unlawful or infringing activity. *See Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 965 (N.D. Cal. 2015) ("The Court finds that such allegations [against 'Defendants'] provide sufficient notice to [the moving defendant] as to the nature of the claims asserted, including what conduct is at issue.").

AFKCraft's other arguments fare no better.

## A.    <u>Blizzard's Copyright, Trafficking, Intentional Interference, and Trademark Claims Are Sufficiently Pleaded.</u>

AFKCraft addresses Blizzard's First through Seventh Claims for Relief in cursory fashion. Its arguments are the exact same arguments that Zimmer made in his Motion, and are meritless for the same reasons. Blizzard thus refers the Court to its Opposition to Zimmer's Motion, filed concurrently with these papers. In summary:

**Copyright Infringement.** "All participants of a copyright infringement are jointly and severally liable. All persons and corporations who participate in, exercise control over, or benefit from the infringement are jointly and severally liable as copyright infringers." *Luft v. Crown Publishers, Inc.*, 772 F. Supp. 1378, 1379 (S.D.N.Y. 1991). AFKCraft, as *alter ego* of the individual defendants and as the corporation through which the individual defendants do business, is directly and secondarily liable for copyright infringement because it, *inter alia,* (1) distributed (or contributed to the distribution of) the Turtle WoW Client; (2) induced and encouraged members of the public to download the Turtle WoW Client (including by advertising and marketing Turtle WoW) and improperly access WoW's virtual world; (3) copied, publicly performed, and publicly

displayed infringing videos, screen captures, and artwork from WoW; and (4) failed to exercise control over its users' infringement, while obtaining a financial benefit (in the form of monetary "donations"). *See Nexon Am., Inc. v. S.H.*, 2011 WL 13217951, at *4 (C.D. Cal. Dec. 13, 2011) ("Defendant distributed the infringing RydahMS EXE [and] thus infringed Plaintiff's exclusive right of distribution of its copyrighted work."); *Davidson & Assocs., Inc. v. Internet Gateway, Inc.*, 334 F. Supp. 2d 1164, 1174 (E.D. Mo. 2004) (copyright infringement liability where "Defendants distributed the BNS utility program, which allowed Blizzard games to connect to bnetd servers.").

**Trafficking in Circumvention Technology.**  Blizzard has alleged that Defendants (including AFKCraft) trafficked in circumvention technology by creating and distributing a version of the WoW client that disables and circumvents Blizzard's technical measures that prevent players from connecting to unauthorized, third-party servers.  That is sufficient to state a claim under Section 1201 of the DMCA.  *See Nexon*, 2011 WL 13217951, at *6.

**Intentional Interference.**  Defendants (including AFKCraft) encouraged and induced WoW players to breach the EULA by playing WoW on unauthorized, emulated servers.  *See Blizzard Ent., Inc. v. Ceiling Fan Software LLC*, 28 F. Supp. 3d 1006, 1016 (C.D. Cal. 2013) (company that sold WoW "bots" engaged in intentional interference with Blizzard's EULA).

**Trademark Infringement.**  Defendants (including AFKCraft) infringed Blizzard's trademark rights in BLIZZARD, WORLD OF WARCRAFT, and WOW by placing these trademarks on the Turtle WoW Website and in its infringing version of WoW.  These are commercial uses, sufficient to give rise to a claim for trademark infringement.

B.      **Blizzard Has Sufficiently Stated Its Claims Under the RICO Statute.**

Blizzard has more than sufficiently alleged RICO claims in this case under both § 1962(c) and (d).  The Complaint includes specific allegations describing in detail an organized, highly coordinated enterprise carrying out, and monetizing, the exploitation of Blizzard's intellectual property on a massive scale through the Turtle WoW website.  Compl. ¶¶ 56-72.  Blizzard explains in detail how the Turtle WoW website specifically is used to carry out key operations of the enterprise, *id.* ¶¶ 61-65, and alleges that AFKCraft is the listed owner and operator of that website, *id.* ¶ 21.  Each of AFKCraft's attacks on the sufficiency of Blizzard's RICO allegations is legally unsupportable.

AFKCraft's primary argument is that under *Reves v. Ernst & Young*, 507 U.S. 170 (1993), Blizzard's allegations regarding AFKCraft do not meet the so-called "operation or management" test for participation in a RICO enterprise because the Complaint lacks allegations that AFKCraft "directed decisions" of, "controlled" assets of, or otherwise exercised "managerial, supervisory, operational… control" over the enterprise.  Mot. at 30-31.  But the *Reves* decision does ***not*** dictate, as AFKCraft wrongly believes, that § 1962(c) liability is limited to an enterprise's upper management, *i.e.*, those who "control" or "direct" the enterprise at a managerial or supervisory level.  Just the opposite:

> [Within § 1962(c)] the word "participate" makes clear that RICO liability ***is not limited to those with primary responsibility for the enterprise's affairs***, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required. The "operation or management" test expresses this requirement in a formulation that is easy to

Mitchell
Silberberg &
Knupp LLP
21325580.1

apply. … An enterprise is "operated" not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management. An enterprise also might be "operated" or "managed" by others "associated with" the enterprise who exert control over it as, for example, by bribery.

507 U.S. at 179-84.

Blizzard's Complaint easily meets that test.  AFKCraft is a shell company actively involved in directing the operations of Turtle WoW because it is the listed owner and operator of the Turtle WoW website.  Compl. ¶ 21.  And, for purposes of § 1962(d), the Complaint includes an exhaustive description of how the defendants, including AFKCraft, used the Turtle WoW website to monetize large-scale IP infringement.  Compl. ¶¶ 21, 56-72.  The alleged owner and operator of the website whose operations are at the heart of the alleged RICO enterprise plainly is engaged in "operation or management" and thus qualifies as a co-conspirator.[5]

To the extent AFKCraft suggests that a fictional shell company cannot be included in a RICO case as a defendant because it does not, by definition, undertake any true action or operation by itself, that also is meritless.  Courts routinely have rejected similar attempts to exclude shell entities from RICO liability.  *E.g.*, *Lavastone Cap. LLC v. Coventry First LLC*, 2015 WL 1939711, at *9 (S.D.N.Y. Apr. 22, 2015) (rejecting argument that "the entities do not pass the operation or management test, because they were allegedly only 'shell' businesses"); *State Comp. Ins. Fund v. Capen*, 2015 WL 13322034, at *4 (C.D. Cal. Dec. 18, 2015) (denying motion to dismiss where defendants allegedly

---

[5] AFKCraft analogizes this case to *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997-1000 (9th Cir. 2014), but that case concerned a group of actors engaged in unrelated parallel conduct—not the owner and operator of the alleged website through which the enterprise allegedly (primarily) conducts its business.

violated § 1962(c) by using shell entities to commit fraud); *Mezzonen, S.A. v. Wright*, 1999 WL 1037866, at *11 (S.D.N.Y. Nov. 16, 1999) ("[t]he Complaint alleges that… [shell] entities were alter egos of [other defendants] and that as such they were utilized to carry out acts in furtherance of the scheme to" commit fraud as "surrogates" of several of the other defendants).

Equally without merit is AFKCraft's argument that the Complaint creates an impermissible "temporal impossibility." Even if AFKCraft was "formed in March 2025" (as it claims, without evidentiary support), it never explains why that fact would absolve it of liability under the RICO statute. AFKCraft does not offer any legal authority even suggesting that every alleged participant in a RICO enterprise must have participated from the inception of the organization. The Complaint sufficiently alleges an ongoing pattern of racketeering activity, and explains AFKCraft's involvement in the operation and management of the enterprise (as the owner and operator of the enterprise's website).

Finally, AFKCraft is wrong when it claims (Mot. at 33-34) that the Complaint fails to allege a domestic injury. "An action involves a domestic application of the RICO statute if the indictment contains allegations of a domestic injury." *United States v. Bondarenko*, 2019 WL 2450923, at *8 (D. Nev. June 12, 2019). Where a "Plaintiff specifically alleges U.S.-based injuries as a result of the RICO violations," it has met the domestic injury requirement. *See Activision Publ'g, Inc. v. EngineOwning UG*, 2023 WL 3272399, at *21 (C.D. Cal. Apr. 4, 2023) (domestic injury occurred where Activision had "been injured by the loss of… player activity in the United States specifically, and the loss of game revenue that would have been obtained from U.S. players but for Defendants' [activities, and had]… suffered injury to its business reputation and U.S. player market gains, specifically in the United States.").

## <u>CONCLUSION</u>

Blizzard respectfully requests that the Court deny AFKCraft's Motion in its entirety.  Alternatively, (1) if the Court concludes that additional factual development is required to resolve any jurisdictional issue, Blizzard requests leave to conduct limited jurisdictional discovery, and (2) if the Court concludes that additional factual allegations are necessary, Blizzard requests leave to amend the Complaint.

DATED: January 12, 2026

MARC E. MAYER
THERESA B. BOWMAN
MITCHELL SILBERBERG & KNUPP LLP


By: */s/ Marc E. Mayer*
Marc E. Mayer
Attorneys for Plaintiff
Blizzard Entertainment, Inc.

Mitchell
Silberberg &
Knupp LLP

21325580.1

**OPPOSITION TO DEFENDANT AFKCRAFT LIMITED'S MOTION TO DISMISS**

1

## **Certificate of Compliance-L.R.11-6.2.**

2        The undersigned, counsel of record for Plaintiff Blizzard Entertainment,

3   Inc., certifies that this brief contains 6,997 words, which complies with the word

4   limit of L.R. 11-6.1.

5

6   Dated: January 12, 2026                    */s/ Marc E. Mayer*

    Marc E. Mayer

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28