Daniel M. Josephson (CA State Bar # 245895)
daniel@jurisjosephson.com
**JURISJOSEPHSON, PC**
9042 Garfield Avenue, Suite 101
Huntington Beach, California 92646
Telephone: (949) 512-0605

Attorney for Defendant,
**AFKCraft Limited**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| BLIZZARD ENTERTAINMENT, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>TURTLE WOW, an entity of unknown form, AFKCRAFT LIMITED, a Hong Kong Company; YULIA SAVKO a/k/a JULIA SAVKO a/k/a Torta and Shenna, an individual; ERIC MAUSER a/k/a Shagu and Meph1s, an individual; JOSIAH ZIMMER a/k/a Akalix, an individual; STEFAN KOSTOV a/k/a brotalnia, an individual, JESSE LAUTENBACK a/k/a Niralthas, an individual, COSMIN POP a/k/a xerron, an individual, JAMEY DIEPBRINK a/k/a Jamma an individual, MAROS BETKO a/k/a Haaxor, an individual, MARCO KRETAS a/k/a MARCO KAPTEIN a/k/a Kruxis, an individual; ALEX JULEV a/k/a PepeSmite, an | Case No.: 2:25-cv-08194-SVW (SKx)<br><br>Judge: Hon. Stephen V. Wilson<br>Courtroom: 10A<br><br>**DEFENDANT AFKCRAFT LIMITED'S REPLY TO PLAINTIFF'S OPPOSITION RE: DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(2) AND 12(b)(6)**<br><br>**Date: Monday, February 2, 2026**<br>**Time: 1:30 pm**<br>**Place: First Street U.S. Courthouse,**<br>**Courtroom 10A, 10th Floor**<br>**350 West 1st Street**<br>**Los Angeles, California 90012**<br>**Judge: Hon. Stephen V. Wilson**<br><br>Complaint Filed: August 29, 2025 |

---

**AFKCRAFT REPLY TO PLAINTIFF'S OPPOSITION RE:
DEFENDANT'S MOTION TO DISMISS**

individual; and DOES 1 through 10, )
inclusive, )
 )
 )

              Defendants

---

1

# **TABLE OF CONTENTS**

2

I.    INTRODUCTION ............................................................................................ 6

3

II.   ARGUMENT .................................................................................................. 7

4

A. Blizzard's Alleged "Alter-Ego" Facts Are Mere Affiliation Allegations and Are Legally Insufficient to Attribute Turtle WoW's Conduct or Contacts to AFKCraft ... 7

5

6

B. Plaintiff Cannot Shift Its Pleading Burden by Pointing to the Absence of a Defense Declaration ................................................................................................. 12

7

C.   Plaintiff's Attribution Theory Cannot Establish Personal Jurisdiction Over AFKCraft ........................................................................................................... 14

8

9

i. Blizzard Fails to Establish General Jurisdiction Over AFKCraft ........................ 14

ii. Blizzard Fails to Establish Specific Jurisdiction Over AFKCraft.................... 147

10

iii. Rule 4(k)(2) Does Not Cure Blizzard's Attribution Defect............................... 18

11

D.   Extrinsic Materials Attached to Blizzard's Opposition Are Improper and Cannot Remedy Pleading Deficiencies .................................................................... 18

12

E.   Blizzard's Attempt to Justify Group Pleading Fails Under Rule 8 ..................... 20

13

F.   Blizzard's Copyright, DMCA Trafficking, Intentional Interference, and Trademark Arguments Fail to Cure the Complaint's Defendant-Specific Pleading Defect ................................................................................................................ 22

14

15

i. Blizzard's Joint-Liability Theory Does Not Supply Missing Copyright Allegations Against AFKCraft ............................................................................ 22

16

17

ii. Blizzard's DMCA Argument Relies Entirely on Impermissible Group Pleading .................................................................................................................. 23

18

19

iii. Blizzard Fails to Plead Intentional Interference by AFKCraft ......................... 24

20

iv. Blizzard's Trademark Claim Improperly Conflates Distinct Alleged Uses and Fails to Plead Infringement by AFKCraft .................................................... 25

21

G.   Blizzard's RICO Allegations Against AFKCraft Rest on a Conclusory Label, Not Facts Showing "Operation or Management"................................................ 25

22

III.    CONCLUSION............................................................................................ 27

23

24

25

---

**AFKCRAFT REPLY TO PLAINTIFF'S OPPOSITION RE: DEFENDANT'S MOTION TO DISMISS**

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Adobe Systems Inc. v. Blue Source Group, Inc.*, 125 F. Supp. 3d 945 (N.D. Cal. 2015)
4
5
...............................................................................................................................20, 21

6
*Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912 (9th Cir. 2000) ...............19

7
*Daimler AG v. Bauman*, 134 S.Ct. 746 (2014)............................................14, 15, 16, 17

8
*Davidson & Associates v. Jung* (8th Cir. 2005) 422 F.3d 630 .....................................23
9

10
*Davidson & Associates, Inc. v. Internet Gateway, Inc.* (E.D. Mo. 2004) 334 F.Supp.2d

11
1164.................................................................................................................................23

12
*Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir.

13
2014)...............................................................................................................................13
14

15
*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) ...................14

16
*Hal Roach Studios, Inc. v. Richard Feiner & Co*., 896 F.2d 1542 (9th Cir. 1990).......19

17
*In re Boon Global Limited*, 923 F.3d 643 (9th Cir. 2019).................................................9

18

19
*In re Schwarzkopf*, 626 F.3d 1032 (9th Cir. 2010) .........................................................10

20
*Katzir's Floor and Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143 (9th Cir. 2004)

21
.........................................................................................................................................11

22
*Kauth v. Manuel*, 2025 U.S. Dist. LEXIS 51768 (E.D. Cal. Mar. 20, 2025)...............20
23

24
*Kramer Motors, Inc. v. British Leyland, Ltd.* 628 F.2d 1175 (9th Cir. 1980).................9

25
*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) .............................................19

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008) ............. 19

*MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928 (9th Cir. 2010) ........................ 24

*Nexon America, Inc. v. S.H.* (C.D. Cal., Dec. 13, 2011, No. CV 10-9689 PA (JCX))

   2011 WL 13217951 ..................................................................................... 22, 23, 24

*Pizana v. SanMedica International LLC*, 345 F.R.D. 469 (E.D. Cal. 2022) ................. 13

*Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015) ...................................... 9, 15, 17, 18

*Reves v. Ernst & Young*, 507 U.S. 170 (1993) ........................................................ 26, 27

*Swartz v. KPMG LLP,* 476 F.3d 756 (9th Cir. 2007) ............................................. 19, 20

*Symbria, Inc. v. Callen,* 2022 WL 60530, at *10 (N.D. Ill. Jan. 6, 2022) .................... 21

*United States v. United Healthcare Insurance Company*, 848 F.3d 1161 (9th Cir. 2016)

   .................................................................................................................................... 12

*United States ex rel. Lee v. Corinthian Colleges, 655 F.3d 984, 991 (9th Cir.*

   *2011)* ............................................................................................................................ 13

*Walden v. Fiore*, 134 S.Ct. 1115 (2014) ................................................................ 17, 18

**Federal Rules of Civil Procedure**

Rule 4(k)(2) .............................................................................................................. 6, 18

Rule 8 ..................................................................................................... 12, 13, 20, 23, 26

Rule 12(b)(2) ........................................................................................................... 21, 27

Rule 12(b)(6) ............................................................................................. 7, 18, 19, 21, 27

Rule 56 ......................................................................................................................... 19

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff's Opposition underscores the central defect in the Complaint, namely that it seeks to impose jurisdiction and liability on AFKCraft Limited ("AFKCraft") by attributing to it every act allegedly undertaken by "Turtle WoW," even though Plaintiff's own narrative identifies other persons and entities, including unidentified individual operators and a U.S.-based marketer, Josiah Zimmer (a different defendant), as the actors who allegedly developed, marketed, distributed, and operated Turtle WoW. In fact, Section II(B) of the Opposition discusses the alleged conduct of Turtle WoW without a single mention of AFKCraft – over more than three pages of argument. In essence, the Opposition (and the operative complaint) do nothing more than improperly bootstrap allegations against AFKCraft without distinguishing how its alleged conduct is independently actionable. The Opposition injects rhetoric about "shells," "strawmen," and "alter ego," but does not supply non-conclusory facts showing that AFKCraft itself purposefully directed suit-related conduct to the United States, and California specifically, or, for Rule 4(k)(2) purposes, that AFKCraft has constitutionally sufficient contacts with California and the United States. Nor does the Opposition plead or establish facts warranting the *extraordinary* step of jurisdictional veil-piercing; at most, it offers affiliation-style assertions and inferences that do not satisfy the unity-of-interest and inequitable-result requirements needed to disregard corporate separateness.

The Opposition also attempts to shift the burden by urging the Court to infer adverse facts from AFKCraft's lack of extrinsic submissions (i.e., "AFKCraft cannot even muster a declaration" (Oppo. 7:9)). But it is Plaintiff, and not Defendant AFKCraft, which bears the burden to make a prima facie showing of personal jurisdiction based on competent, *AFKCraft-specific* facts; unsupported allegations cannot substitute for jurisdictional proof. Also, to the extent Plaintiff tries to bolster its

pleading through exhibits and other materials submitted for the first time in opposition, that effort is improper: on a Rule 12(b)(6) motion the Court generally may not consider material outside the pleadings, and if such matters are considered the motion must be converted to one for summary judgment, an outcome Plaintiff cannot trigger unilaterally through opposition briefing. The narrow incorporation-by-reference and judicial-notice doctrines do not apply where, as here, the operative complaint does not necessarily rely on the proffered materials, and none of Plaintiff's opposition exhibits can be used to supply missing factual allegations.

Accordingly, the Court should (1) dismiss Plaintiff's complaint for lack of personal jurisdiction because Plaintiff fails to connect AFKCraft to forum-directed conduct or to justify jurisdictional veil-piercing, and (2) independently dismiss under Rule 12(b)(6) because the Complaint's allegations as to AFKCraft remain collective, conclusory, and rooted in speculation, and cannot be cured through new evidence offered in opposition.

## II. ARGUMENT

### A. Blizzard's Alleged "Alter-Ego" Facts Are Mere Affiliation Allegations and Are Legally Insufficient to Attribute Turtle WoW's Conduct or Contacts to AFKCraft.

Blizzard's Opposition (and operative complaint) fails to allege any new defendant-specific facts concerning AFKCraft's alleged conduct in or directed to the United States. Rather, the Opposition merely repackages the same attribution theory by characterizing Turtle WoW's alleged conduct, and the conduct of a separate defendant, Josiah Zimmer, as if it were conduct of AFKCraft. The additional factual narrative in the Opposition concerns Turtle WoW's servers, Turtle WoW's client software, Turtle WoW's marketing activities, and Zimmer's U.S.-based promotional efforts, none of which are alleged to have been directed, controlled, or carried out by AFKCraft. Even

---

Blizzard's discussion of AFKCraft's alleged merchandise website does not allege any completed transactions, revenue generation, U.S.-directed sales, or operational activity, and therefore does not supply any new facts capable of establishing alter ego, purposeful direction, or jurisdictional contacts attributable to AFKCraft. Section II(B) of the Opposition discusses the alleged conduct of Turtle WoW without a single mention of AFKCraft – over more than three pages of argument.

Moreover, Blizzard's purported "evidence" of public postings that it contends support the theory that AFKCraft injected itself into the U.S. market are inadmissible hearsay, without exception, and should be wholly disregarded. (See, e.g., Declaration of Marc Mayer, ¶ 22, Exhibit 29.)

Blizzard's opposition rests on the assertion that AFKCraft is a "fictional shell," "alter ego," or "instrumentality" of the Turtle WoW enterprise, such that all alleged conduct and forum contacts of Turtle WoW and other defendants may be imputed wholesale to AFKCraft. Even accepting Blizzard's factual allegations as true, however, the facts identified do not establish alter-ego liability or enterprise attribution as a matter of law. At most, Blizzard alleges possible association or affiliation, far short of the unity of ownership, control, and operations required to disregard corporate separateness for jurisdictional or substantive purposes.

Blizzard's alleged "evidence" of alter-ego status consists only of the contentions that: (1) AFKCraft was listed on a Turtle WoW "legal page," which Blizzard concedes was later removed; (2) AFKCraft's registered director allegedly "shares an address" with a Kazakhstan location of the Turtle WOW; (3) AFKCraft is a Hong Kong company but uses a corporate registration service as its registered office; (4) AFKCraft maintains a merchandise-related website that Blizzard characterizes as "fake" or

1    "inoperable" without reliable support[1]; and (5) that Blizzard alleges the existence of a

2    "hidden page" on AFK Craft website that it claims ties AFKCraft to Turtle WoW.

3           Even if each allegation is accepted as true, none demonstrates the functional

4    unity required to treat AFKCraft and Turtle WoW as a single jurisdictional actor.

5           The Ninth Circuit has established that certain corporate formalities and shared

6    administrative features do not, by themselves, establish the level of control necessary

7    to pierce the corporate veil or demonstrate an alter ego relationship. While the circuit

8    has not issued a single definitive ruling using the exact language about registered

9    offices and corporate services providers being "ordinary," its case law consistently

10   holds that shared addresses, common directors, and similar administrative overlaps are

11   insufficient without additional evidence of pervasive control or fraud.

12          The Ninth Circuit has repeatedly held that total ownership and shared

13   management personnel alone are insufficient to establish the requisite level of control

14   needed to pierce the corporate veil under an *alter ego* theory. See *In re Boon Global*

15   *Limited, 923 F.3d 643, 653 (9th Cir. 2019)*. In *Ranza v. Nike, Inc*., the Court found no

16   alter ego relationship even though the entities had some overlapping directors, noting

17   that "Ranza has been able to identify only one director who served on both company's

18   boards simultaneously" and that "some employees and management personnel move

19   between the entities, but that does not undermine the entities' formal separation" See

20   *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1074 (9th Cir. 2015). In *Ranza*, the Court cited

21   *Kramer Motors, Inc. v. British Leyland*, *Ltd*., 628 F.2d 1175, 1177 (9th Cir. 1980)  for

22   ─────────────────

23   [1] Blizzard's argument that its lawyers were unable to purchase merchandise on the

24   AFKCraft website cannot reasonably lead to the conclusion that its operations are a

25   sham. Whether a temporary website fault or operator error, such anecdotal reports are

     not a proper ground for denying Defendant AFKCraft's Motion to Dismiss.

─────────────────

the proposition that there was no alter ego relationship where some directors for one entity had sat on the board of the other. *Id.*

To claim *alter ego* and sustain a motion to dismiss as insufficiently pleaded, a plaintiff must demonstrate two conditions. First, there must be such a unity of interest and ownership that the individuality or separateness of the person and corporation has ceased. Second, adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice. *In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010).

The "unity of interest and ownership" prong requires showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former. (Total ownership and shared management personnel alone are insufficient to establish the requisite level of control; pervasive control can be shown where one corporation dictates every facet of the affiliate's business, from broad policy decisions to routine matters of day-to-day operation.) *Ranza, supra, 793 F.3d at 1073-74.* Additionally, the plaintiff must provide evidence of undercapitalization, failure to keep adequate records, or the free transfer of company assets, which are signs of a sham corporate veil. *Id.* Conclusory allegations that a company is structured to escape liability are insufficient; something more is needed to confer personal jurisdiction. *In re Schwarzkopf, 626 F.3d at 1039- 40.*

Here, Blizzard merely asserts that AFKCraft is an alter ego of Turtle WoW based primarily on a shared address between a Turtle WoW location and AFKCraft's registered director. Even assuming *arguendo* that AFKCraft is a recently formed entity or undercapitalized, Blizzard does not allege, let alone plausibly demonstrate, common ownership, commingling of assets, unified financial control, or domination of operations. And even where ownership is identical, that alone is insufficient. In

1   *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, the Ninth Circuit held that a

2   principal's sole ownership and control was not sufficient basis to pierce the corporate

3   veil where the corporation "maintained separate bank accounts from [the principal],

4   and [the principal] never commingled funds with [the corporation] or used its assets as

5   his own." *Katzir's Floor and Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149

6   (9th Cir. 2004). In reaching its decision, the *Katzir* Court observed:

7           "The district court clearly erred in finding that Sommer was

8           the alter ego of M-MLS, Inc. solely because of the fact of

9           control. 'Alter ego is a limited doctrine, invoked only where

10          recognition of the corporate form would work an *injustice* to

11          a third person.' *Tomaselli v. Transamerica Ins. Co.*, 25 Cal.

12          App. 4th 1269 (Cal. Ct. App. 1994) (citation omitted)

13          (emphasis in the original). The injustice that allows a

14          corporate veil to be pierced is not a general notion of

15          injustice; rather, it is the injustice that results only when

16          corporate separateness is illusory." *Id.*

17          Moreover, Blizzard's own allegations demonstrate that the entities operate

18  distinctly. AFKCraft is, as alleged, engaged in merchandise sales, while Turtle WoW

19  operates a video game platform. Blizzard's "fake store" claim (which allegation is

20  wholly denied) creates a circular paradox. That, is, if the store cannot transact as

21  Blizzard alleges, then it *cannot* qualify as a "conduit for monetization." Furthermore,

22  Plaintiff has proffered no evidence, nor any supportable allegations in the operative

23  complaint that actual funds were received by AFKCraft. These facts negate, rather than

24  support, any inference of functional unity or single-entity operation.

25

---

**AFKCRAFT REPLY TO PLAINTIFF'S OPPOSITION RE:
DEFENDANT'S MOTION TO DISMISS**

1      Thus, Blizzard's alter-ego theory rests entirely on allegations of affiliation, not
2  domination. The Ninth Circuit has repeatedly held that shared addresses, overlapping
3  personnel, corporate service providers, or speculative claims of concealment do not
4  suffice to pierce the corporate veil or impute contacts for jurisdictional purposes.
5  Because Blizzard has failed to allege facts demonstrating unity of interest, ownership,
6  or control, much less fraud or injustice, its alter-ego theory fails as a matter of law.
7  Accordingly, Turtle WoW's alleged conduct or forum contacts cannot be automatically
8  attributed to AFKCraft, as Plaintiff requests.

9      ### B. Plaintiff Cannot Shift Its Pleading Burden by Pointing to the Absence of a
10         Defense Declaration.

11     Blizzard argues that AFKCraft's failure to submit a declaration in support of its
12  motion somehow constitutes evidence of wrongdoing or undermines AFKCraft's
13  jurisdictional challenge. That argument is legally meritless. At the pleading stage, the
14  burden rests squarely with Plaintiff to plead facts that plausibly establish jurisdiction
15  and liability. The absence of a defense declaration does not relieve Blizzard of that
16  burden, nor does it's omission supply missing factual allegations in the Complaint.

17     Rule 8 requires the plaintiff, not the defendant, to plead facts supporting its claims.
18  A defendant's decision to rely on the pleadings and challenge legal sufficiency does
19  not create an inference against it, and silence cannot be transformed into affirmative
20  evidence. Blizzard's suggestion that AFKCraft must "prove" its legitimacy at the
21  pleading stage improperly inverts the governing standard and is inconsistent with well-
22  settled motion-to-dismiss principles.

23     The Ninth Circuit applies the plausibility standard established by the Supreme
24  Court, requiring that factual allegations "plausibly give rise to an entitlement to relief."
25  See, e.g., *United States v. United Healthcare Insurance Company*, 848 F.3d 1161,

1  1179-80 (9th Cir. 2016)  Under this framework, a claim has facial plausibility when the

2  plaintiff pleads factual content that allows the Court to draw the reasonable inference

3  that the defendant is liable for the misconduct alleged. *United States ex rel. Lee v.*

4  *Corinthian Colleges*, 655 F.3d 984, 991 (9th Cir. 2011) "The plausibility standard . . .

5  asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

6      The Court must consider "judicial experience and common sense" when evaluating

7  whether allegations are plausible. *Eclectic Properties East, LLC v. Marcus &*

8  *Millichap Co.*, 751 F.3d 990 (9th Cir. 2014)*, citing  Ashcroft v. Iqbal (2009)* 556 U.S.

9  662.

10      Applicable legal authority rejects the notion that Rule 8's lenient standard allows

11  plaintiffs to avoid specific factual allegations. In *Pizana v. SanMedica International*

12  *LLC*, the Court found that plaintiff's "conclusory, one-size-fits-all" allegations

13  attempting to establish alter ego liability for fifteen defendants "without any supporting

14  factual allegations" were "insufficient to provide notice to defendant of the grounds on

15  which the alter ego claims are based." *Pizana v. SanMedica International LLC*, 345

16  F.R.D. 469, 488 (E.D. Cal. 2022). The Court emphasized that under Rule 8, plaintiffs

17  must provide "not only 'fair notice' of the nature of the claim, but also 'grounds' on

18  which the claim rests" *Id.*

19      Here, Blizzard asks the Court to treat the absence of a defense declaration as a

20  substitute for the factual allegations it was required to plead in the Complaint. That is

21  improper. At the pleading stage, the Court evaluates whether the plaintiff has plausibly

22  alleged facts sufficient to establish jurisdiction and liability, not whether the defendant

23  has produced evidence to negate them. A defendant's decision to stand on the

24  pleadings does not permit the Court to presume the truth of conclusory allegations or to

25  infer facts not well-pleaded. Where, as here, the Complaint fails to allege non-

conclusory facts establishing alter ego, forum-directed conduct, or participation by AFKCraft, dismissal is required regardless of whether the defendant submits declarations in response.

### C. Plaintiff's Attribution Theory Cannot Establish Personal Jurisdiction Over AFKCraft.

Blizzard's Opposition attempts to establish personal jurisdiction over AFKCraft almost entirely through attribution. Rather than identifying suit-related conduct undertaken by AFKCraft itself, Blizzard alleges the marketing, distribution, social media activity, Discord operations, and alleged U.S.-based conduct of Turtle WoW and other individuals, and then asserts, without supporting facts, that those contacts should be treated, *a priori*, as those of AFKCraft.

### i.    Blizzard Fails to Establish General Jurisdiction Over AFKCraft.

General jurisdiction exists over a foreign corporation only where its affiliations with the forum are so "continuous and systematic" as to render it essentially "at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A corporation is "at home" only in its place of incorporation or principal place of business. *Daimler AG v. Bauman*, 134 S.Ct. 746, 760 (2014), clarified by *Haller v. Usman*, 2024 U.S. Dist. LEXIS 5845, *11.

Blizzard does not, and cannot, allege that AFKCraft is incorporated in the United States, maintains its principal place of business here, or otherwise has the type of global operational concentration that would render it "at home" in this forum or in the United States generally. Even extensive commercial activity, standing alone, is insufficient to support general jurisdiction. *Daimler, 134 S.Ct. at 760–61*.

Recognizing this deficiency, Blizzard attempts to attribute the alleged U.S. contacts of Turtle WoW and other actors to AFKCraft under an alter-ego theory. But the Ninth

1  Circuit has made clear that a parent–subsidiary or affiliated-entity relationship "does
2  not on its own establish two entities as alter egos," nor does it permit general
3  jurisdiction by imputation. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015).

4  Although *Daimler* left intact the alter-ego doctrine as a narrow basis for imputing
5  contacts, it did so only where the plaintiff makes a prima facie showing that the entities
6  are not truly separate. *Id. at 1071*. To satisfy that test, a plaintiff must demonstrate both
7  (1) such unity of interest and ownership that the separate personalities no longer exist,
8  and (2) that failure to disregard separateness would result in fraud or injustice. *Id. at
9  1073*.

10  Blizzard's Complaint or Opposition does not satisfy either prong. It pleads no facts
11  showing that AFKCraft controls Turtle WoW's internal affairs or daily operations, no
12  commingling of assets, no disregard of corporate formalities, and no unified financial
13  control.

14  The Opposition's reliance on shared locations, website references, or alleged
15  marketing overlap mirrors the sort of evidence the Ninth Circuit has expressly rejected
16  as insufficient to establish alter-ego jurisdiction. *Id. at 1070–73*.

17  Blizzard's reliance on the allegation that AFKCraft is "underfunded," recently
18  formed, lacks offices or employees, or does not conduct "actual business" does not
19  establish alter-ego jurisdiction. A newly formed entity that is alleged to have been
20  undercapitalized, especially in the Internet space, is not, by that fact alone, a sham
21  entity to be wholly disregarded. Corporate separateness is not lost merely because an
22  entity has limited operations, few or even no employees, or relies on third-party service
23  providers. Alter-ego jurisdiction requires facts showing domination of internal affairs
24  or day-to-day operations, commingling of assets, disregard of formalities, or unified
25  financial control, not the alleged absence of a telephone number, the alleged use of a

1  registration service, or the timing of incorporation. Blizzard identifies none of the

2  required indicia in its Complaint.

3      Blizzard's assertion that AFKCraft "did not exist until March 2025" is irrelevant to

4  jurisdiction. The timing of incorporation does not establish unity of interest, nor does it

5  show that AFKCraft controls (or is controlled by) Turtle WoW's operations. Alter-ego

6  jurisdiction turns on operational reality, not corporate age.

7      Nor does Blizzard's characterization of AFKCraft's website as "fake" or

8  "inoperable" support alter-ego jurisdiction; on the contrary, it undermines it. If the site

9  did not transact business, that fact negates, rather than supports, the claim that

10 AFKCraft functioned as a "conduit for monetary transactions." Blizzard identifies no

11 payments processed by AFKCraft, no accounts, no revenue flows, no contracts, and no

12 plausible suggestion that funds were ever received by AFKCraft in connection with

13 Turtle WoW. Jurisdictional veil-piercing cannot rest on speculation about what an

14 entity was "created to do" without facts showing what it actually did.

15     Blizzard's conclusory claim that AFKCraft exists to "hide identities" is insufficient

16 to satisfy the fraud-or-injustice prong. The injustice required for jurisdictional veil-

17 piercing must arise from respecting corporate separateness, such as the transfer of

18 assets to evade creditors or liability, not from generalized assertions that a corporate

19 structure obscures ownership. Blizzard pleads no facts showing asset stripping,

20 diversion of funds, insolvency-based transfers, or any jurisdiction-specific fraud

21 attributable to AFKCraft. Conclusory allegations of concealment, without factual

22 support, do not satisfy the second prong.

23     Even if Blizzard could impute Turtle WoW's contacts to AFKCraft (which it

24 cannot) that alone would still not establish general jurisdiction. *Daimler* expressly

25 assumed imputable contacts and nonetheless rejected general jurisdiction as

inconsistent with due process. *Daimler, 134 S.Ct. at 760.* Blizzard's theory would therefore impermissibly revive the very "continuous and systematic business" test repudiated in *Daimler.*

### ii. Blizzard Fails to Establish Specific Jurisdiction Over AFKCraft.

Specific jurisdiction requires that the defendant's own suit-related conduct creates a substantial connection with the forum. W*alden v. Fiore*, 134 S.Ct. 1115, 1121–22 (2014). The relationship must arise from contacts that "the defendant itself" creates with the forum, not from contacts with third parties or persons who reside there. *Id.*

Blizzard does not allege that AFKCraft itself purposefully directed any conduct at the forum or at the United States. Instead, the Opposition again relies on attribution, pointing to Turtle WoW's alleged marketing, distribution, social media presence, and the conduct of U.S.-based individuals, and asserting that those acts should be treated as AFKCraft's.

After *Daimler,* however, the Ninth Circuit has rejected the use of broad agency theories to impute a subsidiary's or affiliate's contacts for jurisdictional purposes. *Ranza, 793 F.3d at 1071*. The Supreme Court made clear that agency tests which automatically attribute one entity's activities to another distort the jurisdictional inquiry by "stack[ing] the deck" in favor of jurisdiction, a flaw that applies with equal force in the specific-jurisdiction context. *Daimler, 134 S.Ct. at 759*.

Even assuming some form of agency theory remains viable, fundamental principles of agency require that the alleged agent act on the principal's behalf and subject to the principal's control. *Id.*; see also *Ranza, 793 F.3d at 1073*. Blizzard does not allege that AFKCraft had the right to control Turtle WoW's operations, marketing decisions, or alleged U.S. activities. Absent such control, attribution is impermissible.

As in *Ranza*, Blizzard's Opposition "makes almost no factual allegations regarding the nature of the relationship" between AFKCraft and the entities whose conduct it seeks to impute, and its opposition and purported evidence in support "does not provide any additional clarity." *793 F.3d at 1073*. That failure is fatal to specific jurisdiction.

### iii.    Rule 4(k)(2) Does Not Cure Blizzard's Attribution Defect.

Blizzard's reliance on Rule 4(k)(2) does not alter this analysis. While Rule 4(k)(2) expands the geographic scope of the minimum-contacts inquiry to the nation as a whole, it does not dispense with the requirement that the defendant's own suit-related conduct create those contacts. *Walden, 134 S.Ct. at 1122*.

Here, Blizzard again aggregates alleged nationwide contacts of Turtle WoW and U.S.-based individuals, then simply asserts that those contacts should be attributed to AFKCraft. Rule 4(k)(2) does not authorize jurisdiction by aggregation or attribution absent a valid alter-ego or agency showing. Because Blizzard fails to establish either, Rule 4(k)(2) cannot supply personal jurisdiction. The Complaint does nothing more than improperly bootstrap allegations against AFKCraft without distinguishing how its alleged conduct is actionable independent of Turtle WoW's alleged conduct.

Accordingly, Blizzard's allegations, even if taken as true, do not justify jurisdictional veil-piercing. Without impermissible attribution, Blizzard identifies no suit-related conduct by AFKCraft that could establish personal jurisdiction.

### D.    *Extrinsic Materials Attached to Blizzard's Opposition Are Improper and Cannot Remedy Pleading Deficiencies.*

Blizzard's attempt to rely on extrinsic materials attached to its opposition cannot cure the pleading deficiencies in the Complaint. "Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."

---

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), abrogated in part on other grounds by *Jones v. Town of Quartzsite*, 2014 U.S. Dist. LEXIS 23084. Accordingly, "extraneous evidence should not be considered in ruling on a motion to dismiss." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2000) (excluding material outside the pleadings from consideration on a Rule 12(b)(6) motion).

Putting aside the swaths of objectionable evidence submitted by Blizzard, including hearsay, unauthenticated and irrelevant material, Rule 12(b)(6) provides that when "matters outside the pleading are presented to and not excluded by the court," the motion must be converted to one for summary judgment under Rule 56, with a reasonable opportunity for all parties to present pertinent material. Fed. R. Civ. P. 12(b)(6).

While a narrow exception permits consideration of documents whose contents are alleged in the complaint and whose authenticity is not questioned, that exception generally applies only where the complaint specifically refers to, and necessarily relies on, the document. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001), overruled on other grounds. As courts repeatedly emphasize, in resolving a motion to dismiss, the Court's review is "limited to the allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice," and it "may not consider any material beyond the pleadings" offered for the first time in opposition. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030–31 (9th Cir. 2008); *Lee*, *supra*, 250 F.3d at 688; *Swartz v. KPMG LLP*, 476 F.3d 756, 763. None of the attached exhibits qualify.

Where, as here, the operative complaint does not rely on the proffered materials and they are neither incorporated by reference nor subject to judicial notice, such

---

1   evidence is "properly excluded" and cannot be used to supply missing factual
2   allegations. *Kauth v. Manuel*, 2025 U.S. Dist. LEXIS 51768 (E.D. Cal. Mar. 20, 2025).

3       Blizzard therefore cannot amend its Complaint through opposition evidence,
4   nor can extrinsic submissions cure pleading defects.

5   **E.    *Blizzard's Attempt to Justify Group Pleading Fails Under Rule 8.***

6       Blizzard argues that collective pleading is permissible because this case involves
7   an alleged "enterprise" and that AFKCraft has "adequate notice" of the claims. But
8   Rule 8 requires factual allegations sufficient to render liability plausible as to *each*
9   defendant, not merely conceivable as to one. *Iqbal*, *supra*, 556 U.S. at 678.

10      In its Opposition, Blizzard fails to identify any non-conclusory allegation
11  showing AFKCraft's participation in infringement, trafficking, interference, trademark
12  use, or racketeering. Enterprise labels do not eliminate the requirement to plead what
13  each defendant did. The Ninth Circuit expressly said that conclusory allegations that
14  simply say defendants were "active participants," "acting in concert," or "agents"
15  without factual detail. *Swartz, supra,* 476 F.3d at 764-65 (9th Cir. 2007).

16      Blizzard's reliance on A*dobe Systems Inc. v. Blue Source Group, Inc.*, 125 F.
17  Supp. 3d 945 (N.D. Cal. 2015) only highlights why its pleading fails here. *Adobe* did
18  not bless "group pleading" untethered to defendant-specific facts; the Court denied
19  dismissal because the complaint tied the Defendant Blue Source itself to suit-related
20  conduct, namely, that it supplied and distributed unauthorized Adobe software in the
21  distribution chain, and then plausibly alleged the elements of the infringement-based
22  claims. Here, by contrast, Blizzard does not plead any non-conclusory fact showing
23  that AFKCraft itself sold, distributed, advertised, operated, trafficked, or otherwise
24  committed a suit-related act giving rise to the asserted claims. Blizzard's Opposition
25  instead attempts to impute to AFKCraft the alleged conduct and U.S. contacts of Turtle

WoW and other persons through labels like "alter ego" and "shell," but *Adobe* does not permit liability, or find that there was "adequate notice," based on attribution alone. Citing an easily distinguishable case cannot cure Blizzard's failure to plead any act by AFKCraft in this case, and it therefore cannot salvage either jurisdiction or plausibility under Rule 12(b)(2) or Rule 12(b)(6). The opinion of *Symbria, Inc. v. Callen,* 2022 WL 60530, at \*10 (N.D. Ill. Jan. 6, 2022) cited by Blizzard is instructive. There, the Court did not accept "group pleading" based on labels or speculation. It allowed collective allegations only because the complaint described, in detailed, concrete terms, an interrelated set of entities with shared offices and employees, shared document systems, overlapping managers and ownership, and a specific mechanism by which confidential and copyrighted materials were copied, routed through identified individuals, and then used by the affiliated entities. These allegations, readily distinguishable from those in the case at bar, plausibly supported the inference that each defendant could have participated in the misconduct and had fair notice of the "contours" of the alleged wrong. By contrast, Blizzard offers no comparable, nonconclusory factual allegations tying AFKCraft to Turtle WoW's alleged U.S. contacts or alleged wrongdoing. Instead, Blizzard asserts only a hypothetical, threadbare, unsupported attribution theory, e.g., that AFKCraft was the "financial center" of Turtle WoW. Plaintiff makes such allegations without pleading facts showing shared management, shared operations, shared systems, specific transactions, or any defendant-specific conduct by AFKCraft that would make attribution plausible rather than purely speculative.

*F.    Blizzard's Copyright, DMCA Trafficking, Intentional Interference, and Trademark Arguments Fail to Cure the Complaint's Defendant-Specific Pleading Defect.*

**i.  Blizzard's Joint-Liability Theory Does Not Supply Missing Copyright Allegations Against AFKCraft.**

Blizzard responds to AFKCraft's copyright arguments by reciting standards of joint and secondary liability and asserting that all "participants" may be liable. However, AFKCraft did not argue that joint or secondary liability is categorically unavailable; it argued that Blizzard failed to plead facts showing that AFKCraft itself participated in, controlled, induced, or benefited from any infringing activity.

Blizzard's citation to *Luft v. Crown Publishers* is misplaced. *Luft* involved defendants who indisputably manufactured, sold, and distributed infringing recordings, and the Court's discussion of joint liability presupposed established participation in infringement. Nothing in *Luft* holds that liability may be imposed on an entity absent factual allegations of its *own* infringing acts, nor does it permit a plaintiff to substitute legal citations for pleaded conduct.

Here, Blizzard does not identify a single non-conclusory allegation showing that AFKCraft *itself* distributed the Turtle WoW client, induced infringement, exercised supervisory control, or derived a direct financial benefit. Instead, Blizzard relies on labels asserting that AFKCraft is an "alter ego," a "vehicle," or the entity "through which" others acted without pleading facts concerning capitalization, commingling, disregard of corporate formalities, or misuse of the corporate form. Such conclusory characterizations cannot establish either direct infringement or secondary liability.

Nor do Blizzard's additional cases advance its position. In *Nexon* and *Davidson,* the defendants were alleged to have directly distributed infringing software or utilities,

1  conduct affirmatively pleaded and central to the Courts' rulings. *Nexon America, Inc.*

2  *v. S.H.* (C.D. Cal., Dec. 13, 2011, No. CV 10-9689 PA (JCX)) 2011 WL 13217951,

3  *Davidson & Associates, Inc. v. Internet Gateway, Inc*. (E.D. Mo. 2004) 334 F.Supp.2d

4  1164, aff'd sub nom. *Davidson & Associates v. Jung* (8th Cir. 2005) 422 F.3d 630.

5  Blizzard does not plead comparable facts applicable to AFKCraft. Allegations that

6  unidentified "participants" advertised, marketed, displayed content, or accepted

7  donations do not constitute plausible allegations that AFKCraft did so.

8  Rule 8 requires factual allegations showing that AFKCraft itself engaged in

9  infringing conduct or satisfied the elements of secondary liability. Because Blizzard

10  pleads neither, its copyright claims against AFKCraft fail as a matter of law.

11  **ii. Blizzard's DMCA Argument Relies Entirely on Impermissible Group Pleading.**

12  Blizzard's reliance on *Nexon America, Inc. v. S.H.* is misplaced as to its DMCA

13  trafficking claim. *Nexon* was decided at the summary-judgment stage on a record of

14  undisputed facts, including admissions by the defendant that he *personally* created,

15  modified, and distributed a replacement executable designed solely to bypass the

16  copyright owner's authentication system. The Court's holding rested on detailed,

17  admitted evidence that the defendant altered the copyrighted executable itself,

18  distributed multiple versions of the circumvention tool, hosted download links,

19  provided instructions, and earned substantial revenue from that activity.

20  Nothing in *Nexon* holds that conclusory allegations of "distribution" or

21  "trafficking," untethered to defendant-specific facts, are sufficient to plead a DMCA

22  claim. On the contrary, *Nexon* demonstrates that § 1201 liability required proof that the

23  defendant personally manufactured or trafficked in a technology whose primary

24  purpose was circumvention, supported by concrete evidence of technical modification,

25  distribution channels, and user deployment.

Blizzard does not plead comparable facts as to AFKCraft. It does not allege that AFKCraft authored, modified, compiled, hosted, uploaded, or distributed any executable, nor that AFKCraft designed or marketed any circumvention technology; nor can it. Invoking *Nexon* cannot substitute for pleading those facts plausibly.

Blizzard's Opposition does not identify a single act by AFKCraft satisfying the act or knowledge elements required under § 1201. As Blizzard's own cited authorities recognize, § 1201 liability requires defendant-specific trafficking conduct. *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 952-53 (9th Cir. 2010). Group pleading cannot supply that element.

**iii. Blizzard Fails to Plead Intentional Interference by AFKCraft.**

The same pleading defect defeats Blizzard's intentional-interference theory. Blizzard's citation to *Blizzard Entertainment, Inc. v. Ceiling Fan Software LLC* does not support its claim against AFKCraft. In *Ceiling Fan*, the defendant was alleged, and later shown, to have sold commercial bot software, marketed it for use with Blizzard's games, knowingly induced end users to violate the EULA, and profited directly from those contractual breaches. The Court emphasized affirmative acts by the defendant that were specifically designed to cause EULA violations and that were undertaken with knowledge of existing contracts.

Here, Blizzard does not plead facts showing that AFKCraft itself sold any software, operated a bot service, marketed products to Blizzard's customers, or directly induced any specific contractual breach. Nor does Blizzard allege that AFKCraft was a party to, or had knowledge of, individual users' assent to Blizzard's EULA. As *Ceiling Fan* itself illustrates, intentional interference requires intentional, targeted conduct directed at existing contracts, not generalized allegations that an entity "encouraged" play on third-party servers."

**iv. Blizzard's Trademark Claim Improperly Conflates Distinct Alleged Uses and Fails to Plead Infringement by AFKCraft.**

Blizzard alleges that "Defendants (including AFKCraft)" infringed its trademarks by "placing these trademarks on the Turtle WoW Website and in its infringing version of WoW," and asserts that those acts constitute commercial use sufficient to state a Lanham Act claim.

AFKCraft does sell merchandise, namely T-shirts, through its own website, but Blizzard does not plead a merchandise-based trademark claim against AFKCraft. It does not allege facts addressing likelihood of confusion arising from apparel, the nature of the goods, channels of trade, consumer perception, or any of the elements required for a trademark infringement claim premised on clothing sales.

Instead, Blizzard's trademark theory rests on the alleged placement of Blizzard's marks on the Turtle WoW Website and within an infringing game client. Blizzard does not plead facts showing that AFKCraft itself operated or controlled that website, embedded trademarks in the client software, distributed the client, or directed how marks were displayed in the game environment. Nor does Blizzard allege that the website or in-game trademark uses were undertaken in connection with AFKCraft's merchandise sales, as opposed to the activities of other defendants or third parties. In fact, Blizzard's Opposition concedes that AFKCraft is known to sell t-shirts and other tangible products, not intangible intellectual property. (Oppo., 12:18.)

**G.   *Blizzard's RICO Allegations Against AFKCraft Rest on a Conclusory Label, Not Facts Showing "Operation or Management".***

Blizzard's Opposition rests on a single asserted premise: that AFKCraft "actively directed" the alleged RICO enterprise because it is purportedly the "listed owner and operator" of the Turtle WoW website. That assertion is purely conjecture.

1  Neither the Complaint nor the Opposition pleads a single non-conclusory fact showing

2  that AFKCraft actually was an operator, decision-making authority, control, or

3  operational role over the alleged enterprise, as required under § 1962(c).

4      *Reves v. Ernst & Young*, 507 U.S. 170 (1993) does not permit liability to be

5  inferred from labels or status alone. *Reves v. Ernst & Young*, 507 U.S. 170, 180. While

6  Blizzard correctly quotes *Reves* for the proposition that RICO liability is not limited to

7  upper management, *Reves* still requires factual allegations showing that the defendant

8  had some part in directing the enterprise's affairs and participated in the alleged

9  infringement activity.

10      Alleging that AFKCraft is the "owner and operator" of a website in which

11  "Turtle WOW" is referenced is not a substitute for pleading operational conduct.

12  Ownership is a legal conclusion drawn without factual support, and "operator" is

13  merely a characterization untethered to any pleaded conduct. Blizzard identifies no

14  specific actions by AFKCraft. As such there is no plausible basis to infer participation

15  in the operation or management of a RICO enterprise.

16      Blizzard's reliance on cases involving shell entities involved detailed factual

17  allegations showing that shell entities were used to carry out specific acts in

18  furtherance of racketeering schemes. Here, Blizzard pleads no facts showing that

19  AFKCraft carried out, or was even *capable* of carrying out, any racketeering acts at all.

20  Merely asserting that AFKCraft exists, and attaching a label to it, does not satisfy Rule

21  8, let alone *Reves*.

22      Nor does Blizzard cure this defect by invoking § 1962(d). A RICO conspiracy

23  claim requires plausible allegations that the defendant knowingly agreed to facilitate a

24  substantive RICO violation. Blizzard pleads no facts showing that AFKCraft knew of,

25  agreed to, or intended to further any alleged racketeering conduct. The conspiracy

**AFKCRAFT REPLY TO PLAINTIFF'S OPPOSITION RE:
DEFENDANT'S MOTION TO DISMISS**

claim rises or falls with the substantive claim, and both fail for the same reason: the absence of defendant-specific factual allegations.

In short, Blizzard's assertion that AFKCraft "plainly is engaged in operation or management" is not a factual allegation but an unsupported conclusion. The Complaint asks the Court to infer liability from a name appearing on a website, without pleading any of the conduct that *Reves* requires. That is precisely the type of conclusory pleading Rule 12(b)(6) forbids, and Blizzard's Opposition does nothing to cure it.

## III.    <u>CONCLUSION</u>

Blizzard's Opposition does not cure the jurisdictional or pleading defects identified in AFKCraft's Motion. Rather than alleging defendant-specific, suit-related conduct by AFKCraft, Blizzard relies on attribution, labels, and collective pleading to impute the alleged actions of others to AFKCraft.

Blizzard's Opposition relies on labels, collective pleading, and liability standards untethered to factual allegations. It does not identify a single non-conclusory fact showing that AFKCraft itself engaged in infringing, trafficking, interfering, trademark, or racketeering conduct. Because Blizzard fails to cure both the lack of personal jurisdiction and the Complaint's defendant-specific pleading defects, the claims against AFKCraft must be dismissed under Rules 12(b)(2) and 12(b)(6).

Respectfully submitted,

                                            **JURISJOSEPHSON, PC**

DATED: January 20, 2025          _/s/   Daniel M. Josephson_____
                                            Daniel M. Josephson
                                            Attorney for Defendant,
                                            **AFKCRAFT LIMITED**

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant AFKCRAFT LIMITED certifies that this brief contains 6,042 words, which complies with the word limit of L.R. 11-6.1.

DATED: January 20, 2025                    _/s/   Daniel M. Josephson_____
                                           Daniel M. Josephson
                                           Attorney for Defendant,
                                           **AFKCRAFT LIMITED**